# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| **MICHAEL TRENTON RUSK** )<br>    **Plaintiff,** )<br>  )<br>  v.  )<br>  )<br>  )<br>**JAMES CITY COUNTY** )<br>**101 Mounts Bay Road** )<br>**Williamsburg, VA 23185,** )<br>  )<br>**and,** )<br>  )<br>**JAMES CITY COUNTY POLICE** )<br>**DEPARTMENT,** )<br>**4600 Opportunity Way** )<br>**Williamsburg, VA 23188,** )<br>  )<br>    **Defendants.** )<br>  ) | **JURY TRIAL DEMANDED**<br>    **Civil Action No.** |

## COMPLAINT

**NOW COMES**, Plaintiff, Michael Trenton Rusk (hereinafter "Mr. Rusk"), through undersigned counsel, and brings this civil action against the above-named Defendants, James City County (hereinafter "County") and the James City County Police Department (hereinafter "Police Department") (both Defendants are hereinafter referred to as "Defendant" and or "Defendants"), jointly and severally, and in support of his Complaint states as follows:

## PRELIMINARY STATEMENT

1. Mr. Rusk has received notice of his right of action against the Defendants, issued pursuant to his filing a charge with the United States Equal Employment Opportunity Commission.

    A copy of Mr. Rusk's Notice of Right to Sue is attached hereto as **Exhibit "A"** and is incorporated herein by reference.

2. This is a civil action brought by Mr. Rusk under § 706(f) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e-5(f), which confers original jurisdiction on this Court over all actions authorized by Title VII of the Civil Rights Act of 1964. This action states federal claims against the Defendants for discrimination on the basis of hostile work environment and sexual harassment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and 42 U.S.C. § 1983 by denying Mr. Rusk his rights afforded by Title VII and equal protection of the law set forth by the Fourteenth Amendment to the United States Constitution.

3. This is a civil action brought by Mr. Rusk to secure redress for the Defendants' violation of his civil right to be free from workplace discrimination and harassment on the basis of his sex. Federal law prohibits harassment in the workplace against any of the classes of employees protected under federal and state discrimination law. Mr. Rusk has been subject to illegal and intolerable conditions, including statements and other inappropriate and unwanted behaviors of his supervisor, Sergeant Christopher Gibson (hereinafter "Gibson"), that created an offensive and hostile work environment. Such behavior and actions were ignored by the Defendants, because Mr. Rusk is a male. The Defendants failed to take all reasonable steps necessary to prevent the occurrence of discrimination and harassment. To the extent a policy exists that would expressly prohibit such an intolerable workplace, the system was ignored and failed to protect Mr. Rusk. Instead, the Defendants because of Mr. Rusk's sex, allowed him to be placed in jail for over 20 days, placed him on unpaid leave, and eventually terminated his employment.

4. The Defendants, and more specifically, the Police Department, had a duty to take prompt corrective action. Inaction following notice results in employer liability. At all times mentioned herein, the Defendants and their agent Gibson were acting in a managerial and supervisory role with full knowledge of the conduct and behavior described.

5. Mr. Rusk seeks compensatory damages, attorneys' fees, and costs.

## THE PARTIES

6. At all times relevant to this action, Mr. Rusk, was, and remains, a resident of James City County, Virginia and is a citizen of the United States of America.

7. At all times relevant to this action, Mr. Rusk was employed by the Defendant James City County as a police officer with the James City County Police Department located at 4600 Opportunity Way, in the County of James City, in the state of Virginia, in the Eastern District of Virginia.

8. At all times material to this Complaint, Defendant James City County is a county located in the state of Virginia, and is responsible for the local governance, law enforcement, and public services within its jurisdictional limits. The James City County Government Center and Human Resources are located at 101 Mounts Bay Road, Williamsburg, VA 23185. The County is a recipient of federal financial assistance as well as state funding.

9. At all times material to this Complaint, the Defendant James City County Police Department is a Virginia law enforcement agency that serves James City County. The Police Department is located at 4600 Opportunity Way, James City County, Virginia but receives correspondence at P.O. Box 8784 Williamsburg, Virginia 23187. The Police Department is a recipient of federal financial assistance as well as state funding.

10. James City County and James City County Police are joined as defendants pursuant to Federal Rule of Civil Procedure 20, as rights to relief arise out of the same transaction, occurrence, or series of transactions or occurrences, and questions of law or fact common to all plaintiffs will arise in the action.

11. All the actions, omissions and conduct complained of were undertaken by the Defendants under the color of state law. Defendants' conduct represents a violation of Mr. Rusk's rights secured by Constitution and federal laws of the United States.

## JURISDICTION AND VENUE

12. Jurisdiction over these claims is invoked pursuant to 28 U.S.C. § 1331, 1332, 1343, and 1367.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

14. Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTUAL ALLEGATIONS

15. James City County Police Department is a law enforcement agency that serves the County of James City, in the State of Virginia, in the Eastern District of Virginia.

16. The Defendants offered Mr. Rusk the position of Police Officer I (Certified) in February of 2021, and began employment at this position in March of 2021.

17. At all times relevant to this action, Gibson was a Sergeant with the James City County Police Department and was Mr. Rusk's immediate supervisor.

18. Mr. Rusk's potential for promotions and special assignments were primarily affected by his immediate supervisor Gibson. Gibson's recommendations and opinion of Mr. Rusk were vital to any advancements and access to specialty units such as the Marine Patrol Unit. During the majority of Mr. Rusk's time with the Police Department and at all times

relevant to this action, Gibson was Mr. Rusk's immediate supervisor. Furthermore, Gibson was responsible for filing any disciplinary forms and administering any corrective action, along with completing the Police Department's annual performance conference forms for Mr. Rusk. See attached as **Exhibit "B"**, a disciplinary form and a performance conference form filled out by Gibson for Rusk.

19. Starting late December 2021 to January of 2023, Gibson increasingly made unwelcome sexual advances and harassed Mr. Rusk, his subordinate, both on-duty and off-duty.

20. Gibson's unwanted, inappropriate conduct included: hand holding, touching, slapping Mr. Rusk's posterior, stalking, grooming, sexual comments/suggestions, and other forms of sexual harassment and assault.

21. Immediately following a life-altering event in September 2022, Mr. Rusk suggested to Gibson that they use a phone application called "Life360," which he used with his family for emergencies. "Life360" allows users to share their current location to other selected and approved users. Mr. Rusk had previously used this application with a former coworker, Investigator Crane, when he was employed with the Newport News Police Department as a safety tool for officers to locate another while on duty in the field.

22. Gibson regularly tracked Mr. Rusk's location using "Life360" and would show up unannounced both on-duty and off-duty to monitor and follow Mr. Rusk, to the point that it made Mr. Rusk feel he was being stalked and harassed. Thereafter, Mr. Rusk discontinued use of the application which caused Gibson to be very upset, despite Mr. Rusk installing "Life360" on his work phone in an effort to compromise or alleviate any chance of retaliation.

23. Rusk was issued a marked patrol vehicle by the Police Department, to which he would drive home with him after every shift. The majority of police vehicles owned by the Police Department are equipped with mobile data computers (MDTs). Gibson having special supervisor access to the MDTs location tracking software allowed him to further stalk Mr. Rusk's whereabouts using his patrol vehicle's MDT, which forced Mr. Rusk to disable location tracking several times on his MDT for fear of unwanted interaction with Gibson.

24. In the Police Department, direct supervisors and officers in charge are responsible for directing what zones of the County that their subordinates patrol.

25. Gibson consistently and deliberately scheduled Mr. Rusk to patrol Zone 1, which is the zone Gibson's office was located (at the Law Enforcement Center, 4600 Opportunity Way, Williamsburg, VA 23188), in order to track Mr. Rusk more closely and control different aspects of Mr. Rusk's daily work routine. (i.e. Meal breaks, officer assignments, calls for service, etc.)

26. As Gibson's unwanted conduct continued to intensify, Mr. Rusk felt compelled to invite other officers to join him and Gibson on lunch breaks due to how uncomfortable Gibson's unwanted conduct made him feel on numerous occasions,

27. Mr. Rusk was subject to Gibson's pervasive and severe attempts to groom an inappropriate romantic relationship and entice a sexual response; both verbally and physically. Attached herein as **Exhibit "C"** are text communications between Gibson and Mr. Rusk highlighting the pervasive, severe, inappropriate, and often sexually suggestive communications between Gibson and Mr. Rusk.

28. Mr. Rusk's texts contained in **Exhibit "C"** are conditioned responses that are a product of a combination of factors, such as, Gibson's supervisory position over Mr. Rusk, the control and influence he had over Mr. Rusk's future within the Police Department, and the environment and culture promoted by the Police Department. Mr. Rusk fell prey to Gibson's grooming tactics and felt the only option was to appease Gibson. Mr. Rusk's text communications in **Exhibit "C"** are more fully explained by Ms. Kimberly Pinto, LCSW, BCN, CCTS, CFTP, in her letter attached as **Exhibit "D"**.

29. During the Fall of 2022 and into the Winter of 2023, Gibson's pervasive and severe attempts to groom an inappropriate romantic relationship and entice a sexual response; both verbally and physically, began to get increasingly worse. On the night of January 24, 2023, and in the morning of January 25, 2023, after taking his subordinate to multiple breweries and bars, Gibson made unwanted advances and began to sexually assault and batter Mr. Rusk relentlessly. Gibson prevented Mr. Rusk from calling for help, and forcefully prevented Mr. Rusk from getting away from him by grabbing him and holding him against Mr. Rusk's truck, depriving Mr. Rusk the opportunity to flee and seek help. Gibson continued to get more sexually and physically aggressive and his subsequent actions left Mr. Rusk with no other viable option but to reasonably defend himself, given the circumstances as he perceived them during those moments in real time. As a result, Mr. Rusk was placed on unpaid administrative leave, and has pending criminal charges. The video of the incident is attached as **Exhibit "E"**.

30. Mr. Rusk, sometime in or around December of 2023, approached in private discussions, his next-in-line supervisor, Lieutenant Gregory White (hereinafter "White"), on numerous occasions regarding Gibson's unwanted conduct alleged in this action.

Verification that Mr. Rusk informed White of Gibson's unwanted conduct is found in footage captured from Investigator Heilman's body-worn Axon camera (AXON BODY 3 - SN:X60A4572X), attached as **Exhibit "F"**. **Exhibit "F"** has audio and visual footage that shows an interview Investigator Heilman conducts with White. During playback of **Exhibit "F"**, White can be observed seeking approval/confirmation from Assistant Chief Humphries about the time-frame that Mr. Rusk reported the aforementioned behaviors; furthermore, indicating that Assistant Chief Humphries also failed to intervene despite having known. Further verification of Mr. Rusk informing White of Gibson's unwanted conduct is found in an email obtained by a FOIA request, attached as **Exhibit "G"**.

31. Mr. Rusk does not agree with White's perceived recollection of their discussions regarding Gibson as detailed in **Exhibit "F"** and **Exhibit "G"**, and affirmatively denies ever telling White that he would handle the situation, and further denies that he followed up with White advising that the issues they had discussed in private had been resolved.

32. Despite Mr. Rusk's disagreement with White's recollection of the content of their private discussions, the conduct that White does admit Mr. Rusk informed him of contained in **Exhibit "F"** and **Exhibit "G"** is still conduct identified in the James City County Policies and Procedures Manual, attached as **Exhibit "H"**, and prohibited under Section 7.6 "Categories of Inappropriate Conduct", more specifically falling under Category 2 and 3 inappropriate conduct. White had a duty to report and investigate Mr. Rusk's issues regarding Gibson, instead he recklessly disregarded Rusk's complaints, both the conduct White recalls in **Exhibit "F"** and **Exhibit "G"** and the conduct Mr. Rusk alleges in this action to have reported to White. Neither White, Assistant Police Chief Humphries, nor any other authority or supervisor within the Police Department intervened to address Mr.

Rusks concerns regarding Gibson's inappropriate and unlawful and unwanted conduct, and recklessly disregarded his pleas for help, despite the James City County Policies and Procedures Manual stating in Section 10.8(B) that Department Directors and Supervisors shall "(1) [e]nsure that the work environment is free from all types of unlawful discriminatory harassment…" and further, "(2) [t]ake prompt, appropriate action within their work units to resolve any complaint and to prevent the incidence of discriminatory harassment."

33. James City County Policies and Procedures manual, Section 10.8(C) affirms that "Discriminatory Harassment is a form of discrimination that violates Title VII of the Civil Rights Act of 1964…[and] includes but is not limited to…Sexual Harassment." Section 10.8 further states that "Sexual advances, whether verbal or physical in nature, are unlawful and constitute sexual harassment when: (a) submission to such advances is an explicit or implicitly condition of employment; (b) submission to or rejection of such advances affects the job the employee holds; or (c) the conduct substantially interferes with the employee's work performance by creating an intimidating, hostile, or offensive work environment."

34. James City County and their Policy and Procedures provide a formal complaint form for reporting Discriminatory Harassment, however, out of fear of retaliation, Mr. Rusk did not submit one. Mr. Rusk, in hopes to limit any retaliation, went up the chain of command to Lieutenant White, who was directly above Gibson, and told Lieutenant White about the continuous issues with Gibson's conduct alleged in this action and begged him to be put under another supervisor.

35. Upon information and good faith belief, Chapter 10 of the James City County Policies and Procedures Manual, attached as **Exhibit "H"**, has not been updated since January 14, 2014.

36. An assessment of the Police Department conducted by Dr. Tamara N. Rodenberg in October of 2022, attached as **Exhibit "I"**, corroborates Mr. Rusk's fear of retaliation and indicates that he is not alone in his fear: "There is a perceived lack of leadership in the direction of the Department, process for solving issues, and trust in Command Staff's ability to lead the day-to-day concerns of the Department. If someone speaks out, there is a fear of retaliation manifested in perception of who receives promotions, unfair assignments, and efforts to avoid interactions/conversation." The same report includes later, regarding interviews made as part of the assessment, that "Issues raised throughout these conversations include an overarching discontentment with top leadership noting the lack of strong visionary, collaborative, and inspiring direction. The perception of a significant lack of communication has led to a sense of avoidance of employees, limited to friendships, poor to no communication, favoritism, and retaliation."

37. Further evidence of the toxic environment, favoritism, and the lack of trust cultivated within the Police Department is evidenced by the James City County Police Department Review conducted by the Virginia Association of Chiefs of Police attached as **Exhibit "J"**, which states that interviewed persons (officers and employees of the Police Department) "did not trust the promotional process…many described the workplace as toxic…some said they were happy to retire as soon as they can…there was no trust in the executive staff…all indications are that the department needs a new, more positive culture."

38. The Defendants' conduct has completely ruined Mr. Rusk's life. The shocking and frightening events that occurred to Mr. Rusk on January 24 and 25 of 2023, combined and in conjunction with the Defendants' conduct alleged in this action has caused Mr. Rusk to suffer substantial mental health issues, and stress, which have manifested themselves into physical ailments. This has created a need for substantial mental health treatment, numerous scheduled and emergency visits, as well as a continuous need for medications and their respective adjustments. As a result of the Defendants' conduct, alleged in this action, Mr. Rusk has suffered, and will in the future suffer, damages including substantial pecuniary losses, medical expenses, medication expenses, expenses for mental health treatment, loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

## COUNT ONE
### HOSTILE WORK ENVIRONMENT - SEXUAL HARASSMENT
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e

39. Mr. Rusk incorporates herein by reference the allegations made above as though fully set forth herein.

40. 42 U.S.C. § 2000e-2(a) provides that it is an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

41. Gibson's conduct towards Mr. Rusk, described above, was unwelcome.

42. The conduct was based on Mr. Rusk's sex.

43. The conduct was sufficiently severe and pervasive to alter Mr. Rusk's working conditions of employment and to create an abusive hostile working environment.

44. The Defendants are responsible for the culture and environment that allowed Gibson's conduct and said conduct was and is imputable on the Defendants based on agency principles and vicarious liability, as outlined in the Complaint. Furthermore, after learning of Gibson's conduct the Defendants recklessly ignored the conduct knowing it violates federal law thereby warranting punitive damages.

45. The Defendants, by and through its employees, officers, supervising officers, and command staff, violated Mr. Rusk's rights under Title VII (42 U.S.C. § 2000e, et seq.), by engaging in actions and/or activities constituting hostile work environment - sexual harassment against Mr. Rusk.

46. Defendants, through its agents and employees, have discriminated against Mr. Rusk by sexually harassing Mr. Rusk and by failing to implement and enforce a sufficient policy against sexual harassment. These practices of discrimination against Mr. Rusk are in direct violation of his rights guaranteed by Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e et seq. and the Civil Rights Act of 1991.

47. These violations by the Defendants were based on Mr. Rusk's sex and affected the terms, conditions, and/or privileges of Mr. Rusk's employment.

48. As a direct and proximate result of the unlawful conduct of Defendants, Mr. Rusk has suffered, and will in the future suffer, damages including substantial pecuniary losses, medical expenses, medication expenses, expenses for mental health treatment, loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of

fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

49. In addition, Mr. Rusk has incurred, and continues to accrue, attorneys' fees and other costs related to the prosecution of this action.

## COUNT TWO
## VIOLATION OF RIGHTS SECURED
## 42. U.S.C. SECTION 1983

50. Mr. Rusk incorporates herein by reference the allegations made above as though fully set forth herein.

51. The Defendants are a government agency and the conduct of Gibson, and the Defendants described above was done under the color of state law.

52. The Defendants deliberately acted against Mr. Rusk as outlined above because of his sex (male). Mr. Rusk was deprived by the Defendants of his Constitutional rights and protection by the laws of the United States.

53. The Defendants were and are in violation of 42 U.S.C. § 1983 by denying Mr. Rusk his rights afforded by Title VII and equal protection of the laws set forth by the Fourteenth Amendment to the United States Constitution. Mr. Rusk's sex (male) was the Defendants' prime motivating factor for recklessly disregarding Mr. Rusk's complaints, and effectively terminating him May 16, 2024. The Memorandum for the Proposed Termination of Employment is attached at **"Exhibit K"**.

54. Had Mr. Rusk been female, the Defendants would have never allowed the conduct alleged to have been reported to White to continue and that female officer would have been assigned a different supervisor and Gibson would mostly likely have been

immediately terminated. However, due to his sex his complaints were not taken seriously and ignored. Furthermore, due to his sex he was not protected and supported by the Defendants after the events displayed in **Exhibit "E"**. Instead, because of Mr. Rusk's sex, he was place in jail for over 20 days, placed on unpaid administrative leave, while Gibson was placed on paid leave, and then effectively terminated prior to the outcome of any criminal trial.

55. As a direct and proximate result of the unlawful conduct of Defendants, Mr. Rusk has suffered, and will in the future suffer, damages including substantial pecuniary losses, medical expenses, medication expenses, expenses for mental health treatment, loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injury in amounts to be determined at trial.

56. The conduct of the Defendants was recklessly indifferent to federal laws established to protect Mr. Rusk's rights.  The named Defendants acted willfully and maliciously warranting punitive damages to punish and deter the Defendants and others from the same egregious actions.

## PRAYER FOR RELIEF

**WHEREFORE**, Mr. Rusk prays for judgment against the Defendants, jointly and severally, as follows:

57. An Order permanently enjoining and restraining Defendants, their agents, officers, servants and employees from sexually harassing other employees; and from failing to implement and enforce a sufficient policy against sexual harassment;

58. Compensatory damages for back pay, lost future earnings, and compensation for medical expenses, medication expenses, expenses for mental health treatment, loss of career opportunities, promotions and advancements; loss of retirement benefits; loss of fringe benefits; embarrassment; humiliation and inconvenience; severe mental anguish, stress; pain and suffering; loss of enjoyment of life and other non-pecuniary injuries and other lost employment benefits in an amount not less than $5,500,000.00 for all claims, and $2,750,000.00 for each individual claim;

59. That the Defendants, their agents and employees be enjoined from depriving Mr. Rusk and other males of equal employment opportunities under Section 706(g) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e(g), which empowers this Court to permanently enjoin the Defendants from any and all violations of the rights that Mr. Rusk herein seeks to assert under Title VII of the Civil Rights Act of 1964, as amended;

60. Punitive damages in the amount of Three Hundred Thousand Dollars ($300,000.00) for each claim;

61. Reasonable costs and attorneys' fees against the Defendants;

62. Any and all additional relief as the Court may deem appropriate.

Date:  June 25, 2024                    Respectfully submitted,


By: ___/s/ *William Peyton Akers, Esq.*___

William Peyton Akers, Esq. (VSB# 89933)
Akers & Cleator Law Group, P.L.L.C.
3917 Midlands Rd., Bldg. 2, Ste. 100
Williamsburg, VA 23185
E-Mail: *peyton@aclawva.com*
Tel: 757-707-8838
Fax: 757-707-8828
*Counsel for the Plaintiff*