**James City County**

**Personnel Policies and Procedures Manual**

THIS PAGE INTENTIONALLY LEFT BLANK

# James City County

# Personnel Policies and Procedures Manual

Chapter 1        Authority and Administration

Chapter 2        Employment

Chapter 3        Drug Free Workplace

Chapter 4        Compensation Plan

Chapter 5        Employee Benefits

Chapter 6        Employee Development

Chapter 7        Standards of Conduct

Chapter 8        Grievance Procedure

Chapter 9        Records and Reports

Chapter 10       Diversity and Equal Opportunity

Chapter 11       Safety Policy

Chapter 12       Conflict of Interest and Whistleblower Policy

## ***Appendices***

Appendix A    Diversity Strategic Plan

Appendix B    Affirmative Action Plan

Appendix C    Discriminatory Harassment Complaint Form

Appendix D    Equal Employment Opportunity

Appendix E    Hazard Communication Plan

Appendix F    Bloodborne Pathogens

THIS PAGE INTENTIONALLY LEFT BLANK

## **CHAPTER 1**

### **Authority & Administration**

Section 1.1          Authority

Section 1.2          Administration

Section 1.3          Coverage of Personnel

Section 1.4          Severability

Effective 7/1/99

CHAPTER 1

AUTHORITY AND ADMINISTRATION

Section 1.1     Authority

          The Board of Supervisors is empowered under the Code of the State of Virginia to establish departments, to employ personnel and to set salaries.  The Board of Supervisors thereby adopts the personnel policies contained in this manual.  Policies are subject to be changed at the discretion of the Board of Supervisors.  Any policy in conflict with federal, state, or local law shall be superseded by the pertinent law.

Section 1.2     Administration

          The County Administrator or a designee shall be responsible for the administration of the County personnel program.  Decisions made by the Human Resource Director in administering these policies may be appealed by a department director to the County Administrator.

          This manual is intended to address most personnel situations and actions for which the County Administrator is responsible.  However, those situations not specifically covered shall be interpreted and acted upon by the County Administrator or a designee in keeping with the intent of these policies.

Section 1.3     Coverage of Personnel

          The personnel policies shall apply to all employees in regular and limited-term positions except where otherwise noted in James City County, the James City Service Authority, the James City County Transit Company, and the James City County Social Services Department.  Policies shall specifically apply to other employees only where expressly stated.

Section 1.4     Severability

          If any part, section, sub-section, sentence, clause or phrase of this policy is for any reason held to be unconstitutional or invalid, such decision shall not affect the constitutionality or validity of the remainder of this policy.

Rev. 1/14/2014

Effective 7/1/99

CHAPTER 2

EMPLOYMENT

Section 2.1      Philosophy

Section 2.2      Policy

Section 2.3      Legal Basis

Section 2.4      Definitions

Section 2.5      Recruitment

Section 2.6      Application Process

Section 2.7      Selection Process

Section 2.8      Hiring

Section 2.9      Orientation for New Employees

Section 2.10    Introductory Employment Period

Section 2.11    Work Hours, Schedules and Practices

Section 2.12    Separation from Employment

Section 2.13    Reduction in Force (RIF)

Section 2.14    Elimination of Limited Term or Other Positions

Revised 1/14/2014

Section 2.1    <u>Philosophy</u>

        To support our value of "Demonstrating high standards of excellence, efficiency and commitment to service," James City County seeks to attract and retain a diverse group of excellent employees whose experiences and qualifications best meet the needs of the organization.

Section 2.2    <u>Policy</u>

        It is the policy of James City County to recruit and hire without regard to race, color, religion, gender, national origin, age, disability, pregnancy, or sexual orientation. Employment practices shall be in compliance with Chapter 10, "Diversity and Equal Employment Opportunity."

Section 2.3    <u>Legal Basis</u>

        James City County is committed to ensuring that our employment policies are in compliance with all applicable employment laws and regulations, including but not limited to: Title VII of the Civil Rights Act; the Fair Labor Standards Act; the Age Discrimination in Employment Act; the Americans With Disabilities Act; the Uniformed Services Employment and Reemployment Rights Act; and, the Fair Credit Reporting Act.

        In accordance with the Charter of James City County, § 4.2., the County Administrator is responsible for the administration of the affairs of the County including the authority to employ and to dismiss employees.

Section 2.4    <u>Definitions</u>

    A.   <u>Contract Employee</u> – A person providing services to the County through a temporary employment or leasing agency, as an independent contractor, or who in any other way fails to meet the Internal Revenue Service definition of an employee.

    B.   <u>Family Member</u> – For purposes of this Chapter, family member is defined as spouse, parent, guardian, brother, sister, son, daughter, grandparent, grandchild; any of these as an in-law or as a step relation; or any person residing in the same household as the employee.

2-2

Revised 1/14/2014

C.   <u>Full-Time Position</u> – A Full-time position is one that has as its regular work schedule the number of hours below:

| Sworn Fire Personnel | 2,916 hours per year |
|---|---|
| Sworn Police Personnel | 2,167 hours per year |
| All other personnel | 2,080 hours per year |

Sworn Fire and Police personnel may be assigned as needed to full-time positions authorized to work 2,080 hours.

D.   <u>Internal Candidate</u> – Internal candidates are job applicants who are current employees in full or part-time Regular, Limited-Term, Temporary or On-Call positions. Eligibility as an internal candidate varies for employees in positions categorized as "Other." Specific information regarding eligibility is available from the Human Resource Department.

E.   <u>Limited-Term Position</u> – A Limited-Term position is one established by the Board of Supervisors, funded under a special revenue source other than the operating General Fund or James City Service Authority revenues, and projected to continue subject to funding. If the funding should end, the position has no guarantee of general County funding. A Limited-Term position may be either full-time or part-time. Employees in Limited-Term positions work a fixed number of hours per year and generally a fixed number of hours per week.

F.   <u>On-Call Position</u> – An On-Call position is created from a pool of hours established by the Board of Supervisors or County Administrator. On-Call hours are established to provide on-going public service in situations where work schedules, such as the number of hours per day, or number of days per week, vary from day-to-day or week-to-week due to operational needs; or to supplement staff during absences or peak work times. Employees in On-Call positions may be discharged at the will of the department manager without cause or hearing.

G.   <u>Other Position</u> – An Other position is one in a department or office which follows some or none of the County's personnel policies. An Other position may include members of boards and commissions; elected and appointed officials or positions in the offices of elected or appointed officials; or positions in agencies for which the County serves as fiscal agent. An Other position is projected to continue indefinitely and may be either full-time or part-time. Policies followed by Other positions vary and specific information is available from the Human Resource Department.

H.   <u>Part-Time Position</u> – A part-time position is one which has as its regular work schedule less than the number of full-time hours as described in <u>Section 2.4 C</u>.

Revised 1/14/2014

I.    <u>Regular Position</u> – A Regular position is one established by the Board of Supervisors, funded from the operating General Fund or James City Service Authority revenues and projected to continue indefinitely unless the Board eliminates it. A Regular position may be either full-time or part-time. Employees in Regular positions work a fixed number of hours per year and generally a fixed number of hours per week.

J.    <u>Supervisor, Direct</u> – A direct supervisor is an employee who assigns, guides, monitors, evaluates the work and signs the performance evaluation of one or more employees.

K.    <u>Supervisor, Indirect</u> – A supervisor anywhere in the line of supervision above an employee's immediate supervisor, i.e. the employee's supervisor's supervisor.

L.    <u>Temporary Position</u> – A Temporary position is one established by the Board of Supervisors or the County Administrator to perform a specific function with an ending date, such as a special project or to substitute when a position is vacant. The term of employment depends on the length of time needed to perform the special function, but has a specific ending date which shall not exceed 12 months. Temporary positions are reviewed each fiscal year. The Board of Supervisors or County Administrator may extend a Temporary position. A Temporary position may be either full or part-time and may have either a fixed or fluctuating number of hours per week. Employees in Temporary positions may be discharged at the will of the County Administrator without cause or hearing.

<u>Section 2.5</u>    <u>Recruitment</u>

The Human Resource Department works collaboratively with hiring departments to identify talent within the organization or to design a recruitment strategy to solicit a qualified and diverse applicant pool from outside the organization to fill a vacant position.

A.    <u>Recruitment Necessary</u> – Vacancies for all full or part-time Regular and Limited-Term positions must be listed on the Human Resource Department's employment opportunities announcement, unless otherwise stated in <u>Section 2.5 B.</u> A variety of other recruitment sources may also be used as determined in the recruitment strategy, including but not limited to, websites, newspapers, professional publications, job fairs, or radio announcements.

Recruitment is also necessary when a part-time Regular or Limited-term position is approved by the Board of Supervisors to become full-time. In the event the incumbent in the part-time position is not selected for the full-time position, the Reduction in Force policy would apply.

Revised 1/14/2014

B.   <u>Recruitment Not Necessary</u> - Recruitment is not necessary when:

1.   The original position, or a position in the same job class, becomes vacant within twelve months of the date the position was filled from the most recent recruitment and a viable applicant pool still exits.
2.   An employee is transferred or demoted to a vacant position.
3.   An employee is placed in a vacant position due to a reduction in force.
4.   The position is Temporary or On-call.

C.   <u>Length of Advertisement</u> – Positions advertised without a closing date shall remain open for a minimum of seven calendar days. Applications for such positions are accepted on an on-going basis or until all vacancies are filled.

Positions advertised with a closing date shall remain open for a minimum of seven calendar days. Applications will not be accepted after the closing date unless the recruitment period is extended or the job is re-advertised.

D.   <u>Internal Recruitment</u> – The Department Director may request that recruitment be restricted to internal candidates if it is felt that employees within the organization may possess the experience and qualifications required for a vacant position.

When organizational needs dictate, such as position reclassifications or departmental reorganizations which do not result in position vacancies, and with the approval of the Human Resource Director, internal recruitment may be limited to employees in specific departments, divisions, or to incumbents of specific job classes or positions.

E.   <u>External Recruitment</u> – In those instances where recruitment is not restricted within the organization, recruitment for the vacant position shall be conducted outside the organization and applications from the public and from employees shall be accepted.

F.   <u>Recruitment Incentives</u> - Hiring departments may offer incentives as a strategy to fill positions which have been identified by Human Resources as having significant recruitment and retention problems or are critical to the organization's mission and ongoing operations. Up to 5% of the minimum of the salary range of the job class to which the candidate is hired may be used to fund the incentives. Exceptions may be granted by the County Administrator.

All incentives are paid by the hiring department and must be approved by the Department Director and the Human Resource Director prior to

Revised 1/14/2014

incurring the expense. Incentives may not be in the form of bonuses or other direct payments to the candidate. Recruitment and retention incentives include the following:

1.  Referral Incentive – Hiring departments, in collaboration with Human Resources, may develop programs to give Incentive Awards to employees who refer external candidates selected for positions.

2.  Payment for Recruitment Expenses - Departments may arrange and pay for a County hotel or motel room for lodging associated with the interview and selection process. Applicants may also be reimbursed for verified travel expenses associated with the interview and selection process. Reimbursement shall be consistent with James City County travel policy.

3.  Leave – A balance up to a maximum of 160 hours of annual leave or paid time off (PTO) may be given as a condition of employment.

    Successful candidates may also be given a higher annual leave or PTO accrual rate at the time of initial hire. Accrual would remain at that rate until years of service with the County are consistent with accrual rates for employees with annual leave and for employees with PTO as outlined in in Chapter 5.

    Any leave balances beyond normal accrual will not be paid if the employee leaves employment within a year.

All terms and conditions of any recruitment and retention incentives, such as requirements for satisfactory performance, duration of employment and repayment terms if the terms and conditions are not met shall be included in the formal offer of employment letter issued by the Human Resource Department.

G.  Employment Agencies – Employment agencies may be used to fill positions temporarily. The Human Resource Department will coordinate with the department and a temporary employment agency. The hiring department will then work directly with the temporary employment agency for timekeeping and billing.

    Employment agencies may also be used to solicit qualified applicants for vacancies. Payment of fees for service or placement costs is subject to available departmental funding and shall be approved in advance by the Department Director and Human Resource Director.

Revised 1/14/2014

Section 2.6     Application Process

All individuals interested in employment with James City County must apply through the application process designated by the Human Resource Department.

The County may disqualify an applicant who does not meet the requirements specified in the job description or job posting, fails to submit complete, accurate or current information, or makes false or deceptive statements.

Section 2.7     Selection Process

The Human Resource Department works with hiring supervisors to develop a selection process that is non discriminatory and designed to identify the best candidate for the position. Selection tools will be used to assess knowledge, skills and abilities required for the position. All selection tools shall be coordinated with and approved by the Human Resource Department and shall be administered consistently and impartially.

A.      Pre-Employment Selection Tools – Selection tools, including but not limited to the following, may be used in the pre-employment process: oral interviews; skills demonstrations; presentations; work samples; portfolios; written knowledge/skills assessment exercises; driving record, criminal history or sex offender checks authorized by the applicant; and reference checks.

B.      Post-Offer Selection Tools - The following checks and assessments may be used only after a contingent offer of employment has been made: background check, fitness assessment, physical examination, or personality suitability assessment. Failure to successfully complete any of these assessments will result in the withdrawal of the contingent offer of employment.

C.      Refusal or Failure to Participate – Any applicant refusing or failing to undergo any part of the selection process shall be eliminated from further consideration for the position. In such a situation, the applicant shall be considered to have withdrawn the employment application.

D.      Veteran Hiring - In accordance with the Code of Virginia §15.2-1509, the County shall take into consideration an individual's status as an honorably discharged veteran in hiring policies and practices. Applicants identified as veterans, who meet all of the knowledge, skills and eligibility requirements for an available position, shall be considered for employment by the hiring department.

A "veteran" is any person who has received an honorable discharge from the armed forces of the United States and has (1) provided more than 180 consecutive days of full-time, active duty service in the armed forces of

Revised 1/14/2014

the United States or reserve components thereof, including the National Guard, or (2) has a service-connected disability rating fixed by the United States Veterans Administration.

E.    <u>Physical Examinations</u> - Physical examinations are performed by a medical professional designated by the County and are required for identified job classes to: ensure that candidates offered employment and employees in these job classes are able to safely and satisfactorily perform the required physical aspects of the job; comply with local, State and Federal regulations; and ensure a safe work environment and protect the public.

Job classes requiring physical exams are identified in the Compensation Plan.

The content of the physical exam varies by job class based on the physical requirements of the job. The County pays the cost of the required post-offer, post-employment, or fitness for duty physical examinations.

F.    <u>Reference Checking</u> - It shall be the responsibility of the hiring supervisor to check employment references of the candidate being considered for employment prior to extending a job offer.

<u>Section 2.8</u>    <u>Hiring</u>

A.    <u>Job Offer</u> – The Human Resource Department or the hiring supervisor may extend a verbal job offer to the candidate selected for the position. The Human Resource Department shall issue a formal written offer of employment.

B.    <u>Employment Date</u> - The employment date is the date on which an employee was initially employed, provided there has been no break in service. The employment date is the date used to determine length of service with the County for computing service recognition and leave accrual rates, unless a higher annual leave or paid time off accrual rate was negotiated at the time of initial hire.

C.    <u>Reinstatement</u> - A former employee may be reinstated to the position he or she held or to a vacant position in the same job class in the same department within one year of separation from the County.

As a condition of reinstatement, the employee shall repay all annual and sick leave or paid time off payments received at the time of separation and leave balances shall be restored. A reinstated employee shall retain the original employment date and the applicable leave accrual rate upon return. Retirement benefits may be restored as permitted by those programs.

2-8

D.  <u>Transfer</u> – Transfer is the movement of an employee to a vacant position in the same salary range. Employees may be transferred at the discretion of the organization to meet organizational needs. Transferred employees do not serve an introductory period and are compensated in accordance with <u>Section 4.12 C</u>.

E.  Promotion - A promotion is the selection of an employee, after competition with internal or external applicants, to a different position in a higher salary range. Employees who are promoted receive a salary increase in accordance with <u>Section 4.12 A</u>.

F.  <u>Voluntary Demotion</u> – A demotion is the movement of an employee to a different position in a lower salary range. An employee may choose to accept a position in a lower salary range for a number of reasons, such as a career change, career broadening experience, for personal reasons or to remain employed if his or her position is eliminated. A voluntary demotion may or may not require a reduction in salary. See <u>Section 4.12 D</u>.

G.  <u>Hiring Overlap</u> - In order to provide uninterrupted services and a seamless transition, the County Administrator may approve hiring an employee prior to the termination date of the incumbent. This hiring overlap is contingent upon available funding within the department and shall not exceed thirty calendar days. Exceptions to the length of overlap may be granted by the County Administrator.

H.  <u>Hiring of and Supervision of Family Members</u> – No family member, as defined in <u>Section 2.4 B</u>., shall be hired, promoted, or temporarily assigned as a direct or indirect supervisor or report of another member of the same family. The selection of a family member of a department director to fill a position in any department shall be subject to approval by the County Administrator prior to hire. A family member of the County Administrator or Board of Supervisors shall not be hired by the County in any capacity.

I.  <u>Minimum Age</u> - Employees must be a minimum of sixteen years of age by the date of hire. Employees between age sixteen and eighteen may only be hired in positions which meet the Child Labor Regulations of the Fair Labor Standards Act, CFR, Title 29, Chapter V, Part 570.

J.  <u>Licenses and certifications</u> – Some positions require specific licenses or certifications, which are listed in the job description. Failure to maintain required licenses or certifications may result in demotion or termination of employment.

Revised 1/14/2014

K.   <u>Special Public Safety Employment Conditions</u> - Employees in positions in the Police or Fire Departments which are covered by the "Heart and Lung legislation", Code of Virginia §65.2-402, and who began employment on or after July 1, 1994, shall not use tobacco products in any form on or off duty. New hires who use tobacco products may be granted a period of time in which to stop. Failure to refrain from using tobacco products in any form on or off duty may result in termination of employment.

L.   <u>Holding More Than One County Job</u> - Employees in nonexempt positions, with the approval of the Human Resource Director, may hold more than one County job, either full or part-time, in situations where work hours can be monitored and overtime paid in accordance with the overtime requirements of the Fair Labor Standards Act, CFR, Title 29, Chapter V, Part 553.

Employees in exempt positions may hold more than one County job, either full or part-time, with the approval of the respective Department Directors.

M.   <u>Volunteering</u> – Employees in nonexempt positions may volunteer to perform work in other County jobs without compensation as long as the services are offered freely, without pressure or coercion, and the work is not the same type of work the individual is employed to perform for the County. Any such volunteer work shall be reviewed by the Human Resource Department for compliance with requirements of the Fair Labor Standards Act, CFR, Title 29 Part 553, Subpart B prior to beginning the volunteer work.

Employees in exempt positions may volunteer to perform work in any position.

N.   <u>Career Ladder Advancement</u> - A career ladder advancement is the progression of an employee from a position in a designated career ladder class to a higher level position of that class.

Upon meeting the minimum qualifications for the higher level career ladder position as required in the job description, and upon a review of the employee's qualifications, experience and work performance, the Department Director may approve the career ladder advancement.

Failure to maintain the minimum requirements, required certifications or to perform the work requirements of the career ladder position will result in a demotion to the career ladder position the employee is performing or for which he or she is qualified. Such career ladder demotions will result in a salary reduction consistent with <u>Section 4.12 B</u>.

O.   <u>Hiring Within Career Ladder Levels</u> – With the approval of the Department Director, external candidates may be hired at a career ladder

Revised 1/14/2014

level for which they meet the minimum qualifications as required in the job description.

P.    Temporary Assignments

1.    An employee may be temporarily assigned to a vacant position, or a prescribed set of duties, other than that to which officially assigned, for a variety of reasons including emergency situations, abnormal workload, organizational changes, job vacancies, unmet needs pending the establishment of a new position, development opportunities; or for other purposes necessary to provide quality public service.

2.    Duration, Approval, Documentation, and Compensation

| Duration | Six (6) Weeks within a 12 month period | Between 6 Weeks and Six (6) Months within a 12 month period | Between 6 Months and One (1) Year Within a 12 month period | More than 1 Year |
|---|---|---|---|---|
| Approval | Supervisor | Department Director (DD) | Human Resources (HR) | County Administrator (CA) |
| Documentation | None | None | DD writes business reasons and expected duration to HR; if HR concurs, they notify Payroll | DD writes business reasons and proposed duration; HR makes recommendation; CA decides |
| Compensation | No change | No change | If position in higher salary range, increase consistent with promotion effective the beginning of the seventh month | Maintains increase given at 6 months |

Exceptions may be granted by the County Administrator.

Revised 1/14/2014

3.      <u>Salary Adjustment Considerations</u>

    a.      <u>Performance Increase</u> - Performance increases effective during the portion of the assignment in which the employee is receiving a temporary salary adjustment shall be handled in accordance with <u>Section 4.11.D.4.</u>

    b.      <u>End of Temporary Salary Adjustment</u> - When the employee returns to her regular duties, the salary shall be reduced by the same dollar amount by which it was temporarily increased.

<u>Section 2.9</u>      <u>Orientation for New Employees</u>

A.      <u>Human Resource Department Responsibility</u> – The Human Resource Department will offer assistance to employees in enrolling in applicable benefits and will provide ways for them to learn more about the County and what is expected from them as County employees.

B.      <u>Department Responsibility</u> – The Department Director is responsible for ensuring that new employees are oriented to the work site and receive information regarding job duties, responsibilities, expectations and work rules.

C.      <u>Employee Responsibility</u> – The employee is responsible for attending required orientation and training sessions and for being familiar with the James City County <u>Personnel Policies and Procedures Manual</u> and departmental policies and procedures.

<u>Section 2.10</u>      <u>Introductory Employment Period</u>

The introductory employment period is designed to give both the employee and the County an opportunity to determine whether the correct employment decision has been made.

A.      <u>Initial Introductory Period</u> – Employees initially hired in Regular and Limited-term positions shall serve an introductory period of at least six months.  Some job classes, because of a long training period or annual work cycles, require a one-year introductory period. Such job classes are identified in the Compensation Plan.

B.      <u>Promotional Introductory Period</u> – Employees promoted to Regular or Limited-term positions shall serve an introductory period of six months.

C.      <u>Extension</u> - The Department Director, with the concurrence of the Human Resource Director, may extend either an initial or promotional

Revised 1/14/2014

introductory period for up to six additional months if it is deemed necessary to fully evaluate the hiring decision.

D.     Termination During the Introductory Period – At any time during the introductory period if the employee determines that employment in the position or with the County is not a good match or in the employee's best interest, the employee may resign from employment in good standing.

Should the County determine that the hiring decision does not meet the needs of the organization, the employee may be discharged at the will of the County Administrator without cause or hearing at any time during the introductory period. Employees in introductory periods are not eligible to use the Grievance Procedure.

Section 2.11     Work Hours, Schedules and Practices

A.     Official Work Hours – The official work hours for County office and administrative employees shall be 8:00 a.m. to 5:00 p.m. Monday through Friday with a one hour unpaid lunch break. Lunch or other meal breaks may not normally be taken at the end of the work period. Because of differing requirements in operational departments, official work hours for a County office may vary with the approval of the County Administrator.

B.     Alternative Work Schedule – An alternative work schedule is the daily work schedule of an individual employee that deviates from the official business hours of 8:00 a.m. to 5:00 p.m. Monday through Friday. Alternative work schedules must be approved by the Department Director.

Alternative work schedules may include any daily or weekly work schedule or work arrangement designed to enhance service to customers or increase productivity, such as flex-time, compressed work week, or telecommuting. Alternative work schedules must be in compliance with the overtime requirements of the Fair Labor Standards Act, CFR, Title 29, Chapter V, Part 553.

Alternative work schedules for full-time positions must include a minimum of a 30 minute unpaid meal break at a time approved by the supervisor. Exceptions may be granted by the County Administrator.

Employees working alternative schedules who do not work on a holiday are compensated for a day as defined in Section 5.4.A.3.c.

C.     Outside Employment – The County is considered the primary employer. An employee may hold another non-County job provided that an actual or perceived conflict of interest is not created; the employment does not discredit or potentially discredit the County; and, the work of the second job does not distract from the performance of County duties.

2-13

Requests to hold second jobs must be made in writing and approved by the Department Director and Human Resource Director prior to beginning such work.  If the Department or Human Resource Director determines at any time that the other employment causes a conflict, interferes with County duties, or is disruptive to the workplace, he shall be requested to terminate the outside employment. Refusal to comply with such a request may result in termination of employment.

Employees are prohibited from performing work of second jobs or businesses during paid work time. This includes sales of services or products, such as cosmetics, jewelry, or dishware; scheduling appointments with customers; telephone calls; use of electronic mail; or any other related activities.

D.     <u>Solicitations</u> – Solicitations for charity, fund-raising, or staff gifts are allowed only with the Department Director's approval that such activities do not detract from the employee's work performance and are not disruptive to the workplace.

Under no circumstances shall an employee be required or obligated to contribute to any solicitation request.

E.     <u>Fitness for Duty</u> – To ensure an employee is safely and fully able to perform the essential functions of the employee's job, the employee may be directed by the Department Director, with the concurrence of the Human Resource Director, to be examined by a County designated medical professional. The employee may also seek, at his own expense, an evaluation by a medical professional of his choice in addition to the evaluation by the County designated medical professional.  If, after consultation with the employee's medical professional, the County designated medical professional determines that the employee is unable to perform the essential functions of the job, the employee's continued employment will be addressed in accordance with applicable policies.

F.     <u>Election to the Board of Supervisors</u> – An employee may not serve as a member of the James City County Board of Supervisors while employed by the County or the James City Service Authority. This does not prohibit a County employee from seeking election to the Board of Supervisors; however, the employee shall submit his or her resignation within seven (7) days of being elected. In the event the employee fails to resign, the County Administrator shall terminate his or her employment.

Revised 1/14/2014

Section 2.12   Separation from Employment

    A.   Reference Giving - Requests for references may be referred to the Human Resource Department. Supervisors may also furnish, at the request of a prospective employer, factual information, given in good faith, about a current or former employee's professional conduct, reasons for separation or job performance. Information provided should be documented facts not opinions or interpretations of facts. Employees are subject to civil liability if the information provided is false, intended to deliberately mislead or is provided with reckless disregard for whether or not it is false, per the Code of Virginia § 8.01-46.1.

    B.   Resignations - To leave employment in good standing, an employee must give written notification of the intended resignation and resignation date to the immediate supervisor.  Written resignation is also required for retirement.

        Employees are asked to give as much notice as possible to ensure a smooth transition, but are required to give a minimum of fourteen (14) calendar days notice of an impending resignation. Failure to do so shall result in a loss of annual and sick leave or paid time off payments as outlined in Chapter 5.  Exceptions to leave forfeiture may be granted by the Department Director.

        Once a resignation has been accepted, it may be withdrawn only with the approval of the Department Director.

    C.   Termination by County Administrator – Employment may be terminated by the County Administrator for reasons including, but not limited to: inappropriate conduct in accordance with Chapter 7, failure to successfully complete introductory period; failure to continue to meet job requirements; loss of required certifications; unsatisfactory work performance, or a reduction in force.

Section 2.13   Reduction in Force (RIF)

    A.   Eligibility – The RIF policy applies only to employees in Regular positions who have successfully completed their initial introductory period. Employees in Limited Term, Other, Temporary, or On-Call positions are not covered.

    B.   Policy - Every reasonable effort shall be made to accomplish the elimination of a position without having to lay-off an employee in the event that Regular positions must be eliminated due to circumstances such as financial shortfalls, curtailment or reduction of services, reorganizing/streamlining operations, privatizing functions, or other situations.  The County shall attempt to achieve necessary reductions

Revised 1/14/2014

through attrition or through the placement of employees in other County positions. Assistance shall also be provided to seek employment outside the County, if necessary.

C.    <u>Alternatives to Reduction in Force</u> - The County shall take proactive steps whenever practical to avoid or minimize a reduction in force. Such steps may include the elimination of temporary or on-call hours, a hiring freeze, incentives for retirement, job sharing, use of part-time positions, or other strategies which may reduce expenses or hold open potential vacancies for employees whose positions will be eliminated.

D.    <u>Identifying Job Classes to be Eliminated</u> - In the event that positions must be eliminated, a number of factors shall be considered in identifying which job classes to eliminate. These include the County's vision, mission, and goals; the needs of our customers; skills needed in the organization; and source of funding of the job class. Reasons for selecting job classes to be eliminated shall be documented by the Department Director and submitted to the Human Resource Director and the County Administrator. The County Administrator shall make the final determination.

E.    <u>More than One Employee in a Job Class</u> - If there is more than one employee in a job class and it is necessary to reduce the number of employees in that class, the following factors will be considered in determining which employees will be subject to lay-off: job performance; skills contributed to the job; length of service with the County; and source of funding of the position. Reasons for selecting employees subject to lay-off shall be documented by the Department Director and submitted to the Human Resource Director and County Administrator. The County Administrator shall make the final determination.

F.    <u>Notification</u> - Employees in positions targeted to be eliminated will be notified in writing as soon as possible, but no fewer than 60 calendar days prior to the effective date of the elimination of the position.

G.    <u>Placement Within the Organization</u> - The Human Resource Department will meet with employees in positions identified to be eliminated to determine their skills, experience, education and training, and interests so that the Human Resource Department may identify other positions in the organization for which they may qualify, or for which retraining is feasible. Every reasonable effort shall be made to place employees in positions identified to be eliminated in another job within the County at the same, lower, or higher salary range. In such cases, the affected employee's pay will be handled in accordance with the compensation policies for promotion, transfer and voluntary demotion in <u>Section 4.12</u>.

H.    <u>Placement Outside the Organization</u> - Assistance in obtaining employment outside the organization shall be made available to the employee. This

Revised 1/14/2014

includes assistance in preparing resumes, training in interview skills, information on conducting a job search, use of telephones, computers, and typing support. Employees shall be given reasonable time off not charged to leave to interview for other jobs prior to the date the position is eliminated.

I.  <u>Employees Who Are Separated</u> - An employee who is separated from employment through a RIF shall be given preferential consideration for vacancies which occur for which the individual is qualified and makes application. Preferential consideration means that the employee will be eligible for internal, as well as, external employment opportunities; that the Human Resource Department will send Employment Opportunity Bulletins to the employee's home or designated e-mail address; and that applications from these employees, as long as they meet the minimum qualifications of the job, shall be referred to the hiring department. Preferential consideration shall be given for a period of 12 months from the date of separation. An employee hired under preferential consideration shall be considered reinstated.

Employees who are separated are eligible for payment of leave balances and other benefits in accordance with Chapter 5 of this Manual.

If the separated employee elects to continue County-sponsored group health insurance under COBRA, the County will continue to pay its share of the premium for up to six months, or until the employee is no longer eligible under COBRA, whichever comes first.

Separated employees and their immediate families shall continue to be eligible for services provided by the County's Employee Assistance Program for 12 months from the date of separation.

J.  <u>Employees Who are Not Separated</u> - Employees who retain their jobs through a RIF may also be affected in a number of ways such as by an increased workload and concerns about job security.  The Human Resource Department will work with departments to take actions to assist employees with the transition.

<u>Section 2.14</u>   <u>Elimination of Limited Term or Other Positions</u>

In the event that Limited Term or Other positions must be eliminated due to circumstances such as financial shortfalls, curtailment or reduction of services, reorganizing/streamlining operations, privatizing functions or other situations, the Human Resource Department will work with the affected departments to: notify employees in positions identified to be eliminated as far in advance as possible; meet with those employees to determine their skills, experience, education and training in order to identify other positions in the organization for which they may apply; and offer assistance in obtaining employment outside the organization

Revised 1/14/2014

including assistance preparing resumes, coaching in interview skills, or providing information on conducting a job search.

Employees who are separated are eligible for payment of leave balances and other benefits in accordance with Chapter 5 of this Manual.

Chapter2

Rev. 1/14/2014

CHAPTER 3

DRUG FREE WORKPLACE

Section 3.1        Policy Statement
Section 3.2        Guiding Principles
Section 3.3        Legal Basis
Section 3.4        Definitions
Section 3.5        Coverage
Section 3.6        Prohibited Substances
Section 3.7        Prohibited Conduct
Section 3.8        Exceptions
Section 3.9        Required Compliance
Section 3.10       Non-Compliance with Testing Requirements
Section 3.11       Treatment
Section 3.12       Required Notification of Criminal Drug Conviction
Section 3.13       Drug Testing Procedures
Section 3.14       Alcohol Testing Procedures
Section 3.15       Employee Requested Testing
Section 3.16       Post-Offer Testing
Section 3.17       Reasonable Suspicion Testing
Section 3.18       Post-Accident Testing
Section 3.19       Random Testing
Section 3.20       Return-To-Duty Testing
Section 3.21       Consequences
Section 3.22       Information Disclosure
Section 3.23       Records Retention and Disposition
Section 3.24       Employee and Supervisor Training
Section 3.25       Prior Substance Abuse Violations
Section 3.26       System Contacts

Revised 1/14/2014

CHAPTER 3

DRUG FREE WORKPLACE

Policy

Section 3.1    Policy Statement

James City County is committed to a work environment free from the use of alcohol and illegal drugs.

Section 3.2    Guiding Principles

A.    Assure that employees are not impaired in their ability to perform assigned duties in a safe and productive manner and to protect our employees and the public from the risks posed by the misuse of alcohol and the use of prohibited drugs.

B.    Create a workplace free from the adverse effects of drug abuse and alcohol misuse.

C.    Prohibit the unlawful manufacture, distribution, dispensing, possession, or use of controlled substances.

D.    Encourage employees to seek professional assistance any time personal problems, including alcohol or drug dependency, adversely affect their ability to perform their assigned duties.

E.    Use and apply all aspects of this policy in a fair and equitable manner. Disregarding the requirements or deliberate misuse of this policy is unacceptable.

F.    Protect individual dignity, privacy, and confidentiality throughout the testing process.

Section 3.3    Legal Basis

James City County is committed to ensuring that our Personnel Policies are in compliance with all applicable Federal regulations governing workplace anti-drug and alcohol programs, to include:

A.    The Federal Transit Administration of the United States Department of Transportation 49 Code of Federal Regulations ("USDOT 49 CFR") Part 655, as amended, which mandates urine drug testing and breath alcohol testing for safety-sensitive positions and prohibits

performance of safety-sensitive functions when there is a positive test result.

B.    USDOT 49 CFR Part 40, as amended, which sets standards for the collection and testing of urine and breath specimens.

C.    USDOT 49CFR Part 29, "The Drug-Free Workplace Act of 1988," which requires the establishment of drug-free workplace policies and the reporting of certain drug-related offenses to the Federal Transit Administration.

D.    Schedules I through V of Section 202 of the Controlled Substances Act (21 U.S.C. 812), as further defined by USDOT 21 CFR 1300.11 through 1300.15, which identifies illegal drugs or substances.

Section 3.4    Definitions

A.    Alcohol Screening Device – a device that measures the level of alcohol in either breath or other bodily fluids.

B.    Blood Alcohol Concentration (BAC) - measurement of the percentage of alcohol in the blood (gram/deciliter)

C.    Breath Alcohol Technician – a person who instructs and assists employees in the alcohol testing process and operates an evidential breath testing device.

D.    Commercial Driver's License – special certification to drive vehicles with a gross weight rating of 26,001 pounds or more; a combination of vehicles with gross combination weight rating of 26,001 pounds or more if the vehicle(s) being towed has a gross weight rating of more than 10,000 pounds; vehicles that carry 16 or more passengers, including the driver; or, any size vehicle that transports hazardous materials and that requires federal placarding.

E.    County Safety Sensitive Position – positions identified by James City County as having significant safety responsibilities for James City County property, staff, and citizens.  All County Safety Sensitive Positions are identified in the County Compensation Plan.

F.    Department of Health and Human Services -  agency of the Federal government that advises the President on health, welfare, and income security plans, policies, and programs of the Federal government.

G.    Department of Transportation - agency of the Federal government that oversees the formulation of national transportation policy and

promotes intermodal transportation.  Other responsibilities range from negotiation and implementation of international transportation agreements, assuring the fitness of US airlines, enforcing airline consumer protection regulations, issuance of regulations to prevent alcohol and illegal drug misuse in transportation systems, and preparing transportation legislation.

H.   Evidential Breath Testing Device – device approved by the National Highway Traffic Safety Administration for the evidential testing of breath at the .02 and above alcohol concentrations.  The concentration of alcohol is expressed in terms of grams of alcohol per 210 liters of breath as measured by an Evidential Breath Testing Device.

I.   Federal Safety Sensitive Position – position defined by the Federal government as having a level of safety importance requiring drug and alcohol testing.  These positions perform any duty related to the safe operation of mass transit service including the operation of a revenue service vehicle, dispatch or maintenance of a revenue service vehicle or equipment used in revenue service, and any other position that requires a Commercial Driver's License. Performance is any period of time in which a driver is actually performing, ready to perform, or immediately after performing safety sensitive duties. All Federal Safety Sensitive Positions are identified in the County Compensation Plan.

J.   Federal Transit Administration – an agency of the Department of Transportation that assists in developing an improved mass transportation system for cities and communities nationwide. The Federal Transit Administration maintains the National Transit Images, a repository of reports, documents, and data generated by professionals and others from around the country.

K.   Legally Prescribed Drug – a drug for which an individual has a prescription or other written approval from a licensed physician for its use in the course of medical treatment.  The prescription or written approval must include the patient's name, the name of the substance, the quantity/amount to be taken, and the period of authorization.

L.   Medical Review Officer - a licensed physician (medical doctor or doctor of osteopathy) responsible for receiving laboratory results generated by an employer's drug testing program who has detailed knowledge of substance abuse disorders, and has appropriate medical training to interpret and evaluate an individual's confirmed positive test results, together with his or her medical history and any other relevant biomedical information.

Revised 1/14/2014

M.    <u>National Highway Traffic Safety Administration</u> – an agency of the Department of Transportation responsible for reducing deaths, injuries and economic losses resulting from motor vehicle crashes. National Highway Traffic Safety Administration sets and enforces safety performance standards for motor vehicles and equipment and effective means of bringing about safety improvements.

N.    <u>Reasonable Suspicion</u> - specific contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the covered employee. A supervisor or other company official who is trained in detecting the signs and symptoms of drug use and alcohol misuse must make the required observations.

O.    <u>Refusal to Test</u> - Examples of refusals to test are listed in USDOT 49 CFR Part 40 as amended or USDOT 49 CFR 40.161 as amended for urine collections and USDOT 49 CFR 40.261 as amended for breath tests. A copy of USDOT 49 CFR Part 40 is available upon request.

P.    <u>Reportable Accident</u> - any accident:

    1.    With a fatality; or,

    2.    Where an individual suffers a bodily injury and immediately receives medical treatment away from the scene of an accident; or,

    3.    Where one or more vehicles involved incurs disabling damage as the result of the occurrence and is transported away from the scene by a tow truck or other vehicle.

Q.    <u>Safety-sensitive function</u> - any function related to the safe operation of mass transit service including the operation of a revenue service vehicle (whether or not the vehicle is in revenue service), and the dispatch or maintenance of a revenue service vehicle or equipment used in revenue service. Maintenance functions include the repair, overhaul, and rebuild of engines, vehicles and/or equipment.

R.    <u>Substance Abuse Professional</u> - a licensed physician or certified psychologist, social worker, employee assistance professional, or addiction counselor certified by the National Association of Alcoholism and Drug Abuse Counselors Certification Commission, or by the International Certification Reciprocity Consortium/Alcohol and Other Drug Abuse. The Substance Abuse Professional must also have clinical experience in the diagnosis and treatment of drug and alcohol related diseases.

S.      Screening Test Technician – An individual who meets the requirements to be a Breath Alcohol Technician, provided that the individual has demonstrated proficiency in the operation of the non-evidential screening device he or she is using, or an individual who has successfully completed a course concerning the procedures required for conducting alcohol screening tests.

Section 3.5      Coverage

A.      This policy applies to:

1.      All employees;

2.      Individuals offered employment in positions identified as Federal Safety Sensitive Positions and County Safety Sensitive Position;

3.      Off-site lunch periods or breaks when an employee is scheduled to return to work; and,

4.      Visitors, vendors, and contract employees while on James City County or James City Service Authority premises. These individuals will not be permitted to conduct James City County or James City Service Authority business if found to be in violation of the terms and conditions of this policy.

B.      All contractors performing Federal safety-sensitive functions must have a drug and alcohol testing program that meets the same requirements as the County's.

C.      Employees are subject to different levels of drug and alcohol testing based on the level of safety required of their positions. The following is a listing of these groups and the testing levels required.

| Reason for Test | Federal Safety Sensitive | County Safety Sensitive | All Positions |
|---|---|---|---|
| Post Offer | Drug | Drug | |
| Post Accident | Drug and Alcohol | | |
| Random | Drug and/or Alcohol | | |
| Transfer to Safety Sensitive | Drug | Drug | Drug |
| Reasonable Suspicion | Drug and/or Alcohol | Drug and/or Alcohol | Drug and/or Alcohol |
| Return to Work | Alcohol | Alcohol | Alcohol |

    D.    Participation in the drug and alcohol testing program is a requirement of each safety sensitive employee and, therefore, is a condition of employment.

**Section 3.6**    **Prohibited Substances**

    A.    Any illegal drug or any substance identified in Schedules I through V of Section 202 of the Controlled Substance Act (21 U.S.C. 812), as further defined by 21 Code of Federal Regulations 1300.11 through 1300.15 is prohibited at all times unless a legal prescription has been written for the substance.  This includes, but is not limited to:

- Marijuana
- Cocaine
- Amphetamines
- Opiates,
- Phencyclidine (PCP)

    B.    Any beverage, mixture, preparation, medication, or other substance containing alcohol.

**Section 3.7**    **Prohibited Conduct**

    A.    Employees are prohibited from engaging in the unlawful manufacture, distribution, dispensing, possession, or use of any substance identified in Section 3.6 while on James City County or James City Service Authority premises, in James City County or James City Service Authority vehicles or uniform, or while on James City County or James City Service Authority business.

B.  Employees are prohibited from misusing any prescription or over-the-counter (OTC) medication in any manner including, but not limited to, the situations described below while on James City County or James City Service Authority premises, in James City County or James City Service Authority vehicles or uniform, or while on James City County or James City Service Authority business:

1.  Use of any drug not approved for medical use by the U.S. Drug Enforcement Administration or the U.S. Food and Drug Administration.

2.  Misuse of legally prescribed drugs.

3.  Use of illegally obtained prescription drugs.

4.  Use of any substance that carries a warning label that indicates that mental function, motor skills, or judgment may be adversely affected, without reporting it to an employee's supervisor.

5.  Use of any performance altering drug without written authorization from his/her attending physician releasing the employee to perform his/her job duties.

C.  Employees are prohibited from being intoxicated, impaired, or under the influence of any substance identified in Section 3.6 while on James City County or James City Service Authority premises, in James City County or James City Service Authority vehicles, or uniform, or while on James City County or James City Service Authority business.

D.  Employees are prohibited from reporting for duty or remaining on duty when their ability to perform assigned functions is adversely affected by alcohol or when their breath alcohol concentration is 0.02 or greater.

E.  Employees are prohibited from using alcohol when on duty, in uniform, while performing safety-sensitive functions, or just before or just after performing safety-sensitive functions.

F.  Employees in Federal Safety Sensitive Positions or County Safety Sensitive Positions are prohibited from using alcohol within four hours of reporting for duty.

G.    Employees in Federal Safety Sensitive positions are prohibited from using alcohol for eight (8) hours after an accident.

H.    All employees are prohibited from using alcohol during the hours that they are on-call or on standby status.

Section 3.8    Exceptions

The Police Chief may allow police officers assigned to undercover duty to consume alcoholic beverages while on duty when the integrity of the operation warrants.   The officer must report consumption to his/her supervisor within 24 hours.

Section 3.9    Required Compliance

A.    All individuals offered employment in a Federal Safety Sensitive Position or a County Safety Sensitive Position will be subject to urine drug testing.

B.    Any employee promoted, demoted, or transferred to a Federal Safety Sensitive Position or County Safety Sensitive Position will be subject to urine drug testing.

C.    All employees in Federal Safety Sensitive Positions will be subject to random testing for drugs and alcohol.

   1.    Drug tests can be performed any time an employee in a Federal Safety Sensitive Position is on duty.

   2.    Alcohol tests can be performed when an employee in a Federal Safety Sensitive Position is actually performing a safety sensitive function, or just before or just after the performance of a safety sensitive function.

D.    All employees will be subject to drug and alcohol testing whenever there is reasonable suspicion that they are under the influence of drugs and/or alcohol.

E.    All employees in a Federal Safety Sensitive Position will be subject to post-accident testing for drugs and alcohol when involved in a reportable accident and it is determined that their performance could have contributed to the accident, as determined by the employer using the best information available at the time of the decision.

1.      Drug tests must be performed as soon as possible but no more than 32 hours after the reportable accident.  Exceptions must be documented.

2.      Alcohol tests shall be conducted within two hours but no later than eight hours after the reportable accident.  Exceptions must be documented.

F.      All employees suspended for an alcohol test registering results between .02 and .039 blood alcohol concentration (BAC) will be subject to a retest before returning to duty.  In order for such an employee to return to duty he/she must:

1.      Meet with the Substance Abuse Professional to whom James City County refers him/her and comply with the treatment plan and education prescribed by the Substance Abuse Professional;

2.      Upon recommendation of the Substance Abuse Professional, during the first year after registering results between .02 and .039 BAC on an alcohol test, the employee will undergo a minimum of six non-Department of Transportation random tests.  The Substance Abuse Professional will determine the frequency of the tests.  Follow up testing may extend beyond a year but will not exceed 60 months; and,

3.      Have a BAC result of less than .02 on the retest.

Section 3.10   Non-Compliance with Testing Requirements

A.      Any individual offered employment with James City County who refuses to submit to a drug test will have the offer of employment withdrawn.

B.      Any employee who refuses to submit to a drug or alcohol test shall be suspended without pay pending termination.

C.      Any employee who is suspected of providing false information in connection with a test, or who is suspected of falsifying test results through tampering, contamination, adulteration, substitution, or any other means will be required to undergo an observed collection before leaving the testing site.

D.      Verification of falsified test results will result in the employee's suspension without pay pending termination.

Section 3.11    Treatment

    A.    All employees are encouraged to voluntarily make use of the available resources for treatment of alcohol and/or substance abuse and under certain circumstance, may be required to undergo treatment. Under certain circumstances, employees may be required to undergo treatment for alcohol and/or drug abuse.

    B.    Any employee who refuses or fails to comply with James City County requirements for treatment, after care, or return to duty shall be suspended pending termination.

    C.    Treatment may be covered under James City County's Employee Assistance Program or the employee's health insurance plan. The cost of any treatment or rehabilitation services not covered will be paid for by the employee.

    D.    Employees will be allowed to use accumulated sick leave and vacation leave or paid time off to participate in the prescribed treatment or rehabilitation program.

Section 3.12    Required Notification of Criminal Drug Conviction

    A.    All employees are required to notify their supervisor and the HR Director of any criminal drug statute conviction within five days after such conviction.

    B.    Failure to comply with this provision shall result in suspension without pay pending termination.

Section 3.13    Drug Testing Procedures

    A.    Testing shall be conducted in a manner to assure a high degree of accuracy and reliability and using techniques, equipment, and laboratory facilities that have been approved by the Department of Health and Human Services.

    B.    All testing will be conducted consistent with the procedures put forth in USDOT 49 CFR Part 40, as amended.

    C.    The procedures will be performed in a private, confidential manner and every effort will be made to protect the employee, the integrity of the testing procedure, and the validity of the test result.

Revised 1/14/2014

D.    The drugs that will be tested for include marijuana, cocaine, opiates, amphetamines, and phencyclidine and others that may be added under USDOT 49 CFR Part 40, as amended.

E.    Urine specimens will be collected using the split specimen collection method described in USDOT 49 CFR Part 40, as amended.

F.    Each specimen will be accompanied by a Department of Transportation or non-Department of Transportation Chain of Custody and Control Form and identified using a unique identification number that attributes the specimen to the correct individual.

G.    An initial drug screen will be conducted on the primary urine specimen.  For those specimens that require additional testing, a confirmatory Gas Chromatography/Mass Spectrometry test will be performed.

H.    The test will be considered positive if the amounts present are above the minimum thresholds established in USDOT 49 CFR Part 40, as amended. The minimum thresholds are listed in supplemental materials.

I.    The test results from the laboratory will be reported to a Medical Review Officer.  The Medical Review Officer will review the test results to ensure the scientific validity of the test and to determine whether there is a legitimate medical explanation for a confirmed positive test result.

J.    In the event of a positive laboratory result, the Medical Review Officer will contact the employee or the individual offered employment and provide opportunity for the employee or individual offered employment to explain the confirmed positive test result. The Medical Review Officer will subsequently review the employee's medical history/medical records to determine whether there is a legitimate medical explanation for a positive laboratory test result.

K.    If no legitimate medical explanation is found, the test will be verified positive and reported to James City County's designated contact.  If a legitimate explanation is found, the Medical Review Officer will report the test result as negative.

L.    Test results reported by the laboratory to be "dilute" will be repeated as follows:

    1.    Dilute-Positive - are considered positive results.

2.      Dilute-Negative - requires a second test at the County's expense.  If the second test is also reported as dilute, the second test becomes the test of record.

M.      The split specimen will be stored at the initial laboratory until the analysis of the primary specimen is completed.

1.      If the primary specimen is negative, the split specimen will be discarded.

2.      If the primary specimen is positive, the split sample will be retained for testing if so requested of the Medical Review Officer by the employee or individual offered employment.

N.      In instances where there is reason to believe an employee or individual offered employment is abusing a substance other than the five drugs listed above, James City County and James City Service Authority reserves the right to test for additional drugs under James City County or James City Service Authority's own authority using standard laboratory testing protocols.

Section 3.14    Alcohol Testing Procedures

A.      Testing shall be conducted in a manner to assure a high degree of accuracy and reliability and using techniques, equipment, and laboratory facilities that have been approved by the Department of Health and Human Services.

B.      All testing will be conducted consistent with the procedures put forth in USDOT 49 CFR Part 40, as amended.

C.      The procedures will be performed in a private, confidential manner and every effort will be made to protect the employee, the integrity of the testing procedure, and the validity of the test result.

D.      All initial and confirmatory tests for breath alcohol concentration will be conducted using a National Highway Traffic Safety Administration approved Evidential Breath Testing Device or Alcohol Screening Device operated by a trained Breath Alcohol Technician or Screening Test Technician.

E.      A drug or alcohol test is considered positive if the individual is found to have a quantifiable presence of a prohibited substance in the body above the minimum thresholds defined in USDOT 49 CFR Part 40, as amended.

F.    If the initial test indicates an alcohol concentration of 0.02 or greater, a second confirmation test will be performed to ensure that no residual mouth alcohol may have affected the test results.

G.    The Evidential Breath Testing Device will identify each test by a unique sequential identification number.  This number, time, and unit identifier will be provided on each Evidential Breath Testing Device printout.  If the screening test is performed with an alcohol screening device, a number assigned by the Screening Test Technician will be used and recorded on the form.

H.    The Evidential Breath Testing Device printout along with an approved alcohol testing form will be used to document the test, the subsequent results, and to attribute the test to the correct employee. If the screening test is performed with an alcohol screening device, the result along with the lot number and expiration date of the alcohol screening device will be recorded on the form.

I.    An employee in a Federal Safety Sensitive Position or County Safety Sensitive Position who has a confirmed alcohol concentration of greater than 0.02 but less than 0.04 will be removed from his/her position for eight hours unless a retest results in a concentration measure of less than 0.02.

J.    The inability to perform safety-sensitive duties due to an alcohol test result of greater than 0.02 but less than 0.04 will be considered an unexcused absence subject to James City County disciplinary procedures.

K.    An alcohol concentration of 0.04 or greater will be considered a positive alcohol test and in violation of this policy and a violation of the requirements set forth in 49 Code of Federal Regulations Part 655 for safety-sensitive employees.

L.    If at any time the integrity of the testing procedures or the validity of the test results is compromised, the test will be cancelled.

Section 3.15    Employee Requested Testing

A.    Any employee or individual offered employment in a Federal Safety Sensitive Position or County Safety Sensitive Position who questions the results of a required drug test under Section 3.13.A through Section 3.13.L of this policy may request that the split sample be tested.

B.      This test must be conducted at a different Department of Health and Human Services-certified laboratory.

C.      The test must be conducted on the split sample that was provided by the employee or individual offered employment at the same time as the original sample.

D.      The employee or individual offered employment will pay all costs for such testing unless the result of the split sample test invalidates the result of the original test.

E.      The method of collecting, storing, and testing the split sample will be consistent with the procedures set forth in USDOT 49 CFR Part 40, as amended.

F.      The employee's or individual offered employment's request for a split sample test must be made to the Medical Review Officer within 72 hours of notice of the original sample verified test result.  Requests after 72 hours will only be accepted if the delay was due to documentable facts that were beyond the control of the employee or individual offered employment.

Section 3.16   Post-Offer Testing

A.      All individuals offered employment in Federal Safety Sensitive Position or County Safety Sensitive Position covered by this Policy shall undergo urine drug testing prior to hire.  This also includes employees transferring from a non-safety sensitive to a Federal Safety Sensitive Position or County Safety Sensitive Position or employees who have been removed from the random pool for a period of 90 days or more.

B.      Receipt by James City County or James City Service Authority of a negative drug test result is required prior to employment.

C.      A positive post-offer drug test will disqualify an individual offered employment from applying for a position with James City County or James City Service Authority for a period of 90 days.

1.      After the 90 day waiting period, evidence of the absence of drug dependency from a Substance Abuse Professional that meets with the approval of James City County or James City Service Authority and a negative drug test will be required prior to further consideration for employment.

2.      The cost for the assessment and any subsequent treatment will be the sole responsibility of the individual.

D.      Individuals offered employment who have a positive drug test will be provided the names of Substance Abuse Professionals.

E.      In instances where an individual is on temporary leave, (i.e. vacation, sick, jury duty) no drug test is required before an individual can resume his/her safety-sensitive duties provided the individual has not been out of the random pool for more than 90 days.  If selected for a random test while on temporary leave of 90 days or less, the individual will be tested if he/she returns to duty prior to the next random testing.

F.      In instances where an employee in a safety sensitive position in the random pool is on leave without pay or is temporarily assigned to a non safety sensitive position for more than 90 days (e.g. leave of absence or assigned alternate duty while on workers' compensation), and is taken out of the random pool, a drug test is required prior to reassignment to a safety-sensitive job function that is in the random pool.

Section 3.17    Reasonable Suspicion Testing

A.      All employees may be subject to urine and/or breath testing when there are specific contemporaneous, articulable observations concerning the appearance, behavior, speech, or body odors of the covered employee that may indicate drug use or alcohol abuse.

B.      A reasonable suspicion referral for testing will be made on the basis of documented objective facts and circumstances that are consistent with the short-term effects of substance abuse or alcohol misuse.

C.      Reasonable suspicion referrals must be made by a supervisor who is trained to detect the signs and symptoms of drug and alcohol use and who reasonably concludes that an employee may be adversely affected or impaired in his/her work performance due to possible prohibited substance abuse or alcohol misuse.

D.      Employees referred for reasonable suspicion testing will immediately be removed from any safety sensitive job function.

Section 3.18    Post-Accident Testing

A.      All employees in Federal Safety Sensitive Positions are required to undergo urine and breath testing if they are involved in a reportable

accident with a James City County or James City Service Authority vehicle regardless of whether or not the vehicle is in revenue service and whether or not their performance could have contributed to the accident.

B.   This includes all surviving safety-sensitive employees that are operating the vehicle and any other whose performance could have contributed to the accident.

C.   Employees involved in reportable accidents will immediately be removed from duty.

D.   Following an accident, employees in Federal Safety Sensitive Position shall be tested as soon as possible, but not to exceed eight hours for alcohol testing and 32 hours for drug testing.

E.   Any employee in a Federal Safety Sensitive Position involved in a reportable accident must refrain from alcohol use for eight hours following the accident.

F.   Any employee in a Federal Safety Sensitive Position who leaves the scene of the accident without justifiable explanation prior to submission to drug and alcohol testing will be considered to have refused the test and will be placed on suspension without pay pending termination.

G.   Employees tested under this provision will include not only the operations personnel, but also any other covered employee whose performance could have contributed to the accident.

H.   If James City County or James City Service Authority is unable to perform a Federal Transit Administration drug and alcohol test (i.e., employee is unconscious, employee is detained by law enforcement agency), James City County or James City Service Authority may use drug and alcohol post-accident test results administered by State and local law enforcement officials provided the tests are performed in accordance with Federal Transit Administration/Department of Transportation requirements.  The State and local law enforcement officials must have independent authority for the test and the employer must obtain the results in conformance with State and local law.

Section 3.19   Random Testing

A.   Employees in Federal Safety Sensitive Position will be subjected to random, unannounced testing.

B.     The selection of safety-sensitive employees for random alcohol testing will be made using a scientifically valid method that ensures each covered employee that they will have an equal chance of being selected each time selections are made.

C.     The random tests will be unannounced and spread throughout the year.  Tests can be conducted at any time during an employee's shift (i.e. beginning, middle, end).

D.     Employees are required to proceed immediately to the collection site upon notification of their random selection.

Section 3.20     Return-To-Duty Testing

A.     All employees who previously tested between .02 and .04 on an alcohol test must test below 0.02 on a return-to-duty test and be evaluated and released to duty by a Substance Abuse Professional before returning to work.

B.     Before scheduling the return to duty test, the Substance Abuse Professional must assess the employee and determine if the required treatment has been completed.

Section 3.21     Consequences

A.     Any employee who has a confirmed positive drug test or BAC test greater than .04 will be:

1.     Immediately removed from safety sensitive or other job function;

2.     Suspended without pay pending termination;

3.     Informed of educational and rehabilitation programs available; and,

4.     Provided the names of Substance Abuse Professionals.

B.     Assessment by a Substance Abuse Professional or participation in James City County's Employee Assistance Program does not shield an employee from disciplinary action.

Section 3.22     Information Disclosure

A.    All drug and alcohol testing records will be maintained in a secure manner so that disclosure of information to unauthorized persons does not occur.  Information will only be released in the following circumstances:

1.    To a third party only as directed by specific, written instruction by the employee;

2.    To the decision-maker in a lawsuit, grievance, or other proceeding initiated by or on the behalf of the employee tested;

3.    To a subsequent employer upon receipt of a written request from the employee;

4.    To the National Transportation Safety Board during an accident investigation;

5.    To the Department of Transportation or any Department of Transportation agency with regulatory authority over the employer or any of its employees, or to a State oversight agency authorized to oversee rail fixed-guideway systems; or

6.    To the employee, upon written request.

<u>Section 3.23</u>    <u>Records Retention and Disposition</u>

Drug and alcohol screening or testing records that document the administration and results of screening or testing of job applicants or employees for illegal drug or alcohol use will be retained for five years after administration of tests and then destroyed.

Section 3.24    Employee and Supervisor Training

    A.    All employees in Federal Safety Sensitive Position will undergo a minimum of 60 minutes of training on the signs and symptoms of drug use including the effects and consequences of drug use on personal health, safety, and the work environment.  The training must also include manifestations and behavioral cues that may indicate prohibited drug use.

    B.    Employees in supervisory positions will also receive 60 minutes of reasonable suspicion training on the physical, behavioral, and performance indicators of probable drug use and 60 minutes of additional reasonable suspicion training on the physical, behavioral, speech, and performance indicators of probable alcohol misuse.

    C.    Information on the signs, symptoms, health effects and consequences of alcohol misuse is included in supplemental materials.

Section 3.25    Prior Substance Abuse Violations

    A.    Employees or individuals offered employment who have a prior record of substance abuse must furnish the following to be considered for employment.

        1.    A release to work statement from a Substance Abuse Professional.

        2.    A negative test for drugs and/or alcohol.

        3.    An agreement to submit to random testing.

        4.    An agreement to follow specified after care requirements with the understanding that violation of the agreement is grounds for termination.

Section 3.26    System Contacts

Any questions regarding this policy or any other aspect of the drug free workplace policy should be referred to the Drug and Alcohol Program Manager, Medical Review Officer or Substance Abuse Professional.

SUPPLEMENTAL
MATERIALS

Revised 1/14/2014

3A

Alcohol Fact Sheet

Alcohol is a socially acceptable drug that has been consumed throughout the world for centuries.  It is considered a recreational beverage when consumed in moderation for enjoyment and relaxation during social gatherings.  However, when consumed primarily for its physical and mood-altering effects, it is a substance of abuse.  As a depressant, it slows down physical responses and progressively impairs mental functions.

Signs and Symptoms of Use
- Dulled mental process
- Lack of coordination
- Odor of alcohol on breath
- Possible constricted pupils
- Sleepy or stuporous condition
- Slowed reaction rate
- Slurred speech

(Note:  Except for the odor, these are general signs and symptoms of any depressant substance.)

Health Effects

The chronic consumption of alcohol (average of three servings per day of beer [12 ounces], whiskey [1 ounce], or wine [6 ounce glass]) over time may result in the following health hazards:

- Decreased sexual functioning
- Dependency (up to 10 percent of all people who drink alcohol become physically and/or mentally dependent on alcohol and can be termed alcoholic)
- Fatal liver diseases
- Increased cancers of the mouth, tongue, pharynx, esophagus, rectum, breast, and malignant melanoma
- Kidney disease
- Pancreatitis
- Spontaneous abortion and neonatal mortality
- Ulcers
- Birth defects (up to 54 percent of all birth defects are alcohol related).

Social Issues

- Two-thirds of all homicides are committed by people who drink prior to the crime.

- Two to three percent of the driving population is legally drunk at any one time. This rate is doubled at night and on weekends.

- Two-thirds of all Americans will be involved in an alcohol-related vehicle accident during their lifetimes.

- The rate of separation and divorce in families with alcohol dependency problems is 7 times the average.

- Forty percent of family court cases are alcohol problem related.

- Alcoholics are 15 times more likely to commit suicide than are other segments of the population.

- More than 60 percent of burns, 40 percent of falls, 69 percent of boating accidents, and 76 percent of private aircraft accidents are alcohol related.

The Annual Toll

- 24,000 people will die on the highway due to the impaired driver.
- 12,000 more will die on the highway due to the alcohol-affected driver.
- 15,800 will die in non-highway accidents.
- 30,000 will die due to alcohol-caused liver disease.
- 10,000 will die due to alcohol-induced brain disease or suicide.
- Up to another 125,000 will die due to alcohol-related conditions or accidents.

Workplace Issues

- It takes one hour for the average person (150 pounds) to eliminate one serving of an alcoholic beverage from the body.
- Impairment in coordination and judgment can be objectively measured with as little as two drinks in the body.
- A person who is legally intoxicated is 6 times more likely to have an accident than a sober person is.

3B

Minimum Thresholds for Tested Drugs

| Drug | Initial Levels ng/mL | Confirmation Levels ng/mL |
|---|---|---|
| Marijuana | 50 | 15 |
| Cocaine | 150 | 100 |
| Opiates | 2,000 | 2,000 |
| 1. Codeine | 2,000 | 2,000 |
| 2. Morphine | 2,000 | 2,000 |
| 3. 6-AM (heroin) | 10 | 10 |
| Phencyclidine (PCP) | 25 | 25 |
| Amphetamines | 500 | 250 |
| 1. Amphetamine | 500 | 250 |
| 2. Methamphetamine | | 250 |
| 3. MDMA | 500 | 250 |
| 4. MDA | | 250 |
| 5. MDEA | | 250 |

3C

## System Contacts

Drug and Alcohol Program Manager:

|              |                          |
|--------------|--------------------------|
| Name:        | Carol Schenk             |
| Title:       | Human Resource Specialist Senior |
| Address:     | James City County        |
|              | P. O. Box 8784           |
|              | Williamsburg, VA 23187-8784 |
| Telephone Number: | (757) 253-6660      |
| FAX Number:  | (757) 253-6878           |

Medical Review Officer:

|              |                          |
|--------------|--------------------------|
| Name:        | Dr. Michael Williams     |
| Address:     | Safety Management, Inc.  |
|              | 5129 Stannart Street     |
|              | Norfolk, VA 23503        |
| Telephone Number: | (757) 461-1430      |
| FAX Number:  | (757) 461-1352           |

Substance Abuse Professional:

|              |                          |
|--------------|--------------------------|
| Name:        | Optima Employee Assistance Program |
| Address:     | Bayside Medical Plaza    |
|              | 816 Independence Boulevard, Suite 1A |
|              | Virginia Beach, VA 23455 |
| Telephone Number: | (800) 899-8174      |
| FAX Number:  | (757) 363-6778           |

Chapter3

THIS PAGE INTENTIONALLY LEFT BLANK

## CHAPTER 4

## Compensation Plan

Section 4.1        Policy Statement

Section 4.2        Philosophy

Section 4.3        Guiding Principles

Section 4.4        Legal Basis

Section 4.5        Definitions

Section 4.6        Establishment of the Pay Structure and Assignment of Job Classes to Salary Ranges

Section 4.7        Placement in the Salary Ranges

Section 4.8        Salaries of Part-Time Regular and Limited-Term Positions

Section 4.9        Salaries of Temporary Positions

Section 4.10      Salaries of On-Call Positions

Section 4.11      Progression Through the Salary Range (Performance Increases)

Section 4.12      Other Salary Changes

Section 4.13      Maintaining the Market Based Compensation Plan

Section 4.14      Overtime

Section 4.15      Holiday Pay

Section 4.16      Standby Pay

Section 4.17      Premium Pay

Section 4.18      Travel

Section 4.19      Miscellaneous

Section 4.20      Administration and Interpretation of Plan

Revised 8/8/17

CHAPTER 4

COMPENSATION PLAN

Section 4.1    Policy Statement

James City County provides a compensation program designed to pay employees competitively and reward employees for their efforts on behalf of the County.

Section 4.2    Philosophy

A.    The County strives to pay its employees competitively with local public and private sector organizations performing comparable work.

B.    Department Directors and the Human Resource Director work together to ensure that the salaries which individual employees receive are market competitive and commensurate with experience, skills, efficiency, and performance.

C.    The compensation program provides employees opportunities for career growth both within and outside their own work area in various ways such as:

1.    Growth Within a Job's Salary Range
2.    Job Reclassification
3.    Promotion
4.    Transfer

Section 4.3    Guiding Principles

A.    Keep County salaries competitive in the labor market;

B.    Provide flexibility;

C.    Be easy to use and to understand;

D.    Support the County in selecting, training, motivating, and keeping highly qualified men and women as County employees; and

E.    Reward quality performance.

Section 4.4    Legal Basis

James City County is committed to ensuring that our Personnel Policies are in compliance with the Equal Pay Act of 1963, the Fair Labor Standards Act (FLSA) of 1983, the Code of Virginia, the Uniformed Services Employment and Reemployment Rights Act of 1994 (USERRA), and James City County Ordinance No. 179: Authorization of Incentive Awards to Employees.

Section 4.5    Definitions

A.    Benchmark - A job class with standard characteristics that can easily be compared with similar jobs typically found in other local governments or comparator organizations.

B.    Career Ladder Advancement - Movement of an employee from one job class to a designated job class at a higher salary range within the same job family as a result of achieving specified job requirements.

C.    Compensation Plan - The official or approved assignment of job classes to salary ranges, including: 1) list of job classes and assigned salary ranges; and, 2) policies for administration.

D.    Fire Protection Position - Any paid position in the Fire Department whose duties are those of firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker whose incumbent is: 1) trained in fire suppression and has the legal authority and responsibility to engage in fire suppression; and 2) engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

E.    Job Class - A group of positions that are alike enough in duties and responsibilities to require substantially the same qualifications and be called by the same descriptive title.

F.    Job Family - A group of jobs which perform work of the same nature but which require different skills and have different levels of responsibility.

G.    Law Enforcement Position - Any paid position in the Police Department that is responsible for the prevention and detection of crime and the enforcement of the penal, traffic or highway laws of the Commonwealth.

H.    Market Adjustment - The reassignment of a job class from one salary range to a higher or lower salary range based upon changes in the labor market.

I.     Market Average - The average of actual salaries paid for a job in the labor market.  The market average, or a percentage of the average, is used as the midpoint of our salary ranges.

J.     Market Pricing - A practice of determining the salary range to be paid for a job by identifying the competitive salary in the external labor market for that job.

K.     Performance Award - A lump sum bonus not added to base pay based on employee performance.

L.     Performance Increase - An adjustment to an individual employee's salary based on performance.

M.     Position - A set of duties and responsibilities to be performed by one employee.

N.     Promotion - Movement of an employee from a position in one salary range to a position in a higher salary range.

O.     Regularly Scheduled Work Day – 24-hour time frame within an employee's established work period during which the employee would routinely work for a prescribed number of hours.

P.     Salary Range - A minimum to maximum amount within which an employee whose job class is assigned to that salary range is usually paid.

Q.     Salary Structure - The arrangement of salary ranges to which job classes are assigned.

R.     Salary Structure Adjustment - An increase or decrease to minimum and/or maximum of the salary ranges in the salary structure.

S.     Transfer - Movement of an employee from one job class to another job class in the same salary range.

T.     Whole Job Ranking - Placing a non-benchmarked job class in the pay structure referencing other jobs in the same, or similar, job families.

Section 4.6     Establishment of the Pay Structure and Assignment of Job Classes to Salary Ranges

A.     Establish the Job - The creation of a job begins with the needs of the organization.  Department management and the Department of Human Resources collaborate to identify the primary duties and responsibilities of

the job, its title, and the skills, education and experience required to fill the job.

B.  Develop a Market Based Compensation Plan - The County uses market pricing and whole job ranking to develop a salary structure and place jobs within the salary ranges.

The following are key components of this process:

1.  Selection of Market Data Sources: The County participates in and references a variety of published, public and private sector sources that are conducted by professional associations and/or consulting firms with expertise in salary survey design and development. Sometimes a private survey source is referenced as well. Private survey sources are only used when the survey methodology is determined to be sound by the Human Resource Director.

2.  Identification of Benchmark Positions: Because there is not published data available to match all jobs in the County, benchmark positions serve as a basis for comparison to the external market. The Human Resource Department ensures that as many benchmark jobs as possible are selected within the following criteria:

    a.  All job families are represented.

    b.  Within each job family, as many levels as possible are matched. Typically, the entry level, career or journey level and/or the senior or top level are matched to published data sources.

    c.  The job content of benchmark positions is considered and compared to survey job descriptions - not to job titles. Jobs are matched to the survey data when the essence of the job matches the survey job description. For matching purposes, broad statements of job duties, scope of assignment, and/or qualifications are used for comparisons to outside organizations.

3.  Selection of Market Average Data: The reported actual average salary is selected from survey sources to determine the midpoint of the salary range of the benchmark positions. The average is used to minimize salary variations in survey data due to experience, time in position, and length of service.

4.      Development of the Salary Structure: The market data collected for benchmark positions is combined to build the salary structure and identify the appropriate salary ranges for benchmark positions. The County's salary ranges have minimum, midpoint, and maximum salary amounts which are periodically adjusted. The difference between the salary range minimum and the range maximum is large enough to accommodate various levels of experience and job performance.  In addition, salary ranges overlap.  This recognizes that a highly capable employee at one salary range may contribute more to the organization (and therefore, earn more) than an inexperienced, or not yet fully productive employee at a higher salary range.

5.      Placing Non-Benchmark Job Classes in the Salary Structure: Because it is the County's goal to be competitive with organizations with whom it competes for talent, the external labor market is used for setting the relative ranking of jobs in the organization. The Department Director, in collaboration with the Human Resource Department, places non-benchmark positions in the salary structure referencing the benchmark jobs in the same job family for which there is market pay data.

Section 4.7      Placement in the Salary Range

A.      Starting Salary - Once a salary range has been determined for a job, the Department Director and Human Resources set a starting salary for the individual.  The salary is usually set at the minimum of the salary range for the position.  Exceptions to this placement may be granted for a new employee substantially exceeding the minimum qualifications for the job. All exceptions to above minimum offers must be approved by the Department Director in consultation with Human Resources.

B.      Reinstatement - A reinstated employee shall be paid at a level within the approved salary range for the position to which reinstated.  The level shall be determined by the Department Director in consultation with Human Resources.  Refer to Section 2.8.C.

C.      Reemployment - When a former County employee is rehired, the starting salary shall be determined in accordance with A above. Refer to Section 2.8.B.

Section 4.8      Salaries of Part-Time Regular and Limited-Term Positions

An employee in a part-time regular or limited-term position shall be paid on an hourly or on an annual basis depending on the FLSA exemption status of the position and the needs of the department.  The hourly rate shall be determined by

dividing the annual salary for a full-time position by the number of hours per year that a full-time employee in that position or job class would be required to work.

Section 4.9    Salaries of Temporary Positions

An employee in a temporary position shall be paid on an hourly basis. The salary range shall be determined in the manner described in Section 4.6. The hourly rate shall be determined in the manner described in Section 4.8.

Section 4.10    Salaries of On-Call Positions

An employee in an on-call position shall be paid on an hourly basis. The hourly rate shall be determined in the same manner as for employees in temporary positions. A flat dollar amount for a designated work period, based upon the hourly rate, may be used if department operations necessitate.

Section 4.11    Progression Through the Salary Range (Performance Increases)

A.    Eligibility - Employees in full-time and part-time regular and limited-term positions who have successfully completed their introductory periods are eligible for performance increases and/or performance awards.

B.    Overview - The performance evaluation and pay for performance programs provide mechanisms for each supervisor to evaluate and reward staff performance. Rewards are based on the degree to which employees meet or exceed expected individual, team, work unit, division and/or organizational goals. Because the County is dedicated to providing excellent services to its citizens, the compensation program places a premium on performance. Salary increases are more reflective of the employees' performance and productivity than years of service with the County.

C.    Performance Review - A recommendation as to whether the employee shall receive a pay for performance increase and/or award and the amount shall be based upon the performance evaluation.

D.    Amount of Increase - If a performance increase is granted, it shall generally be greater than the salary structure adjustment and shall be within the following parameters:

1.    Within Salary Range - Employees within the salary range shall be eligible for a performance increase of up to a designated percent of their salary as set forth in the approved budget. No such performance increase shall cause the salary to exceed the maximum salary for the salary range.

2.      <u>At Maximum of Salary Range</u> - If a performance increase causes the salary to exceed the maximum of the salary range, the employee will be compensated at the maximum salary and the difference shall be awarded as a lump sum bonus not added to base salary.

3.      <u>Temporary Assignment</u> - The performance increase shall be based on the employee's salary for his or her regular job duties, not including any temporary salary increase.

4.      <u>Effect of Other Salary Adjustments</u> - The performance increase shall not be pro-rated as a result of reclassification, promotion, career ladder advancement, transfer, or voluntary demotion.

E.      <u>Performance Increase Date</u>

1.      <u>Common Date</u> - October 1 of each year shall be the effective date of performance increases and performance awards for eligible employees who have successfully completed their introductory periods.

2.      <u>Employees in Their Introductory Period</u> - Employees who have not completed their introductory period by October 1 shall not be eligible for a performance increase.  However, they may receive a salary increase in the amount of the salary structure adjustment or an alternate salary adjustment or award provided in the budget. Employees who are in introductory periods resulting from promotions shall be eligible for a performance increase.

3.      Exceptions may be granted by the County Administrator.

<u>Section 4.12</u>   <u>Other Salary Changes</u>

A.      <u>Promotion</u> - When an employee is promoted, the employee's salary shall be increased in the following manner:

1.      to the greater of the minimum salary of the higher class or 5% above the present salary if the new class is one or two ranges higher than the employee's current range, or

2.      to the greater of the minimum salary of the higher class or 10% above the present salary if:

a.      the new class is three or more ranges higher than the employee's current range, <u>or</u>

        b.      the employee is promoted from a non-exempt to an exempt or from a non-supervisory to a supervisory position.

Exceptions may be granted by the County Administrator.

B.      <u>Career Ladder Advancement</u> - When an employee receives a career ladder advancement, the employee's salary shall be increased in accordance with the Promotion Policy, Section 4.12.A.  If an employee no longer qualifies for the career ladder class, the employee will be demoted to a lower level career ladder class for which the employee is qualified.  For each lower level, the employee's salary will be reduced in accordance with the Demotion Policy, Section 4.12.D; and the employee will not be eligible for a career ladder advancement for a minimum of 90 days.

C.      <u>Transfer</u> - The County occasionally offers, and employees occasionally seek, the opportunity to take advantage of the valuable experiences available through a transfer to another job in the same salary range.  Transfers are considered lateral moves and employees' existing salaries are typically not changed.

D.      <u>Demotion</u> - There are a variety of circumstances and good reasons that an employee may seek a position at a lower salary range.  When an employee accepts a voluntary demotion, the salary will be reduced in the following manner:

1.      The lesser of the maximum salary of the lower class or 5% below the present salary if the new class is one or two ranges lower than the employee's current range, or

2.      The lesser of the maximum salary of the lower class or 10% below the present salary or if:

        a.      The new class is three or more ranges lower than the employee's current range, or

        b.      The employee moves from an exempt to a non-exempt or from a supervisory to a non-supervisory position.

Exceptions may be granted by the County Administrator.

Demotions as the result of a disciplinary or performance related action shall always be accompanied by a reduction in salary.  Refer to Chapter 7 <u>Standards of Conduct</u>, Section 7.5.C.5.

E.      <u>Reclassification</u> - Job reclassification means assigning a position to a different job class because the duties and responsibilities have changed

significantly enough that they are no longer consistent with the original job class.  This can occur as the needs of the organization change, requiring a significant change of responsibilities in a particular position. When this happens, the Department Director prepares a new job description which identifies where the job has changed and meets with the Human Resource Department to determine if the competitive market has changed for the position and if the salary range should be changed. Reclassifications must be approved by the County Administrator.

1.  Reclassification to a Higher Salary Range.  If the job is moved to a higher salary range, the employee will be provided with a salary increase equal to that granted for promotion, as described in Section 4.12 A.

2.  Reclassification to a Lower Salary Range.  If the job is moved to a lower salary range, the employee's salary will remain the same.  If the salary is greater than the maximum of the new range, there will be no further increases to the employee's base pay until it falls within the salary range.  The employee will still be eligible for performance awards which shall be awarded as a lump sum bonus in accordance with Section 4.11.D.2.  Exceptions may be granted by the County Administrator.

3.  Reclassifications Resulting from System Wide Studies.  These provisions shall not apply to reclassification changes resulting from special system-wide studies.  In such instances, the Board of Supervisors, upon recommendation from the County Administrator, shall determine the manner of salary adjustments.

F.  Administrative Adjustment - Upon recommendation by a Department Director that an employee should be retained, the County Administrator may, upon determining that it is cost effective and of significant benefit to the County, move an employee's salary within the range to which the employee's job class is assigned.

G.  Differentials – Base pay adjustments, within the position's current salary range, to compensate for special skills, licensure, education or other career attainments. Departments submit requests for differentials to Human Resources. If these are approved, they will be added to the position description.

H.  Temporary Assignment – Compensation may be adjusted during the period of time in excess of six (6) months in a twelve (12) month period that an employee is temporarily assigned to a vacant position or prescribed set of duties at a higher salary range.  Refer to Chapter 2, Section 2.8.P, Temporary Assignments.

Exceptions may be granted by the County Administrator.

I.  <u>Incentive Awards</u> - An incentive award is a vehicle for recognizing outstanding performance by an individual or group of individuals in a specific assignment, special project or for a beneficial suggestion or innovative idea which results in one of the following:

1.  A cost savings or avoidance.

2.  An innovation which increases productivity or enhances services and is measurable.

3.  A work product which exceeds required work standards for a job based upon consensus of peers in that department or the same field or trade.

4.  Referral Program is intended to encourage current employees to refer external individuals as applicants for critical positions.

    a.  The Department will submit positions to Human Resources to determine if the position qualifies for the Referral Program.

    b.  Employees will be eligible for a one-time payment determined by the critical nature of the position and budget availability. Payments may be prorated over time to ensure referral is successful.

    c.  Hiring managers/supervisors and recruiting staff are not eligible to participate in the referral program.

5.  Additional criteria may be established at the discretion of the County Administrator.

Incentive awards will not normally exceed 5 percent of the employee's salary, except the Referral Program. The incentive award shall be a single lump sum cash payment. It shall not be used as a routine salary supplement. The incentive award shall be documented on the Incentive Award Nomination Form. A copy of the form shall be placed in the employee's personnel file. The receipt of such an award shall not affect the employee's base salary.

Exceptions may be granted by the County Administrator.

Section 4.13    Maintaining the Market Based Compensation Plan

      A.    Salary Structure Adjustment - The competitiveness of salary ranges is reviewed as part of the budget process.  Where appropriate, adjustments are recommended to the ranges based on actual market movement and labor supply and demand influences.  Salary structure adjustments shall be effective October 1.  Employees' salaries are only affected by a structure adjustment if the adjustment causes their salaries to fall below the new minimum.  In such cases, the employee's salary is increased to the new range minimum at the time the new structure is implemented.  Exceptions may be recommended by the County Administrator.

      B.    Market Adjustment - The market competitiveness of job classes is reviewed as part of the budget process.  Because of fluctuations in the labor market, a job class may require reassignment to a higher or lower salary range.

          1.    Market Adjustment to a Higher Salary Range - If a job class is assigned to a higher salary range, employees' salaries that fall below the new range minimum will be increased to the minimum. Additional salary adjustments may be granted by the County Administrator based on such factors as placement of employees within the salary range, attraction and retention of employees in the job class, and availability of funding.

          2.    Market Adjustment to a Lower Salary Range - If assigned to a lower salary range, the employee's salary will be treated in the same manner as in Reclassification to a Lower Salary Range, Section 4.12.E.2.

      C.    Other Adjustments – Job classes are typically reviewed for the need for market adjustment, reclassification, or career ladder advancements as part of the compensation plan maintenance during the budget process.

      D.    Recalibration – is a major review of the salary structure and placement of jobs within the structure.  It is undertaken about every five (5) years to ensure the competitiveness of the plan and its ability to achieve its guiding principles.  It is undertaken as part of the budget process to ensure that sufficient funds are available to make any adjustments that may be needed.

Section 4.14    Overtime

      A.    Policy - It is James City County's policy to comply with all requirements of the Fair Labor Standards Act (FLSA), including the salary basis  requirements. Therefore, we will not make any improper

deductions from the salaries of employees in non-exempt or exempt positions.

B. <u>Legal Basis</u> - The FLSA (29 C.F.R pt.541) is a Federal law which requires that most employees in the United States be paid at least the Federal minimum wage for all hours worked, and receive overtime pay at time and one-half the regular rate of pay for all hours worked over 40 hours in a work week.

C. <u>Coverage</u>

　　1. <u>General</u> - All paid employees are covered by the FLSA. However, Section 13(a)(1) of the FLSA provides an exemption from overtime pay for individuals employed in bona fide executive, administrative, and professional positions. Section 13(a)(1) and Section 13 (a)(17) also exempt certain employees in computer positions.

　　The Human Resource Department shall review each position to determine whether it is exempt or non-exempt from overtime payments. The FLSA exemption status of job classes shall be indicated in the Compensation Plan, and the status of individual positions shall be indicated in the Human Resource Information System.

　　2. <u>Exemptions</u>

　　　　a. <u>Salary Basis and Requirements</u> - To qualify for exemption, employees generally must meet certain tests regarding their job duties and must earn more than the FLSA minimum salary threshold for the exemption. Job titles do not determine exempt status. In order for an exemption to apply, an employee's specific job duties and salary must meet all the requirements of the FLSA regulations.

　　　　Being paid on a "salary basis" means an employee regularly receives a predetermined amount of compensation each pay period on a twice monthly basis. The predetermined amount cannot be reduced because of variations in the quality or quantity of the employee's work, but can be reduced because of disciplinary reasons.

Subject to exceptions listed below, an employee in an exempt position must receive the full salary for any workweek in which the employee performs any work, regardless of the number of days or hours worked. However, employees in exempt positions do not need to be paid for any workweek in which they perform no work unless appropriate accrued paid leave is used.

If the employer makes deductions from an employee's predetermined salary because of the operating requirements of the business, that employee is not paid on a "salary basis." If the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

b.   <u>Salary Basis Exceptions</u>.

(i)   Deductions from pay are permissible when an employee in an exempt position is either:

(a)   absent from work for one or more full days for personal reasons, other than sickness or disability;

(b)   absent from work for one or more full days due to sickness or disability, if the deduction is made in accordance with a bona fide plan, policy, or practice of providing compensation for salary lost due to illness;

(c)   in receipt of payment for jury or witness fees, or for military pay;

(d)   on an unpaid disciplinary suspension of one or more full days, imposed in good faith for workplace conduct rule infractions;

(ii)   The employer is not required to pay an employee's full salary:

(a)   in the initial or terminal week of employment;

        (b)    for penalties imposed in good faith for infractions of safety rules of major significance; or,

        (c)    for weeks in which the employee takes unpaid leave under the Family and Medical Leave Act.

    In these circumstances, either a partial-day or full-day deduction may be made.

D.    <u>Authorization</u> - The authorization and control of all overtime work is the responsibility of the Department Director. Overtime assignments shall be permitted only when required by operational necessity. Department directors may require employees to work overtime assignments as necessary. Department Directors shall assure that adequate funds are available for payment for overtime work.

E.    <u>Computation of Overtime Pay</u>

    1.    <u>General</u>

        a.    <u>Rate of Pay</u> - Monetary overtime compensation shall be one and one-half times the employee's hourly rate of pay for each hour of overtime worked. The hourly rate of pay shall be determined by dividing the employee's annual salary by the number of hours per year that the employee in that position is authorized to work.

        b.    <u>Minimum Increment of Overtime</u> - Overtime shall be earned in increments no smaller than fifteen (15) minutes.

        c.    <u>Location of Information</u> - Work periods, FLSA maximum number of allowable hours, and County authorized hours in a work period shall be indicated in the Compensation Plan.

    2.    <u>Computation of Overtime Hours</u>

        a.    Overtime shall be paid when, due to operational necessity, an employee in a non-exempt position is required to work in excess of the FLSA maximum number of allowable hours in the work period. The FLSA defines the maximum number of allowable hours in a work period of seven (7) days as forty (40). Section 207 (k) of the FLSA provides an exception for any employee in fire protection or law enforcement activities.

b.    Other work periods, in compliance with the overtime provisions of the FLSA, may be implemented with the approval of the County Administrator.

c.    Time off with pay during which the employee is absent from the service of the County during a regularly scheduled work day shall be counted as hours worked in determining if the maximum allowable number of hours has been exceeded.  Such absences include, but are not limited to, sick, annual, civil, personal, and military leaves, paid time off, compensatory time and holidays.

d.    Holiday pay or compensatory time for holidays that fall on a day which is not a regularly scheduled work day for the employee shall not be counted as hours worked in determining if the maximum allowable number of hours has been exceeded.

e.    Unpaid time off during which the employee is absent from the service of the County shall not be counted as hours worked in determining if the maximum allowable number of hours has been exceeded.  Such absences include, but are not limited to leave without pay and disciplinary suspensions without pay.

f.    Employees in full-time, non-exempt fire protection or law enforcement positions whose County authorized work hours exceed the FLSA maximum allowable hours shall be paid at the rate of one half of the employee's hourly rate, in addition to the regular semimonthly pay, regardless of any paid time off taken during the regular work period.

g.    Employees in full-time, non-exempt fire protection or law enforcement positions whose County authorized work hours fall below the FLSA maximum allowable hours shall have the County-authorized work hours serve as the maximum allowable hours in calculating overtime.

F.    <u>Compensatory Time in Lieu of Overtime</u>

1.    <u>Hour for Hour</u> – Employees in non-exempt positions who are authorized to work in excess of their regularly scheduled work hours, but who do not exceed the maximum allowable number of hours may, in lieu of overtime pay, be granted compensatory time in the amount of one hour of leave for each hour worked or may be

paid their regular hourly rate in lieu of compensatory time for hours worked.

2. <u>Time and a Half</u> – Employees in non-exempt positions who are authorized to work in excess of their regularly scheduled work hours, and the hours exceed the maximum allowable number of hours may, in lieu of overtime pay, be granted compensatory time in the amount of one and one-half hours of leave for each hour worked during the work period in excess of the maximum allowable hours.

3. <u>Authorization</u> - The Department Director shall determine the most appropriate form of compensation based on available funds and workload.  Compensatory time shall be specifically approved by the Department Director in advance of its being earned.

4. <u>Maximum Accrual</u> - Employees in sworn public safety positions may accrue up to 480 hours of compensatory time.  All other employees may accrue up to 240 hours of compensatory time. Employees shall be paid for all hours in excess of the maximum allowed.

5. <u>Deadline for Use</u> - Compensatory time earned within the fiscal year shall be used by September 30 of the following fiscal year or the employee shall be paid for it. (Revised 10-15-90.)

G. <u>Resolving Discrepancies</u>

1. <u>Discrepancies</u> – Employees who feel that an improper deduction has been made to their salary or overtime was worked and they were not compensated appropriately, should immediately report this to their supervisor for resolution.

2. <u>Complaint Procedure</u> – In the event that a supervisor does not resolve the discrepancy, the employee will report the improper salary deduction or overtime payment denial to the Human Resource Department by completing the Improper Salary Deduction or Overtime Payment Denial Complaint Form.

3. <u>Investigating a Complaint</u> – Upon receipt of the completed Improper Salary Deduction or Overtime Payment Denial Complaint Form the Human Resource Department will promptly research the discrepancy.

4. <u>Determination</u> - If it is determined that an improper salary deduction or overtime payment denial has occurred, the employee

will be promptly reimbursed for any improper salary deduction made or paid for overtime worked.

Section 4.15    Holiday Pay

Any employee in a regular or limited-term position who is eligible to earn overtime and is required by the supervisor to work on a holiday which is observed by the County, shall be compensated for that holiday at a rate of twice the regular hourly rate, or at the discretion of the Department Director, authorized compensatory time.

An employee in a position which is not eligible to earn overtime (exempt) who is required to work on a holiday which is observed by the County, may take the holiday on another date mutually agreed upon with his supervisor.  In cases where this would present a hardship because of work load, and where budget permits, the Department Director may authorize payment for that holiday at a rate of twice the regular hourly rate for hours worked in lieu of another day off.

See also Chapter 5, Section 5.3 (B) 2, which describes holidays on which an employee is not scheduled to work.

Section 4.16    Standby Pay

A.    Eligibility - Nonexempt employees in regular, limited-term, or on-call positions who are required to be available by telephone or beeper after regular work hours to respond to emergency calls, and who must respond within a reasonable period of time when called, are eligible for standby pay.

B.    Computation of Pay - Employees who are required to be on standby shall receive compensation as set forth in the approved budget for each hour on standby.  This payment shall be made regardless of whether the employee is actually called out, and shall be in addition to any payment earned for actual hours worked as outlined in Section 4.14, above.

C.    Restrictions - Employees who, for any reason, cannot fulfill their standby duties for part or all of the required period, shall obtain approval from their Department Director or a designee for another employee to substitute for them.

Section 4.17    Premium Pay

A.    Purpose - Premium Pay is intended to provide additional compensation to eligible employees reporting to work in response to emergency situations arising on County observed holidays on which the employee is not scheduled to work.

B.      <u>Eligibility</u> - Nonexempt employees in regular or limited-term positions who are not on standby and are not scheduled to work on a County observed holiday, but are called in to work on the holiday with less than 72 hours prior notice.

C.      <u>Computation of Pay</u> - Eligible employees shall be compensated for all hours worked on the nonscheduled holiday at a premium rate of one-half times the regular hourly rate, in addition to any other compensation for which the employee is eligible, in accordance with Section 4.14, <u>Overtime</u>, and Section 4.15, <u>Holiday Pay</u>.

D.      <u>Conditions</u> - Supervisors are responsible for determining when additional staffing is required on a holiday. Employees notified more than 72 hours in advance that they must work on a holiday shall not be eligible for premium pay.  Employees on standby who are called in to work on a holiday shall not be eligible for premium pay.

**Section 4.18**   <u>Travel</u>

<u>Policy</u> - Employees may be required to travel when it is necessary or beneficial to the performance of their duties, their professional development, or the general operations of the County.  Such travel shall be approved in advance by the department manager and may be eligible for reimbursement.

**Section 4.19**   <u>Miscellaneous</u>

A.      <u>Bonding</u> - Each County employee is covered under a general employee "blanket" bond at no cost to the employee.  The County shall pay the additional cost for those positions requiring a higher bond.

B.      <u>Notary Fees</u> - The fees for "Notary Public" permits held by County employees shall be paid by the County when such services are felt to assist the County in serving the public or to further the County's own business operations.  There shall be no charge for notary services for the County.

C.      <u>Uniform Allowance</u>

1.      <u>Policy</u> - Employees who are required to wear uniforms shall be furnished such uniforms, with accessories as required.  Uniforms shall be maintained by the County at the County's expense or by the employee with an annual allowance from the County set forth in the budget.  Such allowance shall also be paid to each member of the Investigations Division in the Police Department for the cleaning and maintenance of their on-duty clothing.

2.      Responsibilities

a.      All clothing and equipment issued by the County shall remain the property of the County.

b.      Only an initial uniform alteration shall be the responsibility of the County.

c.      Employees are required to return non-serviceable clothing to the County in order to receive replacements.

d.      Clothing that is lost or damaged by negligence of the employee shall be replaced at the employee's expense.

e.      Uniform and on-duty clothing maintenance allowances shall be paid only for the period of actual employment.

D.      Tool Allowance - Employees who are responsible for the purchase and maintenance of tools required to perform their duties shall receive an annual allowance.  The tools shall remain the employees' property, but are insured by the County against fire and theft.

Section 4.20    Administration and Interpretation of Plan

The compensation program is administered by the Human Resource Department which is responsible for interpreting, administering, and updating the program to keep it current and equitable in operation.

**IMPROPER SALARY DEDUCTION OR OVERTIME PAYMENT DENIAL
COMPLAINT FORM**

Name: _____   Position: _____

Department: _____   Supervisor: _____

Work telephone number: _____   Work E-mail Address: _____

Pay Period(s) of Questionable Deduction or Denial: _____

Please explain what occurred and why you believe it was improper:




Signed: _____   Date: _____

Revised 8/8/17

THIS PAGE INTENTIONALLY LEFT BLANK

<u>CHAPTER 5</u>

<u>EMPLOYEE BENEFITS</u>

Section 5.1      Policy - General
Section 5.2      Eligibility - General
Section 5.3      Holidays
Section 5.4      Leave
Section 5.5      Family and Medical Leave Act (FMLA)
Section 5.6      Health Related Benefits
Section 5.7      Retirement, Disability, and Life Insurance
Section 5.8      Workers' Compensation   (Policy)  (Procedures)
Section 5.9      Tax-Related Benefits
Section 5.10    Employer Assisted Home Ownership Program
Section 5.11    Optional, Employee-Paid Benefits

Revised 6/27/2023

Chapter 5
Employee Benefits

Section 5.1     Policy - General

It is the policy of James City County to provide employee benefits that complement the County's values and strategic direction, that help meet certain needs of County employees and their families, and that help the County to attract and retain quality employees. The County strives to offer high quality benefits, at a reasonable cost to both employees and the County, which prove valuable and useful to employees.

Given the range of benefits and eligibility requirements, the County will communicate the availability of these benefits to eligible individuals and will provide assistance in understanding and using them.

Section 5.2     Eligibility - General

| Position Type | Benefit Eligibility |
|---|---|
| Full-time regular and limited-term positions | All benefits available; VRS Plan 1, 2, or Hybrid eligibility depending on VRS service criteria; leave plan eligibility depending on VRS Plan 1, 2, or Hybrid. |
| Part-time regular and limited-term positions | Benefits available where specifically indicated in the policy; eligibility is dependent on date of hire into the part-time position and authorized annual hours. |
| Temporary positions, on call positions, former employees, and retirees | Benefits available where specifically indicated in the policy. |
| Other positions | Benefits eligibility varies by organization; contact the Human Resource Department. |
| Affordable Care Act Benefits Eligible | Eligible for group health insurance coverage in compliance with the shared responsibility provision of section 4980H of the Internal Revenue Code, enacted by the Patient Protection and Affordable Care Act. |

Section 5.3     Holidays

The County observes the following designated holidays:

| | |
|---|---|
| New Year's Day | January 1 |
| Martin Luther King Day | 3rd Monday in January |
| Presidents' Day | 3rd Monday in February |
| Memorial Day | Last Monday in May |
| Juneteenth | June 19 |
| Independence Day | July 4 |
| Labor Day | 1st Monday in September |
| Veterans Day | November 11 |
| Thanksgiving Day | 4th Thursday in November |
| Day After Thanksgiving | Friday following Thanksgiving |

Revised 6/27/2023

| Christmas Eve | December 24 |
|---|---|
| Christmas Day | December 25 |

The Board of Supervisors may declare any other day an additional holiday.

A.   <u>Eligibility for and Calculation of Holidays</u>.  Employees in full-time and part-time regular and limited-term positions are eligible for paid holidays or compensatory leave as listed in the eligibility charts below.

| IF an employee is in a Full-Time Position (2,080 or more Annual Authorized Hours) | |
|---|---|
| AND the employee participates in VRS Plan 1 or 2 | THEN paid holidays or compensatory leave is based on the employee's monthly sick leave accrual rate (see Section 5.4.B.4.) |
| AND the employee participates in the VRS Hybrid Plan | THEN paid holidays or compensatory leave is 8 hrs. |

| IF an employee is in a Part-Time Regular or Limited-Term Position (fewer than 2,080 Annual Authorized Hours) | | |
|---|---|---|
| AND the employee was hired into a part-time regular or limited-term position before 1/1/2014 | AND authorized to work fewer than 2,080 hrs. | THEN the employee's paid holidays or compensatory leave is based on the employee's monthly sick leave accrual rate (see Section 5.4.B.4.) |
| AND the employee was hired into a part-time regular or limited-term position on or after 1/1/2014 | AND authorized to work 1,040-2,079 hrs. | THEN the employee's paid holidays and compensatory leave is 6 hrs. |
| AND the employee was hired into a part-time regular or limited-term position on or after 1/1/2014 but before 12/1/2019 | AND authorized to work 780-1,039 hrs. | THEN the employee's paid holidays and compensatory leave is 3 hrs. |

| AND the employee was hired into a part-time regular or limited-term position on or after 1/1/2014 | AND authorized to work fewer than 780 hrs. | THEN the employee is not eligible for paid holidays or compensatory leave |
|---|---|---|
| AND the employee was hired into a part-time regular or limited-term position on or after 12/1/2019 | AND authorized to work fewer than 1,040 hrs. | THEN the employee is not eligible for paid holidays or compensatory leave |

B.   <u>Observance of Holidays</u>

1.   If a holiday falls on a Saturday, the preceding Friday shall be observed as the holiday; if a holiday falls on a Sunday, the following Monday shall be observed as the holiday.  County operations which are open on holidays shall observe the actual holiday for purposes of holiday pay.

2.   If an observed holiday falls on a day an employee is not otherwise scheduled to work, the employee shall earn compensatory leave for the observed holiday for the number of holiday hours listed in the eligibility chart above. In cases where this would present a hardship because of workload, the department director may authorize payment in lieu of the compensatory leave if the budget permits.

3.   An employee who is on approved leave with pay during a period in which a holiday falls, shall not be charged leave for the observed holiday for the number of holiday hours listed in the eligibility chart above.

4.   An employee who is on military leave with pay during a period in which a holiday falls shall not receive any additional pay or compensatory leave for the holiday.

5.   An employee forfeits eligibility to be compensated for the holidays observed by the County unless the employee works the last scheduled workday before the holiday and the first scheduled workday after the holiday or is on approved leave with pay.

C.   <u>Working on Holidays</u>

1.   If an employee is required to work on an observed holiday, he shall receive holiday pay as outlined in Chapter 4, Section 4.15.

2.   Certain employees who are called to work on a County-observed holiday on which they are not scheduled to work may be eligible for premium pay as outlined in Chapter 4, Section 4.17.

Section 5.4    Leave

    A.   General

        1.   Policy Statement - James City County recognizes the importance of balancing the productivity needs of the County with the needs of County employees and their families by providing employees with time away from work. It is the policy of the County to provide employees with continued income and benefits during certain approved absences of specified durations.

        2.   Eligibility - Employees in full-time regular and limited-term positions are eligible for leave outlined in each section. Employees in part-time regular and limited-term positions are eligible for leave on a pro-rated basis except for those hired on or after January 1, 2014, into positions with fewer than 780 annual authorized hours and those hired on or after December 1, 2019, into positions with fewer than 1,040 annual authorized hours.

        3.   Definitions

            a.   Day

| Full or Part Time | Characteristics | Annual Authorized Hours | Day |
|---|---|---|---|
| Full-Time | VRS Plan 1 or 2 Member | 2,080 or more | Monthly sick leave accrual rate |
| Full-Time | VRS Hybrid Plan Member | 2,080 | 8 hours |
| Part-Time | Hired before 1/1/2014 | Fewer than 2,080 | 6 hours |
| Part-Time | Hired on or after 1/1/2014 | 1,040-2,079 | 6 hours |
| Part-Time | Hired on or after 1/1/2014 but before 12/1/2019 | 780-1,039 | 3 hours |
| Part-Time | Hired on or after 1/1/2014 but before 12/1/2019 | Fewer than 780 | None; ineligible |
| Part-Time | Hired on or after 12/1/2019 | Fewer than 1,040 | None; ineligible |

            b.   Immediate Family - The immediate family is defined as: spouse, parent, son, daughter, brother, sister, grandparents, grandchildren, stepchildren, stepparents, stepsiblings, guardian, spouse's parent and grandparents, and any persons residing in the same household as the employee.

Revised 6/27/2023

c.    Week - A week is defined as the annual authorized hours of the employee's position divided by 52.

B.   Types of Leave

The County offers the following types of leave. An overview of eligibility, purpose and guidelines is listed below.

1.

| Type | Annual Leave |
|------|--------------|
| Eligibility | Employees in full-time regular and limited-term positions who are members of VRS Plan 1 or 2, and employees in part-time regular and limited-term positions who were hired into those positions before January 1, 2014. |
| Purpose | Any purpose |
| Guidelines | Accrual<br>Annual leave shall be accrued in accordance with the chart below: |

| Monthly Accrual Rate In Hours | | | |
|---|---|---|---|
| Annual Authorized Hours | <5 years of service | 5<15 years of service | >15 years of service |
| < 261 | 1 | 1.5 | 2 |
| 261-520 | 2 | 3.0 | 4 |
| 521-780 | 3 | 4.5 | 6 |
| 781-1,040 | 4 | 6.0 | 8 |
| 1,041-1,300 | 5 | 7.5 | 10 |
| 1,301-1,560 | 6 | 9.0 | 12 |
| 1,561-1,820 | 7 | 10.5 | 14 |
| 1,821-2,080 | 8 | 12.0 | 16 |
| 2,081-2,340 | 9 | 13.5 | 18 |
| 2,341-2,600 | 10 | 15.0 | 20 |
| 2,601-2,860 | 11 | 16.5 | 22 |
| >2,860 | 12 | 18.0 | 24 |

The maximum amount of leave that an employee may carryover each fiscal year is the amount of leave the employee can earn in a two-year period.

The employee's leave balance must not exceed the carryover amount as of July 1 of each year or the excess shall be forfeited.

| | <u>Payment for Accumulated Leave Upon Separation from Employment</u>:<br><br>Employees shall receive the monetary equivalent of their annual leave balance up to the annual maximum accumulation. If two weeks' notice is not given by an employee, the equivalent of one day shall be deducted from the leave payments for each day that the employee failed to give notice of termination up to a two-week maximum. Exceptions may be made by the department director. |
|---|---|

2.

| Type | Civil Leave |
|---|---|
| Eligibility | All employees in full-time and part-time regular and limited-term positions except those hired on or after January 1, 2014, into part-time and limited-term positions which have annual authorized hours fewer than 780 and those hired on or after December 1, 2019, who work a minimum of 1,040 annual hours. |
| Purpose | May be used by an employee to provide paid absences while serving on a jury or attending court as a witness under subpoena. |
| Guidelines | <u>Compensation</u><br>An employee compensated for civil duties, as by jury or witness fees, shall either take annual or compensatory leave, or turn over any compensation received to the County.<br><br><u>Return to Work</u><br>Any employee serving four or more hours (including travel time) is not required to start any shift that begins between 5 p.m. and 3 a.m. following the court appearance. The time will be charged to Civil Leave.<br><br><u>Exclusion</u><br>In those circumstances where a County employee is not subpoenaed and is acting as an expert witness in a court proceeding which is not directly related to his duties for the County, the employee shall be charged annual or compensatory leave, or leave without pay. |

3.

| Type | Paid Time Off (PTO) |
|------|---------------------|
| Eligibility | Employees in full-time regular and limited-term positions who are members of the VRS Hybrid Plan, and employees in part-time regular and limited-term position of 1,040 or more annual authorized hours who were hired into the part-time position on or after January 1, 2014. |
| Purpose | May be used by an employee to provide paid absences for any purpose including illness and supplementing short-term disability payments. |
| Guidelines | (see below) |

Guidelines:

<u>Accrual</u>

PTO shall be accrued in accordance with the chart below:

PTO Monthly Accrual Rate in Hours

| Annual Authorized Hours | <5 Years of Service | 5-10 Years of Service | 10-15 Years of Service | 15-20 Years of Service | 20+ Years of Service |
|---|---|---|---|---|---|
| <780 | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued |
| 780 - 1,039 If hired before 12/1/19 | 3.0 | 3.5 | 4.0 | 4.5 | 5.0 |
| 1,040-2,079 | 6.0 | 7.0 | 8.0 | 9.0 | 10.0 |
| 2,080 | 12.0 | 14.0 | 16.0 | 18.0 | 20.0 |
| <1,040 If hired after 12/1/19 | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued | Ineligible - no PTO accrued |

Employees do not accrue leave while on short-term or long-term disability.

The maximum amount of PTO that an employee may carryover each fiscal year is the amount of leave the employee can earn in an 18-month period.

Revised 6/27/2023

|  | The employee's PTO leave balance must not exceed the carryover amount as of July 1 of each year or the excess shall be forfeited. |
|--|---|
|  | <u>Use</u><br>a.  <u>Scheduled Absences</u> - PTO should be scheduled in advance for time off for vacations, personal leave appointments or other reasons. It is subject to supervisor approval, department staffing needs and established department procedures.<br><br>b.  <u>Unscheduled Absences</u> - While sometimes unavoidable, unscheduled absences can adversely affect the operations of the department. The supervisor may request the employee provide documentation in accordance with department policy or County procedures or regulations.<br><br>c.  <u>Supplement to Short-Term Disability Payments</u> - Accrued PTO may be used by full-time employees wishing to increase STD payments up to 100% or full pay.<br><br><u>Payment for Accumulated Leave Upon Separation from Employment</u><br>Employees shall receive the monetary equivalent of their PTO balance up to the annual maximum accumulation. If two weeks' notice is not given by an employee, the equivalent of one day shall be deducted from the leave payments for each day that the employee failed to give notice of termination up to a two-week maximum. Exceptions may be made by the department director. |

4.

| Type | Sick Leave |
|---|---|
| Eligibility | Employees in full-time regular and limited-term positions who are members of VRS Plan 1 or 2 and employees in part-time regular and limited-term positions who were hired into their positions before January 1, 2014. VRS Hybrid Plan employees and Part-time regular and limited-term positions of 1,040 or more annual authorized hours who were hired into their position on or after January 1, 2014, are eligible for sick leave at varying accrual rates. |
| Purpose | May be used by an employee to provide paid absences for health-related reasons as outlined below. Accumulated sick leave provides continued income for employees during periods of disability. |

| Guidelines | Sick leave provides paid absences for the following reasons: |
| --- | --- |
| | a.  A personal illness, injury, and/or disability not incurred in the line of duty, which incapacitates the employee from being able to perform assigned duties. |
| | b.  Appointments for examination and/or treatment related to health when approved in advance by the department director and when such appointments cannot reasonably be scheduled during nonwork hours. |
| | c.  An illness or appointment for examination and/or treatment related to the health of an immediate family member requiring the attendance of the employee and approved by the department director, not to exceed twelve (12) days per fiscal year. A day is defined in Section 5.4.A.3.a. Use of additional sick leave in excess of the permitted allowance may be approved if recommended by the department director and approved by the Human Resource Director. |

Everything above is in a single table cell; below continues in the same cell:

**Accrual**

a.  VRS Plan 1 and 2 employees accrue sick leave in accordance with the chart below:

| Annual Authorized Hours | Monthly Accrual Rate In Hours |
| --- | --- |
| <261 | 1 |
| 261-520 | 2 |
| 521-780 | 3 |
| 781-1,040* | 4 |
| 1,041-1,300 | 5 |
| 1,301-1,560 | 6 |
| 1,561-1,820 | 7 |
| 1,821-2,080 | 8 |
| 2,081-2,340 | 9 |
| 2,341-2,600 | 10 |
| 2,601-2,860 | 11 |
| >2,860 | 12 |

b.  There is no limit to the amount of sick leave an employee may accrue.

c.  VRS Hybrid Plan employees accrue 3 hours of sick leave per month.

d.  Part-time regular and limited-term position of 1,040 or more annual authorized hours who were hired into

their part-time position on or after January 1, 2014, accrue 1.50 hours of sick leave per month.

Payment for Accumulated Leave Upon Separation from Employment

Employees with two (2) years or more of continuous service with the County shall be compensated for their sick leave balance at the rate of one hour's pay for every four hours of accrued sick leave or the maximum amount listed below, whichever is less. If two weeks' notice is not given by the employee, or if the employee is discharged for disciplinary reasons, sick leave payments shall be forfeited. Exceptions may be made by the department director.

| Years of Service | Maximum Payment |
|---|---|
| 2-14 | $1,000 |
| 15-24 | $2,500 |
| 25 or more | $5,000 |

Payment for Accumulated Leave Upon Retirement from Employment

Employees who retire with 20 or more of continuous years of service with James City County or Affiliate who follows Chapter 5 of the Personnel Policies & Procedures Manual are eligible to receive $15 per hour of sick leave, in whole hours, up to a maximum of $20,000. Employees reinstated within the last 5 years prior to retirement will be ineligible.

Sick Leave Bank
VRS Plan 1 and 2 employees may elect to pool accumulated sick leave into a sick leave bank for the purpose of providing participating employees additional leave for extended illness or injury. Such a bank shall be supported by employees and shall cease to exist should there be insufficient employee interest.

5.

| Type | Funeral Leave |
|---|---|
| Eligibility | All employees in full-time and part-time regular and limited-term positions except those hired on or after January 1, 2014, into part-time and limited-term positions which have annual authorized hours fewer than 780 and those hired on or after December 1, 2019, which have annual authorized hours fewer than 1,040. |

| Purpose | May be used by an employee to provide paid absences upon the death of a member of an employee's immediate family. |
|---|---|
| Guidelines | **Amount of Leave**<br>Funeral leave, if requested by the employee, shall be granted by the supervisor for up to three (3) days as defined in Section 5.4.A.3.a. per death of an employee's immediate family member. Exceptions may be granted by the department director. |

6.

| Type | Leave Without Pay |
|---|---|
| Eligibility | All employees in full-time and part-time regular and limited-term positions who are eligible to accrue leave. See Section 5.4.A.2. |
| Purpose | May be used by an employee to provide unpaid absences for a variety of reasons outlined below including any mutually agreeable reason. |
| Guidelines | An employee shall be on leave without pay under the following circumstances:<br><br>a.  Approved absence for which the employee has insufficient accrued leave, or for which the employee elects, with the concurrence of the department director, not to use accrued leave.<br>b.  Absences authorized as a condition of employment.<br>c.  Unapproved absence from the job during a scheduled work period.<br>d.  Suspension without pay as defined in Section 7.5.C.<br>e.  Furlough or required unpaid time off for a defined group of employees, directed by the County Administrator due to fiscal constraints.<br><br>**Impact on Other Benefits and Conditions of Employment**<br>a.  PTO or sick and annual leave shall not be earned for any pay period during which an employee takes leave without pay that is not approved prior to use or which exceeds one full workday.<br>b.  An employee's first performance increase after returning to work shall be pro-rated for each period of thirty (30) consecutive calendar days the employee is on leave without pay. Exceptions for qualified FMLA absences.<br>c.  The County shall pay its share of County health and life insurance premiums during approved leave without pay unless otherwise provided in writing to the employee. |

|  | d. Should an employee fail to return to work by the date the employee agreed to in writing, the County Administrator may declare the employee to have terminated voluntarily as of the expected return to work date, except where the employee requires additional time off under the Family and Medical Leave Act, Section 5.5, or is on short-term disability. An employee who accepts employment elsewhere while on leave without pay, unless approved, shall be considered to have terminated employment with the County without notice as of the original date the leave was begun. |
|---|---|

7.

| Type | Military Leave |
|---|---|
| Eligibility | All employees in full-time and part-time regular and limited-term positions who are eligible to accrue leave. See Section 5.4.A.2. |
| Purpose | May be used by an employee who is a member of one of the covered military, security, or recovery organizations listed below to provide paid absences for the reasons and duration outlined below: |
| Guidelines | Legal Basis<br>James City County is committed to ensuring that our Personnel Policies are in compliance with the Uniformed Services Employment and Reemployment Rights Act (USERRA) Title 38 and as amended by Title 42.<br><br>Certain activated employees in organizations other than the uniformed service are intermittent federal employees and are considered members of the uniformed service for purposes of USERRA.<br><br>Covered Organizations and Qualifying Reasons<br><br>| Covered Organizations | Qualifying Reason |<br>|---|---|<br>| The organized reserve forces of any of the armed services of: The United States National Guard Naval Militia | Annual active duty for training. Called to active duty. Called forth by the Governor during a disaster. Other reasons covered by USERRA. |<br>|  |  | |

| | |
|---|---|
| Members of the Department of Homeland Security/Federal Emergency Management Agency's (FEMA) Disaster Medical System, to include: Disaster Medical Assistance Team (DMAT) Disaster Mortuary Operational Response Team (DMORT) Other groups as required by law | Federal deployment and/or training during regularly scheduled work hours. |

Amount of Leave

Up to 15 days during each federal fiscal year, which is October 1 through September 30, for qualifying reasons.

Duration of Leave and Associated Pay and Benefits

| Length of Absence | Salary and Benefits |
|---|---|
| Up to 15 days per federal fiscal year | Full pay and all benefits and benefit accruals continue. |
| More than 15 days in a federal fiscal year | Employee coordinates with department director to use other applicable leave or leave without pay. |

Special Circumstances
Employees who are members of the force listed above and are involuntarily called to federally funded military active duty shall receive the following:

a.  A Military Pay Differential in the amount of the difference between the employee's military base pay plus basic allowances for housing and subsistence, and the employee's regular County base pay. If the employee's military pay plus allowance exceeds the County pay, no differential shall be paid.

Employee Responsibility
a.  The employee must submit a copy of the valid written orders when requesting military leave and a copy of the release from active duty upon return.
b.  The employee cannot accept other employment while on military leave without the prior approval of the department director.

| | |
|---|---|
| | **Return to Work** |
| | a.  The employee may use up to five years of cumulative service and still retain reemployment rights as provided by USERRA. |
| | b.  The position that the employee is eligible to return to after active-duty service depends on the length of that service as provided by USERRA. |
| | c.  The employee's terms of employment are controlled by the Personnel Policies and Procedures Manual and applicable USERRA provisions. |
| | d.  If the employee does not return to work after deactivation as prescribed by law, the County Administrator may declare the employee to have terminated voluntarily as of the expected return to work date. |
| | **Urban Search and Rescue** |
| | Members of the Department of Homeland Security/FEMA's Urban Search and Rescue Team (US&R) are not considered intermittent federal employees or members of the uniformed services under USERRA. These employees when activated will be paid according to the Mutual Aid Agreement Memorandum of Understanding concerning US&R team membership and FEMA reimbursement policies in effect at the time of activation. |

8.

| Type | Volunteer and School Leave |
|---|---|
| Eligibility | Employees in full-time and part-time regular and limited-term positions except those hired on or after January 1, 2014, into part-time regular and limited-term positions which have fewer than 780 annual authorized hours. Part-time regular employees hired after December 1, 2019, who work a minimum of 1,040 annual hours. |
| Purpose | School Leave may be used by an employee to provide paid absences to perform volunteer work in a school, to meet with a teacher or administrator concerning the employee's children, stepchildren, or children over whom the employee has custody, or to attend a school function in which such a child is participating. School leave may be used for these purposes in a public or private elementary, middle, or high school, or a licensed preschool or daycare center. |
| | Volunteer Leave may be used by an employee to provide paid absences to perform volunteer work as part of an organized service project through a recognized nonprofit or governmental organization. |

| Guidelines | Employees in full-time regular and limited-term positions may take up to eight (8) hours of School Leave per fiscal year and up to eight (8) hours of Volunteer Leave per fiscal year.<br>Employees in part-time regular and limited-term positions may take up to one day as defined in Section 5.4.A.3.a. |

9.

| Type | Short-Term Disability (STD) |
| --- | --- |
| Eligibility | Employees in full-time regular and limited-term positions who are VRS Hybrid Plan members. |
| Purpose | May be used by an employee to provide paid absences for illnesses or injuries including Workers' Compensation meeting the criteria set forth in the Code of Virginia. |
| Guidelines | Details of coverage are available from the Human Resource Department. |

10.

| Type | Personal Days |
| --- | --- |
| Eligibility | All employees in full-time and part-time regular and limited-term positions except those hired on or after January 1, 2014, into part-time and limited-term positions which have annual authorized hours fewer than 780 and those hired on or after December 1, 2019, into positions with fewer than 1,040 annual authorized hours. |
| Purpose | May be used by an employee for leave on holidays that are not recognized County holidays, for workdays adjacent to a recognized County holiday, or for other days of personal significance. |
| Guidelines | Employees in full-time and part-time regular and limited-term positions may take two personal days per fiscal year as defined in Section 5.4.A.3.a. The employee's personal days must be used by June 30 of each year, or the excess shall be forfeited. Personal Days require supervisory approval prior to use and are not eligible to be paid out at time of termination. |

Section 5.5    Family and Medical Leave Act (FMLA)

    A.    Policy Statement - James City County policy complies with the Family and Medical Leave Act (FMLA) of 1993 (as revised January 16, 2009). The function of this policy is to provide employees with a general description of their FMLA rights. This policy summarizes the key provisions of the Act; employees should refer to the Act itself or contact Human Resources if more specific detail is needed. In the event of any conflict between this policy and

the applicable law, employees will be afforded all rights required by law. Under this policy, James City County will grant up to 12 weeks of time away from work (or up to a total of 26 weeks of military caregiver leave to care for a covered service member with a serious injury or illness incurred in the line of duty while on active duty) during a 12-month period to eligible employees. The leave taken under FMLA may be paid, unpaid or a combination of paid and unpaid leaves, depending on the circumstances of the leave and in accordance with Sections 5.4 and 5.5. A request for determination of eligible leave under FMLA may be initiated by the employee, the supervisor, or the Human Resource Department in accordance with their respective responsibilities outlined in Sections 5.5.F, 5.5.G, and 5.5.H.

B.   <u>Eligibility</u> - To qualify for FMLA under this policy, the employee must meet all of the following conditions:

1.   The employee must have worked for the County for 12 months or 52 weeks. The 12 months or 52 weeks need not have been consecutive.
2.   The employee must have worked at least 1,250 hours during the 12-month period immediately before the date the leave is requested to begin. Hours actually worked will be counted in determining the 1,250 hours; paid or unpaid time off will not be counted.

C.   <u>Definitions</u>

1.   <u>Day</u> - See Section 5.4.A.3.a.
2.   <u>Rolling Year</u> - 12-month period measured backward from the date an employee uses any FMLA leave.
3.   <u>In loco parentis</u> - Acting as a temporary guardian of a child.
4.   <u>Next of Kin</u> - The closest blood relative of the injured or recovering service member.
5.   <u>Parent</u> - The biological, adoptive, step, or foster parent or other person who stands "in loco parentis" to the employee.
6.   <u>Qualifying Exigency</u> - One of the following:
     a.   short-notice deployment,
     b.   military events and activities,
     c.   child care and school activities,
     d.   financial and legal arrangements,
     e.   counseling,
     f.   rest and recuperation,
     g.   post-deployment activities and
     h.   additional activities that arise out of active duty, provided that the employer and employee agree, including agreement on timing and duration of the leave.
7.   <u>Serious Health Condition</u> - An illness, injury, impairment, or physical or mental condition that involves inpatient care or continuing treatment by a health care provider. The "continuing treatment" test

for a serious health condition under the regulations may be met through:

    a.     a period of incapacity of more than three consecutive, full calendar days plus treatment by a health care provider twice, or once with a continuing regimen of treatment,

    b.     any period of incapacity related to pregnancy or prenatal care,

    c.     any period of incapacity or treatment for a chronic serious health condition,

    d.     a period of incapacity for permanent or long-term conditions for which treatment may not be effective, or

    e.     any period of incapacity to receive multiple treatments (including recovery from those treatments) for restorative surgery, or for a condition which would likely result in an incapacity of more than three consecutive, full calendar days absent medical treatment.

8.     <u>Son or Daughter</u> - A biological or adopted child or foster child, a stepchild, a legal ward, or a child of a person standing "in loco parentis" who is under 18 years of age. FMLA leave may apply to a son or daughter defined in this section who is over 18 if either of the following two situations apply:

    a.     The child is incapable of self-care because of mental or physical disability.

    b.     Leave is requested and approved for a qualifying exigency.

9.     <u>Spouse</u> - A husband or wife.

10.     <u>12-month period</u> -

    a.     For military caregiver leave, the 12-month period begins on the first day that leave is taken and ends 12 months later.

    b.     For determining the 1,250-hour eligibility provision, the 12-month period begins 12 months prior to the start of the FMLA leave.

11.     <u>Week</u> - The annual authorized hours of the employee's position divided by 52.

D.     <u>Reasons for FMLA Absences</u> - To qualify as FMLA leave under this policy, the employee must be taking leave for one of the reasons listed below:

1.     To care for a spouse, child or parent with a serious health condition.

2.     The serious health condition of the employee.

3.     The birth of a child and in order to care for that child.

4.     The placement of a child for adoption or foster care and to care for the newly placed child.

5.     Qualifying exigency leave for an employee whose spouse, son, daughter or parent is a member of the National Guard or Reserves when the covered military member either has been notified of an impending call or order to active military duty or who is already on active duty in support of a contingency operation. The leave may begin as soon as the individual receives the call-up notice.

6.   Military caregiver leave (also known as covered service member leave) to care for a spouse, son, daughter, parent or next of kin who is a covered service member with a serious illness or injury incurred in the line of duty while on active duty.

E.   <u>Amount of Allowable FMLA Leave</u>

1.   Allows eligible employees to take leave from work for up to 12 work weeks of paid, unpaid or a combination of paid and unpaid leaves during a rolling year. Each time an employee takes leave that qualifies under FMLA, the County will compute the amount of leave the employee has taken under this policy during the fiscal year and subtract it from the 12 weeks of available leave. The balance remaining is the amount of FMLA leave the employee may take until the end of that rolling year.

2.   An eligible employee may take up to 12 weeks paid, unpaid or a combination of paid and unpaid leave for the birth of a child or the placement of a child for adoption or foster care, to care for a spouse, child or parent with a serious health condition, or where the employee suffers from a serious health condition. FMLA leave to bond with a child must be taken within one year of the child's birth or placement and must be taken as a continuous block of leave.

3.   An eligible employee may take up to 26 weeks of military caregiver leave during a single 12-month period beginning the first day the eligible employee takes leave and ends 12 months after that date. During this single 12-month period, the employee may also take leave for a different eligible FMLA-related event, but the employee is entitled to a combined total of 26 workweeks of military caregiver leave and leave for any other FMLA-qualifying reason in this single 12-month period. Under this policy, up to a total of 26 weeks of military caregiver leave to care for a covered service member with a serious injury or illness incurred in the line of duty while on active duty during the fiscal year for eligible employees.

4.   If a husband and wife both work for the County and each wishes to take leave for the birth of a child, adoption or placement of a child in foster care, the husband and wife may take a combined total of 12 weeks of FMLA leave during the rolling year. If a husband and wife both work for the County and each wishes to take leave to care for a covered injured or ill service member, the husband and wife may take a combined total of 26 weeks of FMLA leave during a 12-month period.

5.   An employee who uses accrued paid leave to cover some or all of the FMLA leave must take it in accordance with County policy as defined in Section 5.4.F of this policy.

6.   If paid leave is used, such time will also be counted concurrently toward the 12 weeks granted under FMLA. Disability leave for the

birth of a child and for an employee's own serious health condition, will be designated as FMLA.

7. Worker's Compensation injuries or illnesses will be designated as FMLA after 6 months of date of injury.

8. Employees in VRS Plan 1 or Plan 2 will be afforded an additional 14 weeks upon the completion of the original FMLA designation. This will provide employees the same benefit as those covered under the VRS Hybrid plan for short-term disability.

F. <u>Employee Responsibilities</u> - An eligible employee requesting time off for eligible FMLA reasons must comply with their department's usual and customary notice and procedural requirements for requesting leave. When an employee does not comply with James City County's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed, denied, or rescheduled.

1. Employee requests FMLA paperwork from Human Resources and informs supervisor the purpose for leave. Notice should be provided 30 days in advance if leave is foreseeable. When advance notice is not possible, the employee must provide notice within 5 working days of event or as soon as practicable and must comply with the Department's absence notification procedures.

2. An employee must work with the supervisor to identify the type of County leave(s) which will be taken during the absence.

3. Provide medical certification within 15 calendar days of the request for leave if the situation necessitating the absence and anticipated duration of leave if foreseeable. Medical certification will be provided using the appropriate Department of Labor form obtainable from Human Resources or the DOL website.

4. An employee must advise their supervisor and the Human Resource Department if leave is to be taken intermittently, or on a reduced work schedule basis.

5. An employee should contact Human Resources to make benefit payments if necessary.

6. Employees should keep their supervisor and the Human Resources informed of the status of the absence, including any change in the circumstances for which the leave is being taken, and the employee's anticipated return to work.

7. Prior to returning to work, an employee must provide to the Human Resource Department a fitness for duty certification from their physician if the leave was taken for the employee's own serious health condition. Human Resources will notify supervisor of the return to work date and if the employee has any restrictions.

G. <u>Supervisor Responsibility</u> - If an employee requests leave for an eligible FMLA event, or when an employee has been absent for more than five (5) consecutive workdays for reasons which may make the employee eligible for

Revised 6/27/2023

FMLA, the supervisor must inform Human Resources of the absence so that Human Resources may inform the employee in writing, of their rights and responsibilities under FMLA.

1.   Supervisor must inform Human Resources of any contact with the employee regarding the extension of FMLA leave or if the employee has been released to return to work sooner than expected.

2.   Supervisor must not allow the employee to return to work until a Return to Work Form has been provided to Human Resources.

H.   <u>Human Resource Responsibilities:</u>

1.   Post and provide general notice to all employees of their FMLA rights and responsibilities.

2.   Upon learning of the employee's absence, notify the employee within five (5) workdays that the leave may qualify for and be designated as leave under FMLA.

3.   Review the employee-submitted documentation to determine if the employee's absence qualifies under FMLA.

4.   If the absence does not qualify for FMLA, confirm that in writing to the employee including the reason(s) the employee is not eligible.

5.   If the absence does qualify for FMLA:

   a.   Confirm the employee's eligibility for FMLA in writing including ending date of leave.

   b.   Maintain group health benefits as if the employee continued to work instead of taking leave.

   c.   Notify the employee concerning the status of benefits while on leave.

   d.   Notify the employee's supervisor of the qualified FMLA absence so tracking of leave may begin.

   e.   Upon completion of an employee's absence under FMLA:

      1)   Notify supervisor of return to work date any restriction upon receipt.

      2)   Ensure the employee is returned to the same or equivalent position based upon the FMLA provisions.

      3)   Track the employee's remaining available time and the remaining eligible time period.

I.   <u>Recertification/Second Opinion</u> - James City County may request recertification for the serious health condition of the employee or the employee's family member no more frequently than every 30 days and only when circumstances have changed significantly, or if the employee or the County receives information casting doubt on the reason given for the absence, or if the employee seeks an extension of his or her leave. Otherwise, the County may request recertification for the serious health condition of the employee or the employee's family member every six months in connection with the FMLA absence. The County may provide the employee's health care

provider with the employee's attendance records and ask if the need for leave is consistent with the employee's serious health condition. If the County has reason to doubt the validity of the medical certification, the County, at its own expense, may require the employee to obtain a second opinion and, if the employee's health care provider's certification and the second opinion certification conflict, a third opinion certification.

J.    <u>Additional Information</u> - Employees seeking more detailed information may contact the Human Resource department or consult the Family and Medical Leave Act itself and/or the appropriate areas of the Department of Labor web site.

<u>Section 5.6</u>    <u>Health Related Benefits</u>

A.    <u>Policy Statement</u> - James City County recognizes the importance of the physical and mental health of employees and their dependents to the employees' quality of life and productivity at work. It is the policy of James City County to provide employees with assistance to care for their physical and mental health.

B.    <u>Health Insurance</u>

1.    <u>Group Health Insurance Plan</u> - The County shall provide at least one group health insurance option.

2.    <u>Eligibility and Cost</u>

a.    Employees in full-time regular and limited-term positions and employees identified as eligible under the Affordable Care Act, their spouses, and dependent children are eligible for group health insurance coverage. The County shall pay at least a portion of the cost of the group health insurance coverage for active employees.

b.    Retirees, at least 50 years of age, who have worked for the County for at least 15 years or who have worked for the County fewer than 15 years but have retired because of a Line of Duty Act injury, are eligible to continue group health insurance for themselves and their dependents until they are eligible for Medicare, if they elect to participate prior to leaving County employment. The County bears none of the cost for this coverage; however, the retiree may be eligible for a VRS Retiree Health Insurance Credit. See Sections 5.7.B.2.b and 5.7.C.3.

c.    Employees who are terminating employment or reducing their hours to part-time may elect to continue the group insurance coverage for themselves and their dependents at that time. This option is available only for as long as the employee or eligible

family member is not covered by another group plan and only for designated periods of time. The County bears none of the cost of this coverage and an administrative charge is added to the premium.

3. <u>Medicare</u> - Both the County and the employee contribute to the Medicare account of employees in full-time and part-time regular, limited-term, temporary, and on-call positions as required by law. All questions regarding Medicare coverage should be directed to the Social Security Administration.

C. <u>Employee Assistance Program</u> - The County shall offer a program to provide confidential counseling and referral services.

1. <u>Eligibility</u> - Employees in full-time and part-time regular and limited-term positions, their spouses, and dependent children are eligible for counseling and referral services.

2. <u>Cost</u> - The County shall bear the cost of short-term counseling and referral services. The Employee Assistance service provider shall refer the employee and dependents to an affordable community resource, including coordination with the employee's health insurance plan, for longer-term counseling.

D. <u>Fitness Program</u> - The County shall assist employees in accessing at least one fitness center and in obtaining educational materials on wellness.

<u>Section 5.7</u>   <u>Retirement, Disability and Life Insurance</u>

A. <u>Policy Statement</u> - James City County recognizes the importance of income after retirement and in the event of disability, and the financial needs of surviving family members in the event of death. It is the policy of the County to assist employees in meeting these needs through financial contributions to retirement and insurance plans or by providing group plans in which employees may choose to participate at their own expense.

B. <u>Retirement</u> - James City County believes that an employee is best served by having retirement income from more than one source. It is the policy of the County to contribute towards Social Security (FICA) and the Virginia Retirement System (VRS), on behalf of the employee. The County also provides an IRS Section 457 Deferred Compensation Plan to which the employee may choose to contribute. The County may match a portion of those contributions as outlined in Section 5.7.B.3.b.

1. <u>Social Security (FICA)</u> - Both the County and the employee contribute to the social security account of employees in full-time and part-time regular, limited-term, temporary, and on-call positions as required by law. All questions, including those regarding estimated retirement income, account balances, and the like, should be directed to the local Social Security Administration Office.

2.   <u>VRS Service Retirement</u>

a.   The County's retirement plan is administered by the Virginia Retirement System (VRS). VRS Plans 1 and 2 are defined benefit plans qualified under the Internal Revenue Service Code. The VRS Hybrid Plan has both a defined benefit and defined contribution component. The VRS is governed by the *Code of Virginia,* and changes to the law can be made by an act of the General Assembly. Some items are optional to local governments.

The VRS outlines the factors used to determine the defined benefit retirement benefit such as whether the employee is in Plan 1, 2, or the Hybrid Plan, age, average final compensation, and years of VRS service.

b.   Generally, a credit of up to a maximum of $45 per month is available to employees who retire with at least 15 years of VRS service to help defray the cost of health insurance premiums. The amount of the credit varies based on factors such as the number of years of VRS service. This reimbursement for health insurance premiums is included in the VRS retirement payment and is non-taxable. (Effective 7-1-2006)

3.   <u>Deferred Compensation</u>

a.   The County sponsors a pre-tax 457 Deferred Compensation plan and a post-tax Roth 457 to allow County employees to save a portion of their salary for retirement purposes. The plans are voluntary and administered in accordance with appropriate Federal and State laws. Employees in full-time and part-time regular and limited-term positions are eligible to participate.

b.   The County may match 50 percent of the employee contribution in the deferred compensation plan up to a maximum County contribution established by the Board of Supervisors in the budget. The maximum match for part-time employees will be half that of full-time employees. Employees who have at least two years of County service will be vested for purposes of the match funds. (Effective 7-1-2006)

c.   Employees age 45 or older with 15 years or more of service on July 1, 2006, may be eligible for an additional match upon retirement if they have contributed continuously to deferred compensation from July 1, 2006, and if they contribute at least some of their final leave payments to their deferred compensation account. (Effective 7-1-2006)

C.   Disability

1.   <u>VRS Plan 1 and 2 Members</u> - The VRS provides an employee with disability retirement if the employee becomes mentally or physically unable to perform the employee's present duties, the disability is likely to be permanent, and the employee is under age 65. Employees are eligible from the first day of employment, provided the disability did not exist at the time of employment, and regardless of whether the cause of the disability is work-related or is compensable under Workers' Compensation.

2.   <u>VRS Hybrid Plan Members</u> - are eligible for Long-Term Disability (LTD) coverage in accordance with the provisions implemented under the Code of Virginia. If benefits are approved by the LTD insurance carrier, benefits may continue until service retirement age.

3.   <u>Health Insurance Credit</u> - VRS provides a health insurance credit of $45 per month to employees who retire on disability regardless of the years of VRS service to help defray the cost of health insurance premiums. This reimbursement for health insurance premiums is included in the VRS retirement payment and is non-taxable. (Effective 7-1-2006)

D.   Life Insurance

1.   <u>VRS Basic Group Life Insurance</u> - Provides payment to an employee's designated beneficiary in the event of the employee's death or to the employee in the event of his dismemberment.  A medical examination is not required in order to be covered by this insurance.  The County pays the full cost of the coverage. The insurance continues at a reduced amount for employees who retire and receive VRS payments and may be converted to an individual policy by employees who are terminating employment.

2.   <u>VRS Optional Group Life Insurance</u> - Employees may, at their own expense, purchase additional life insurance for themselves as well as coverage for their spouses and dependent children through a VRS-sponsored program. A medical examination is not required for some levels of coverage.

<u>Section 5.8</u>   Workers' Compensation

A.   <u>Policy Statement</u>

When an employee experiences an employment-related injury or illness as defined in the Workers' Compensation Act of the Code of Virginia, the County provides medical reimbursement, lost wage payments, and fixed awards as outlined in the Code of Virginia. The County also provides a salary supplement to help offset the difference between the lost wage payment and the employee's normal net pay, after taxes. Employees do not accrue leave while on Workers'

Compensation. Where the injury or illness is outside the scope of the Code, employees are encouraged to contact the Human Resource Department to determine what other benefits may apply.

B.   <u>Eligibility</u>

Employees in full-time and part-time regular, limited-term, temporary, and on-call positions are eligible for Workers' Compensation benefits.

<u>Section 5.9</u>   <u>Tax-Related Benefits</u>

A.   <u>Policy Statement</u> - James City County recognizes the value of paying certain expenses outlined in IRS Code Section 125 with pretax dollars, also called Premium Conversion.

B.   <u>Pretax Health Insurance Premiums</u> - Employees who choose to enroll in the County sponsored group health insurance, pay their portion of the premiums on a pretax basis.

C.   <u>Pretax Dental Insurance</u> - Employees who choose to enroll in the County sponsored dental insurance, pay their portion of the premiums on a pretax basis.

D.   <u>Reimbursement Accounts</u> - Also called Flexible Spending Accounts, allow eligible employees in full-time and part-time regular and limited-term positions who enroll in the program to pay for eligible health care or dependent care expenses with pretax dollars on a reimbursable basis.

<u>Section 5.10</u>   <u>Employer Assisted Home Ownership Program</u>

A.   <u>Policy Statement</u> - James City County recognizes the value of having employees live in the community they serve when possible economically and considering family circumstances. It is the policy of the County to assist employees who meet eligibility requirements to purchase a home in the community.

B.   <u>Legal Basis</u> - County Code Section 2-15.2 authorizes the County program in accordance with Code of Virginia Section 15.2-958.2.

C.   <u>Benefits</u> - eligible employees may receive matching funds up to the maximum allowed by the Program if they purchase a primary residence in James City County or the City of Williamsburg and they meet all program terms and conditions.

D.   <u>Repayment of Matching Funds</u> - In accordance with the terms of the Program, employees are required to repay all or part of the funds received if they do not remain in County employment and live in the residence for an amount of time specified in the program terms and conditions.

Section 5.11   <u>Optional, Employee Paid Benefits</u>

From time to time the County may offer optional benefits that it deems of value to employees, and which are 100 percent employee paid.

Chapter5

THIS PAGE INTENTIONALLY LEFT BLANK

## CHAPTER 5

### Procedures

### Section 5.8 Workers' Compensation

Overview

Work-Related Injury, Illness, Substance Exposure

Company Nurse

Panel Doctors

Medical Treatment

Emergency Situations

Workers' Compensation Claim Processing

Incident Analysis

Medical Bills

Lost Wage Payments

Workers' Compensation Supplement

Alternative Duty

Leave Records

Leave Time

Section 5.8     Workers' Compensation Procedures

    A.    Overview

Workers' compensation insurance is a State-mandated and controlled coverage regulated by the Virginia Workers' Compensation Commission.  The Virginia Association of Counties (VACo) provides the County's workers' compensation insurance in accordance with state laws.  Not all aspects of the Workers' Compensation Act are covered in these procedures.  Risk Management has information available that answers many of the questions that employees and supervisors have concerning workers' compensation.  Please contact Risk Management with questions or requests for additional information.

    B.    Work-Related Injury, Illness, Substance Exposure

Immediately following a work related injury, illness, or substance exposure the affected employee is required to notify his/her supervisor in person, by phone, or by radio as soon as possible after the injury. Prompt reporting ensures timely processing of the claim.  Failure to do so will impede processing of the claim and could lead to a denial of the claim.

    C.    Company Nurse

After notification of an injury, the supervisor will instruct the injured employee to call Company Nurse to report the injury.  Calling Company Nurse must take place before medical treatment is sought, unless there is a medical emergency.  In this case, the supervisor calls Company Nurse to report.

    D.    Panel Doctors

In accordance with the Virginia Workers' Compensation Act, James City County has established a panel of doctors to furnish medical care for all workers' compensation claims.  The panel consists of primary care physicians.  The employee must select a primary care physician from the panel for his/her medical bills to be covered under workers' compensation.  Company Nurse will review the panel with the employee when explaining treatment options.

    E.    Medical Treatment

Company Nurse will call the panel doctor's office informing them the employee will be in for treatment of a Workers' Compensation claim.  If a referral to a specialist is required, the panel doctor will select one based on the injury and input from the employee.

Upon completion of the initial visit to the doctor the employee is required to report back to his/her supervisor as soon as possible in person or by phone.  The employee is required to provide an update of his/her condition after each subsequent visit to the doctor.

F.     <u>Emergency Situations</u>

In an emergency situation, the primary objective is to obtain immediate medical care for the injured employee.  In this situation the following guidelines should be followed.

    1.   <u>Obtain Emergency Care</u> - Obtain emergency care as required such as an emergency room.

    *2.*   <u>Company Nurse</u> - The supervisor calls Company Nurse to report the injury as soon as possible.

    3.   <u>Panel Doctor</u> - The employee is required to select a panel doctor as soon as they can after receiving emergency medical treatment.  The panel doctor will perform follow up care, and will serve as the coordinator of specialist care overseeing the treatment of the employee.

G.     <u>Workers' Compensation Claim Processing</u>

Company Nurse will email a completed claim report to VACo and Risk Management within 30 minutes of getting the call with claim information.  Risk Management forwards the report to the supervisor and department director for review and their records.  The VACo will make a determination, including investigation if needed, to establish whether the claim meets the requirements of compensability as defined by the Virginia Workers' Compensation Act.  If a claim is denied by VACo, the employee may seek an appeal through the Workers' Compensation Commission (804-367-8600).

H.     <u>Medical Bills</u>

The Virginia Workers' Compensation Act provides for the payment of reasonable and customary medical services associated with treatment for a workers' compensation claim.  This includes physician and hospital services as well as prescription drugs.

I.     <u>Lost Wage Payments</u>

The Virginia Workers' Compensation Act provides lost wage payments when an employee is unable to work due to injury, in the amount of 66.66 percent of the injured employee's average weekly wage (AWW).

The AWW is determined by calculating the weekly average of the employee's gross wages for the 52 weeks prior to the date of the injury.

Workers' compensation pays on a weekly basis with a seven-day waiting period from the date of injury before the employee becomes eligible for lost wage payments. If an injured worker is out of work more than 21 calendar days, workers' compensation pays the first 7 days retroactively. Workers' compensation lost wage payments are not taxable.

J.     Workers' Compensation Supplement

The County wants to minimize the potential for financial loss for employees as a result of being injured while working, including the loss of benefits. The County provides a workers' compensation supplement to help offset the difference between the workers' compensation lost wage payment and the employee's normal net pay (pay after taxes, but before deductions.)

The County will pay the employee his/her normal wage for the first seven days after the injury. After the first seven days, the employee will be paid the difference, plus an additional amount (to help offset taxes), between the workers' compensation payment and his/her normal net pay. This amount will be taxed and normal voluntary deductions will be taken out. If there is not enough money in the supplement to make all voluntary contributions, the employee will be contacted to make special arrangements.

If the employee is out more than 21 days, the check from workers' compensation for the first seven days must be turned over to the County since the employee was already paid in full for this time by the County.

Eligibility - The workers' compensation supplement is provided to employees in regular and limited term positions.

Duration - The workers' compensation supplement is provided for a maximum of 6 months.

K.     Alternative Duty

The County supports alternative duty assignments for employees who are recovering from injuries. Alternative duty offers employees a chance to return to work at a capacity and duration approved by the panel doctor. The employee will be considered for productive assignments within his/her current department, or another department if an assignment is not available in his/her department. Employees are encouraged to return to work in an alternative duty capacity whenever possible.

Employees will receive their normal pay while in an alternative duty assignment provided they work full time.  Employees who are restricted to limited hours will receive Workers' Compensation lost wage payments for the hours they miss due to injury.  There will be no workers' compensation supplement for employees in alternative duty.  Failure to report to an available alternative assignment will result in VML discontinuing lost wage payments and the employee will be considered to be on unapproved leave.

Alternative duty assignments will not exceed six months.  After six months from the date of injury, the panel physician should be able to indicate whether the employee is able to return to full duties of his/her position or if work limitations will be permanent.

In the event the employee is still being treated for the injury, and a final prognosis cannot be made, the alternative duty assignment may be extended if approved by the Department Director and if it does not impede operations.  In the event of a permanent limitation, job accommodations and position transfer will be explored as options for the employee.

L.   Leave Records

Employees are required to complete their leave record reflecting time missed from work due to injury and time at work while under work restrictions.  The following codes are used to reflect these hours: (Sick leave is not charged while an employee is missing time for an injury accepted by Workers' Compensation.)

**W**   Workers' Compensation (Hours missed from work due to work-related injury.  This also includes time for doctor appointments.  Treatment and time missed must be for an approved Workers' Compensation claim and treatment.  If a claim is denied, any "W" code used must be changed to an "S" code for sick leave.)

**AD**   Alternative Duty (Hours the employee works in alternative duty or with restrictions prohibiting the employee form performing his/her normal job and/or restrictions on the number of hours per day an employee may work)

M.   Leave Time

Sick and vacation leave do not accrue while an employee is missing time from work due to an injury accepted by Workers' Compensation.

Chap5.8-WorkersComp-Procedures

THIS PAGE INTENTIONALLY LEFT BLANK

# CHAPTER 6

## Employee Development

## Policy

Section 6.1     Policy Statement

Section 6.2     Guiding Principles

Section 6.3     Definitions

Section 6.4     Eligibility

**Forms**

Tuition Payment Application

## CHAPTER 6

## EMPLOYEE DEVELOPMENT

### Policy

Section 6.1    Policy Statement

James City County values employees who demonstrate high standards of excellence, efficiency, and commitment to service.  To achieve this, James City County supports broad involvement, learning and information sharing.  James City County supports activities that promote employee development and provides assistance within available resources.

Section 6.2    Guiding Principles

A.    The opportunity for employees to participate in development activities is essential to achieving the County's mission and is an important tool for recruiting and retaining a quality workforce.

B.    It is a joint employee and County responsibility to review and assess employee performance and development needs on a regular basis and to establish and implement a Development Plan to meet those needs.

C.    The County supports a variety of development activities, including those that address current job needs, help develop the necessary skills to perform other jobs within the organization, and prepare employees for advancement opportunities.  In allocating available resources, the priority is to support activities that assist employees in performing their current job.

D.    Employees participating in development activities should share and implement their ideas where appropriate.  Supervisors are encouraged to discuss with employees skills learned through development activities and to provide opportunities for employees to use and to share acquired skills and ideas.

Section 6.3    Definitions

A.    Employee Development Activities include, but are not limited to: learning opportunities such as on-the-job training; mentoring; internships; job swaps; challenging assignments; college classes; courses of study leading to certificates, diplomas, or degrees; conferences; institutes; workshops; seminars; self-study; correspondence courses; testing for and receiving job or promotion-related certifications; video and audiotapes; and computer

6-2

and satellite-based learning.   The supervisor and employee select the optimum method for attaining the knowledge or skill identified.

B.      <u>Employee Development Plan</u> is developed during the employee's performance evaluation by the supervisor and employee, and identifies learning objectives, needed Knowledge, Skills, and Abilities (KSAs), and opportunities to acquire KSAs through various activities.   Although an individual needs to possess the minimum qualifications for a position before being hired, the County recognizes that job requirements change due to changes in legislation, regulations, and scope of duties, technology, and other factors.

C.      <u>Employee Development Assistance</u> is a subsidy of the costs associated with participation in development activities, and may include, based on the activity, full or partial payment of fees, tuition, tests, certifications, travel costs, books, materials or time off.   Employee development activities must be satisfactorily completed or full or partial repayment may be required. Certain activities may require a signed agreement to reimburse the cost of the course to the County if the employee voluntarily leaves employment. Funds for employee development assistance are identified in the approved budget.

D.      <u>Tuition Assistance</u> is one category of development assistance.   It is an advance or reimbursement of tuition costs only, for a course or degree program offered by an accredited high school, junior or community college, university, technical, vocational, or trade school. This category of assistance may be covered by separate IRS rules.

<u>Section 6.4</u>    <u>Eligibility</u>

A.      <u>Employee Development Activities</u>

All employees are eligible to participate in development activities.

B.      <u>Tuition Assistance</u>

Employees in full- and part-time regular and limited-term positions are eligible for tuition assistance.

THIS PAGE INTENTIONALLY LEFT BLANK

# CHAPTER 6

## Employee Development

## Procedures

Section 6.1      Assessment

Section 6.2      Development

Section 6.3      Eligibility & Cost

Section 6.4      Development Activities

**Forms**

Tuition Payment Application

Expense Form For Reimbursement and Travel Authorization

Revised 1/14/2014

# CHAPTER 6

## EMPLOYEE DEVELOPMENT

### Procedures

Section 6.1     Assessment

        A.    Current Job - It is the responsibility of the supervisor to identify the knowledge, skills, and abilities (KSAs) needed to perform the job.   It is the joint responsibility of the supervisor and the employee to review employee performance and development needs on a regular basis.

        B.    Career Opportunities - It is the responsibility of the supervisor to prepare employees to assume a supervisor's job should a vacancy occur, as well as to cross train employees to meet the needs of the Division/Department.   It is the responsibility of the employee to identify career interests to the supervisor.   This may be a position in the same or different department or career field.   The employee should also express that interest to a supervisor or department director in the department or career field of interest.   Supervisors and directors are strongly encouraged to support employees' exploration of career change or advancement.   Copies of job descriptions are available on the Internet, and from Human Resources.

            While participation in career development opportunities is expected to enhance employee performance and professional abilities, the County cannot guarantee that participation will lead to advancement, a different job assignment, or pay increase.

Section 6.2     Development Plans

        As a part of the employee's annual performance evaluation, the supervisor, with input from the employee, identifies the steps that will be taken in the upcoming year to improve performance or to further development.

Section 6.3     Eligibility and Cost

        All employees are eligible to participate in development activities.   Employees in full- and part-time regular and limited-term positions are eligible for tuition assistance.

Revised 1/14/2014

A.   <u>Payment for Development Activities</u>

The County may provide full or partial payment for development activities if activities are job related, related to a reasonable promotional objective, or based on an employee development plan and funds are available.  Supervisors and or department directors must approve payment in advance.

1.   <u>Workshops and Seminars</u> - the employee and supervisor complete the Expense Form for Reimbursement and Travel Authorization and forward it to Financial and Management Services.

2.   <u>Correspondence Courses and College Tuition</u>

A.   Employee completes tuition assistance request and submits it to the supervisor and/or the department director.

B.   Supervisor and/or department director reviews the request and submits to Human Resources.

C.   Human Resources reviews request and notifies employee if approved; if approved, Human Resources notifies employee the scheduled date that tuition assistance will be credited to his or her pay and date that grades are due to Human Resources to avoid re-payment deduction from pay.

Courses must be from a college or university accredited by one of the six accrediting associations recognized by the Council on Higher Education (CHEA).

Under Internal Revenue regulations, some expenses paid by the County to employees for educational expenses must be included in their gross income and are taxable.

B.   <u>Employee Payment Responsibility</u>

Employee will:

1.   pay the college or university

2.   submit grades to Human Resources by the deadline

Revised 1/14/2014

3.      notify HR immediately if he or she does not enroll in the course after receiving payment

4.      submit grades to Human Resources by the due date

5.      reimburse the County for payment under the following circumstances:

   a)      the employee does not enroll in the course
   b)      the employee fails to successfully complete the activity
   c)      the employee fails to obtain a passing grade of a "C" or better in graded courses or the equivalent of a "Pass" or "Complete" for a non-graded course for undergraduate and a passing grade of "B" or better for graduate courses
   d)      the employee voluntarily leaves employment with the County within one year after completion of the college course.

Payment shall be deducted from the next available pay or if there are not sufficient funds to cover the payment, the employee is responsible to make arrangements with Human Resources for reimbursement.   Exceptions may be granted by the department director.

Section 6.4      Development Activities

The supervisor and the employee select the optimum method for meeting the identified individual and department needs.  Activities may include, but are not limited to: learning opportunities such as on-the-job training; mentoring; internships; job exchanges; challenging assignments; college classes; courses of study leading to certificates, diplomas, or degrees; conferences; institutes; workshops; seminars; self-study; correspondence courses; testing for and receiving job or promotion-related certifications; video or audiotapes; coaching; and computer or satellite-based learning. All development activities must have the approval of a supervisor and/or department director.

A.      Workshops and Seminars - Workshop and seminar activities are provided by sources outside the County for a fee.  These are often provided by professional associations and cover specific topics pertaining to a field of discipline or special topic.

B.      Correspondence Courses - Correspondence courses are normally associated with a university, college, or professional organization

Revised 1/14/2014

and are completed via mail, computer, or television.  They will often include college credits after successful completion including a final project and/or test.

C.    <u>College Courses</u> - Classes that are taken to obtain knowledge in a particular subject area or as part of a degree program provided these courses are approved as job-related, related to a reasonable objective, required for a job promotion-related degree, and are based on an employee's Development Plan.  The amount of tuition assistance and number of classes eligible for tuition assistance per fiscal year will be determined annually.

D.    <u>Self-Study</u> - Self-study opportunities include videos, cassettes, and books.

E.    <u>Training Programs</u> - James City County offers courses and training on-site, taught by both employees and outside trainers.  Training programs are offered to all employees to enable them to better perform their jobs, learn the jobs of other employees in their departments, and/or are identified in the employee development plans.  State and Federally-mandated training such as that required by OSHA also fall under this category.

F.    <u>Temporary Assignments</u> - Employees may be temporarily assigned to a vacant position, or prescribed set of duties, other than that to which they are officially assigned.  This may be in the current department or in a different department.  Temporary Assignments are coordinated between the department director(s) and Human Resources prior to beginning the assignment.

G.    <u>Job Exchanges</u> - James City County encourages departments and individuals to seek development opportunities to strengthen the employee and the organization.  Job Exchanges may occur between employees within the same department, where employees exchange job duties for a specified period of time.  In addition, job exchanges may occur when two employees from different departments change job duties for an agreed upon period of time. Department directors must approve job exchanges.

H.    <u>Coaching</u> – Paid or unpaid assistance provided on a one-on-one basis to address identified needs.

Chapter 6 Procedure

Revised 1/14/2014

THIS PAGE INTENTIONALLY LEFT BLANK

# **CHAPTER 7**

## **Standards of Conduct**

Section 7.1     Objective

Section 7.2     Applicable Regulations

Section 7.3     Management Responsibility

Section 7.4     Coverage of Personnel

Section 7.5     Disciplinary Measures

Section 7.6     Categories of Inappropriate Conduct

CHAPTER 7

STANDARDS OF CONDUCT

Section 7.1    Objective

Regulations to govern the conduct of employees are necessary for the orderly operation of the County.  Such regulations are to the benefit of and protect the rights and safety of all employees.

The County recognizes its continuing responsibility to develop and administer the necessary employment regulations and disciplinary measures in a fair and consistent manner. The County requires all employees to conform to these regulations and to otherwise conduct themselves in a responsible and professional manner.

Section 7.2    Applicable Regulations

Employees shall not conduct themselves in a manner which violates the public trust, discredits the County or its employees, or hinders the effective performance of the County's governmental or proprietary functions.  The regulations referred to in this chapter and the conduct listed herein are not intended to be all inclusive for inappropriate conduct.  Inappropriate conduct shall be disciplined consistent with the provisions of this chapter.

Section 7.3    Management Responsibility

Department managers shall be responsible for administering timely and consistent disciplinary measures for inappropriate conduct pursuant to the procedures set forth in this chapter.  If the appropriateness of specific conduct is in question, the department director shall consult with the Human Resource Director to determine if the conduct is inappropriate and the proper disciplinary measure to be administered.

Section 7.4    Coverage of Personnel

All County employees in regular or limited-term, exempt or non-exempt positions, including employees of a constitutional officer who has agreed to include the employees under the County's compensation plan and personnel policies, shall be subject to the disciplinary procedures in this chapter.  Temporary employees and employees in their introductory period may be discharged at the will of the County Administrator, without cause or hearing.

Section 7.5    Disciplinary Measures

A.    Application - Department directors and supervisors shall apply disciplinary measures fairly and uniformly.  It is the County's policy that discipline be a progressive process and disciplinary measures of less severity than discharge be taken to correct inappropriate conduct before proceedings for discharge are initiated.  However, discharge shall be

appropriate for first violations of extreme misconduct.  No employee has a right or guarantee to any progressive disciplinary measure.

B.    <u>Classification of Disciplinary Measures</u> - Disciplinary measures include:

    1.    Verbal reprimands.

    2.    Written reprimands.

    3.    Suspensions.

    4.    Reductions in grade.

    5.    Demotions.

    6.    Discharge.

C.    <u>Definition of Disciplinary Measures</u>.

    1.    <u>Verbal Reprimand</u>:   A verbal communication directed to an employee for the purpose of making a final statement regarding inappropriate conduct.  Any verbal reprimand shall be documented on Discipline Form A (see Appendix B) within two days of the reprimand and forwarded to the Human Resource Director who shall place the document in the employee's personnel file.

    2.    <u>Written Reprimand</u>:   A written communication directed to an employee for the purpose of making a final statement regarding inappropriate conduct.   Any written reprimand shall be documented on Discipline Form B (see Appendix B) within two days of the reprimand and forwarded to the Human Resource Director who shall place the document in the employee's personnel file.   A copy of the written reprimand shall be delivered to the employee.

    3.    <u>Suspension</u>:  A temporary separation of one or more full work days from employment for the purpose of reprimanding an employee for inappropriate conduct.   A "work day" is defined as a "day" in Section 5.4.A.3.a. A suspension may be with or without pay.  An initial suspension shall not exceed ten work days.   A second suspension within any twelve-month period shall not exceed twenty work days.   Any suspension without pay for work days equivalent to more than one work day shall result in the loss of the accumulation of sick leave and annual leave for that pay period.

    4.    <u>Reduction in Salary</u>:  The adjustment of an employee's wages to a lower salary in the salary range to which he is assigned on the

County pay plan for the purpose of reprimanding the employee for inappropriate conduct.

5.    <u>Demotion</u>: Demotion in this chapter shall always mean disciplinary demotion.   A disciplinary demotion is the assignment of an employee to a lower classified position for the purpose of reprimanding the employee for inappropriate conduct.   Demotion shall not be used as a disciplinary measure if the employee cannot qualify for the lower position, or if such demotion would require the displacement of another employee.   A demotion shall be accompanied by a reduction in range and salary.

6.    <u>Discharge</u>:   A dismissal from employment for the purpose of reprimanding an employee for inappropriate behavior.   An employee who is discharged forfeits all accumulated sick leave.

D.    <u>Procedure</u>

1.    <u>Normal procedure</u>.

a.    It shall be the responsibility of the department director to document any inappropriate conduct thought to justify a suspension, reduction in range, demotion, or dismissal on Discipline Form C (see Appendix B) and to deliver it to the Human Resource Director.

b.    The Human Resource Director shall conduct an investigation within five working days and document the findings on Discipline Form C.

c.    If the Human Resource Director determines that a lesser disciplinary measure is appropriate, he/she shall direct the department director to take appropriate action.

d.    If the Human Resource Director determines that the disciplinary measure is warranted, he/she shall notify the employee of the proposed disciplinary measure in writing to avail him/her an opportunity to respond to the proposed disciplinary measure.

e.    A hearing shall be requested in writing by an employee within two work days after receipt of such written notice or the right to a hearing shall be waived.

f.    The Human Resource Director shall meet with the employee within two work days after receipt of a timely written request for a hearing.

g.    If the Human Resource Director maintains that the disciplinary measure is warranted, he/she shall complete Discipline Form C to document his/her recommendation and deliver it to the County Administrator within two work days.

h.    The County Administrator shall review Discipline Form C, and any other information he/she deems relevant, and impose the appropriate disciplinary measure within two work days of the receipt of Discipline Form C.

i.    A written notice of the disciplinary measure shall be delivered to the employee.

j.    The Human Resource Director shall place a copy of the notice in the employee's personnel file.

2.    <u>Immediate Suspensions</u>:

a.    If a department director determines that an employee's inappropriate behavior poses an immediate threat to the safety or discipline of other employees, he/she shall immediately suspend such an employee.

b.    No such suspension shall be imposed by a department director for more than three work days. If such action is taken, the department director shall on that day prepare Discipline Form C (see Appendix B) and deliver it to the Human Resource Director. If the conduct occurs after official work hours, it shall be delivered the next official work day.

c.    If the Human Resource Director concurs in the action taken, he/she shall process the disciplinary measure in the same manner as provided above.

d.    If the Human Resource Director determines an immediate suspension is not warranted, he/she shall notify the employee in writing to return to work subject to the decision of the County Administrator as to the appropriate disciplinary measure.

e.    If the Human Resource Director determines it is necessary to extend an employee's immediate suspension pending the County Administrator's action, he/she shall notify the employee in writing of such extension.

f.    No such suspension shall exceed ten work days.

3.      Written Notices:

      a.      All disciplinary notices to an employee shall be hand-delivered to such an employee or delivered by certified mail to the employee's last known address as reflected in the records of the Human Resource Department.

      b.      It shall be the responsibility of all employees to notify the Human Resource Department promptly of any address change and the return receipt or the return of the notice letter shall satisfy any requirement of notification to the employee.

4.      Employee Request.

      a.      All written requests by an employee for a hearing, as provided in this Chapter, shall be hand-delivered to the Human Resource Department or the department director.

      b.      All written requests delivered to a department director shall that day be delivered to the Human Resource Department.

5.      Department Director Absent.  Whenever it is provided that any action is to be taken by a department director, and the department director is absent, such action shall be taken by the person exercising the department director's authority during that period of absence.

6.      County Administrator Absent.  Whenever the County Administrator is absent, unless he/she otherwise designates, the Assistant County Administrator shall take any disciplinary measure required of the County Administrator in this Chapter.

7.      Human Resource Director Absent.  Whenever it is provided that any action is to be taken by the Human Resource Director, and the Human Resource Director is absent, such action shall be taken by the person exercising the Human Resource Director's authority during that period of absence.

8.      Discipline of Human Resource Department Employee.  Whenever any disciplinary measure is initiated toward an employee of the Human Resource Department, the Assistant County Administrator shall exercise the duties of the Human Resource Director in regard to that disciplinary measure.

E.    <u>Pending Criminal Charges</u>

    1.    <u>Normal procedure</u>.

        a.    An employee shall report to the Human Resource Director if he/she is charged with a felony or other criminal offense within one work day of the offense.

        b.    If an employee is charged with a felony or other criminal offense of such nature that the employee's continued performance of County duties:

            (1)    Poses an immediate threat to the discipline or effective performance of other employees, or

            (2)    Has an immediate adverse effect on the reputation of the County, or

            (3)    Impairs the effective performance of any County function,

        the Human Resource Director shall investigate such matter, document the information on Discipline Form D (see Appendix B), and deliver it to the County Administrator within two work days.

        c.    If the County Administrator determines a suspension is warranted, he/she shall notify the employee in writing of the proposed suspension and avail him/her of an opportunity to respond to the proposed action at a hearing.

        d.    The hearing shall be requested in writing by the employee within two work days after receipt of such written notice or the right to a hearing shall be deemed waived.

        e.    The County Administrator shall meet with the employee within two work days after receiving the written request for a hearing.

        f.    The County Administrator may suspend such employee for all or any part of the time criminal proceedings are pending.

    2.    <u>Immediate suspension</u>.    With the consent of the County Administrator, the Human Resource Director may order an immediate suspension, when appropriate, pending his/her investigation and the determination of the County Administrator.

Revised 1/14/2014

<u>Section 7.6</u>     <u>Categories of Inappropriate Conduct</u>

Typical inappropriate conduct has been listed in three categories to assist in administering disciplinary measures in a fair and consistent manner.  Each category of conduct has a suggested corresponding measure.  However, mitigating or aggravating circumstances may require a different disciplinary measure than suggested.  Each disciplinary measure shall take into consideration the circumstances surrounding the misconduct, the employee's work history, and the impact of the misconduct on the effective operation of the County.

<u>Category 1 Conduct</u>

Category 1 includes inappropriate conduct, which in the initial instance is not severe in nature, but which requires corrective action to maintain a proper work environment. Category 1 offenses include, but are not limited to:

A.   Poor housekeeping which creates or contributes to inefficient, unsanitary, or unsafe work conditions.

B.   Careless workmanship which evidences unsatisfactory job performance.

C.   Careless or negligent maintenance, handling, or use of County property.

D.   Excessive absences or tardiness.

E.   Unjustified absence from the work station or department without a supervisor's permission.

F.   Stopping work before the specified end of a working day or starting work after the specified beginning of the work day.

G.   Horseplay, pranks, or non-work related activity during working hours.

H.   Posting or removal of notices, signs, or other writing in any form on any non-employee bulletin boards on County property without permission of the department director.

I.   Unauthorized solicitation of employees or others during working hours on County property.

J.   Unauthorized distribution of literature or any other material during working hours or on County property.

K.   Abusive or obscene language.

L.   Conviction of a traffic moving violation while operating a County vehicle.

Appropriate disciplinary measure for Category 1 Conduct occurring in any 12 month period:

First offense - verbal warning

Second offense - written warning

Third offense - suspension, reduction in grade, and/or demotion

Fourth offense - discharge

Category 2 Conduct

Category 2 Conduct includes inappropriate conduct severely disruptive to the proper operation of the County. Category 2 offenses include, but are not limited to:

A.    Refusal to follow a supervisor's instructions or perform assigned work.

B.    Violation of safety rules.

C.    Testing positive for alcohol at a level between .02 and .039.

D.    Failure to report to work without proper notice to supervisor.

E.    Unauthorized use of County vehicles or equipment or unauthorized removal of such from an employee's work station.

F.    Use of sick leave for any purposes other than as outlined in Section 5.4.E.2.a.

G.    Threatening, or interfering with the work of fellow employees or supervisors.

H.    Acceptance of gifts or gratuities from any person, company, or corporation, or any other act that constitutes a conflict of interest as defined in the Comprehensive Conflict of Interest Act, Code of Virginia, 1950, as amended.

I.    Failure to report known work-related illegal activity of any employee.

J.    Unauthorized non-County employment or activity which interferes with the performance of an employee's assigned duties and responsibilities.

K.    Fighting on County property or during the working day.

L.    Failure of a public safety employee designated in Section 2.8.K. to refrain from the use of tobacco products on or off duty.

M.     Failure to report to the Director of Human Resource being charged with a felony or other criminal offense within one work day of the offense.

Appropriate disciplinary measure for Category 2 conduct occurring in any 12 month period:

First offense - suspension, reduction in grade, and/or demotion

Second offense - discharge

Category 3 Conduct

Category 3 Conduct includes inappropriate conduct unacceptable to the proper operation of the County.  Category 3 offenses include, but are not limited to:

A.     Use of alcohol or unlawful use or possession of controlled substances on County property during working hours.

B.     Testing positive for alcohol at a level of .04 or greater, or testing positive for drugs as defined in the County's Substance Abuse Policy, Chapter 3.

C.     Testing between .02 and .039 on an alcohol return-to-duty test, or on any subsequent alcohol follow-up testing.

D.     Failure to report to work without proper notice to supervision for three consecutive work days.

E.     Falsification of County records, including, but not limited to vouchers, time records, leave records, insurance claims, or the application for employment.

F.     Three or more garnishments involving more than one indebtedness during any 12-month period.

G.     Gambling on County property or during working hours.

H.     Theft or unauthorized removal of County property or employee property.

I.      Unauthorized possession of firearms or other weapons on County property or during working hours.

J.      Participation in any kind of work slowdown, sit down, or similar concerted interference with County operations.

K.     Unauthorized use of County documents, records, or confidential information.

L.      Job-related lying, stealing, or cheating.

M.      Any criminal conviction for an act occurring on or off the job which is related to job performance, or is of such a nature that to continue the employee in the assigned position could constitute negligence in regard to the County's duties to the public or other employees, or which adversely affects the reputation of the County, or is conduct unbecoming of an employee.

The appropriate disciplinary measure for any Category 3 Conduct is discharge.

Chapter7

THIS PAGE INTENTIONALLY LEFT BLANK

# CHAPTER 8

## Grievance Procedure

Section 8.1      Policy

Section 8.2      Legal Basis

Section 8.3      Definitions

Section 8.4      Time Periods

Section 8.5      Compliance with Procedural Requirements

Section 8.6      Eligibility to Use the Procedure

Section 8.7      Grievability

Section 8.8      Decisions Regarding Grievability

Section 8.9      First Step:  Immediate Supervisor Level

Section 8.10    Second Step:  Department Director Level

Section 8.11    Third Step:  County Administrator Level

Section 8.12    Fourth Step:  The Grievance Panel Hearing

Section 8.13    Composition of the Grievance Panel

Section 8.14    Rules for Grievance Panel Hearing

Section 8.15    Decision of Grievance Panel

Section 8.16    Implementation of Remedy

Section 8.17    Human Resource Department Responsibilities

Section 8.18    Consolidation of Grievances

Section 8.19 Voluntary Termination of Grievance

CHAPTER 8

GRIEVANCE PROCEDURE

Section 8.1    Policy

To support our value of "Communicating openly and constructively and working in a collaborative manner," James City County provides a process to afford an immediate and impartial method for the resolution of disputes that may arise between the County government and employees.

Section 8.2    Legal Basis

James City County hereby provides this Grievance Procedure for all eligible employees in accordance with §15.2-1506 et seq. of the Code of Virginia.

Sworn Police personnel also have access to the Law Enforcement Officers' Procedural Guarantee Act, in accordance with the Code of Virginia, Chapter 5, Title 9.1 (§ 9.1-500 et. eq.).

Section 8.3    Definitions

The following definitions shall apply to this Chapter:

A.    County Administrator - shall be either the County Administrator or his designee.

B.    Human Resource Director - shall be either the Human Resource Director or her designee.

C.    Department Director - shall also include the General Registrar, County Treasurer, Commissioner of the Revenue, Library Director, and Executive Director, Williamsburg Area Medical Assistance Corporation.

D.    Grievant - shall be any employee eligible to use this procedure having a grievance, as defined in Section 8.7 (A).

E.    Management - shall be the Board of Supervisors and its designees who establish policy for James City County.

F.    Days - shall be defined as calendar days, including weekends and holidays.

G.    Workdays - shall be defined as Monday through Friday, excluding weekends and legal holidays, as defined in §2.2-3300 of the Code of Virginia.

Section 8.4     Time Periods

    A.    Computation of Time - For the purpose of the Grievance Procedure, the time period for any action or report shall begin on the day following that on which the action is to be taken or report rendered.

        If the time period ends on a weekend or holiday, the last day of the time period shall be the first working day following the weekend or holiday.

        In all instances, the deadline for any action or report is 5:00 p.m. on the last day of the time period.

    B.    Failure to Comply with Time Limits - Time limits established under this procedure are intended to be strictly construed and enforced to ensure a timely resolution to the grievance.  Failure by either party to comply with the time limits may result in a decision in favor of the other party in accordance with Section 8.5 below.

    C.    Time Limit Extensions - Any time limits may be extended if both parties agree to such extensions in writing.

Section 8.5     Compliance with Procedural Requirements

    A.    Effect of Noncompliance - Failure of either party to comply with all substantial procedural requirements of the Grievance Procedure, including the time limits imposed by this Procedure, without just cause, shall result in a decision in favor of the other party on any grievable issue, provided the party not in compliance fails to correct the noncompliance within five (5) workdays of receipt of written notification of the compliance violation.

    B.    Notification of Noncompliance - Written notification by the Grievant shall be made to the Human Resource Department.  The Human Resource Department shall be responsible for providing written notification to the appropriate party.

        If the Grievant is not in compliance, the immediate supervisor, Department Director, or County Administrator shall notify the Human Resource Department.  The Human Resource Department shall be responsible for providing written notification to the Grievant.

    C.    Determinations of Noncompliance - The County Administrator shall determine compliance issues.  The County Administrator may require a clear written explanation of the basis for just cause extensions or exceptions.

Compliance determinations made by the County Administrator shall be subject to judicial review by filing a petition with the Circuit Court within thirty days of the compliance determination.

Section 8.6    Eligibility to Use the Procedure

A.    Eligible - The Grievance Procedure shall apply to all employees in regular and limited-term positions who have successfully completed their introductory periods in the following:

    1.    James City County, James City Service Authority, Williamsburg Area Transport, Williamsburg Regional Library, and Williamsburg Area Medical Assistance Corporation;

    2.    Department of Social Services of James City County, in accordance with Section 15.2-1507(A)(4) of the Code of Virginia;

    3.    Office of the General Registrar of James City County;

    4.    Office of the Commissioner of the Revenue; and

    5.    Office of the Treasurer

B.    Ineligible - The Grievance Procedure shall not apply to the following:

    1.    Appointees of elected groups or individuals;

    2.    Officials and employees who by charter or other law serve at the will or pleasure of an appointing authority;

    3.    Deputies and executive assistants to the chief administrative officer of James City County;

    4.    Agency heads or chief executive officers of James City County defined as department managers reporting directly to the County Administrator;

    5.    Employees whose terms of employment are limited by law;

    6.    Employees in temporary or on-call positions, or employees in their introductory period; and

    7.    Law-enforcement officers as defined in Chapter 5 (§9.1-500 et seq.) of Title 9.1 of the Code of Virginia whose grievance is subject to the provisions of Chapter 10.1 of the Code of Virginia and who have elected to proceed pursuant to those provisions in the resolution of their grievance, or any other employee electing to

proceed pursuant to any other existing procedure in the resolution of his grievance.

C.    <u>Inclusion of Excepted Categories</u> - The Board of Supervisors may include employees in any of the excepted categories, found in Section 8.6(B), within the coverage of this Grievance Procedure.

D.    <u>Officers and Employees Excluded from Procedure</u> - The County Administrator shall determine the officers and employees excluded from the Grievance Procedure, pursuant to Subsection (B), and shall be responsible for maintaining an up-to-date list of the affected positions. Accordingly, the County Administrator has determined that the following officers and employees are excluded from the Grievance Procedure:

1. Assistant County Administrator
2. Circuit Court Judge
3. Clerk of Circuit Court and employees of that office
4. Commissioner of Revenue
5. Commonwealth Attorney and employees of that office
6. Community Services Director
7. County Administrator
8. County Attorney
9. Court Appointed Special Advocate (CASA) Program employees
10. Development Director
11. Financial and Management Services Director
12. Fire Chief
13. Fire Marshal
14. General Registrar
15. Human Resource Director
16. James City Service Authority General Manager
17. Library Director
18. Merrimac Juvenile Detention Center Director and employees
19. Executive Director, Williamsburg Area Medical Assistance Corporation
20. Police Chief
21. Sheriff and employees of that office
22. Treasurer
23. Victim-Witness Assistance Program employees
24. Virginia Peninsula Regional Jail Director and employees

<u>Section 8.7</u>    <u>Grievability</u>

A.    <u>Issues that are Grievable</u> - A grievance shall be a complaint or dispute by an eligible employee relating to her employment, including, but not limited to, the following:

1.      Disciplinary actions, including dismissals resulting from formal discipline or unsatisfactory job performance, demotions, and suspensions;

2.      The application of personnel policies, procedures, rules and regulations, including the application of policies involving matters referred to in Section 8.7 (B)(3) below;

3.      Discrimination on the basis of race, color, creed, religion, political affiliation, age, disability, national origin, sex or sexual orientation;

4.      Acts of retaliation as the result of the use of or participation in the grievance procedure or because the employee has complied with any law of the United States or of the Commonwealth, has reported any violation of such law to a governmental authority, has sought any change in law before the Congress of the United States or the General Assembly, or has reported an incidence of fraud, abuse, or gross mismanagement.  For the purpose of this subsection, there shall be a rebuttable presumption that increasing the penalty that is the subject of the grievance at any level of the grievance shall be an act of retaliation; and,

5.      Any additional complaint or dispute by an employee relating to his employment not specifically excluded in Section 8.7 (B) below.

B.     <u>Issues That are Not Grievable</u> - In accordance with §15.2-1507 of the Code of Virginia, local governments retain the exclusive right to manage the affairs and operations of government.  Accordingly, the following issues are deemed nongrievable:

1.      The establishment and revision of wages or salaries including performance evaluations and/or accompanying pay raises, position classifications or general benefits;

2.      Work activity accepted by the employee as a condition of employment or work activity which may reasonably be expected to be a part of the job content;

3.      The contents of ordinances, statutes or established personnel policies, procedures, rules and regulations;

4.      The failure to promote, except where an employee can show established promotional policies or procedures were not followed or fairly applied;

5.      The methods, means and personnel by which work activities are to be carried on;

6.      Termination, layoff, demotion or suspension from duties because of lack of work, reduction in work force, or job abolition except when such action affects an employee who has been reinstated within the previous six months as the result of the final determination of a grievance.

In any grievance brought under the exception to this subsection, the action shall be upheld upon a showing by the County that there was a valid business reason for the action and the employee was notified of such reason in writing prior to the effective date of the action;

7.      The hiring, promotion, transfer, assignment and retention of employees within the County service; and

8.      The relief of employees from duties of the County in emergencies.

Section 8.8      Decisions Regarding Grievability and Employee Eligibility

A.      Who May Raise Issue of Grievability - The Grievant or his Department Director may raise the issue of grievability or employee eligibility.

B.      Deadline for Raising Issue of Grievability - The issues of grievability and employee eligibility may be raised at any time prior to the Panel Hearing described in Section 8.12 below.  Parties are encouraged to raise the issues of grievability and employee eligibility as soon as practicable.

Once raised, the issue shall be resolved before further processing of the grievance.  A request that grievability be determined shall suspend the time limits under this procedure.  Time limits shall begin to run again the day after the decision on grievability is made by the County Administrator or the Circuit Court.

C.      Procedure for Raising Issue of Grievability - Pursuant to §15.2-1507 (A)(9) of the Code of Virginia, decisions regarding grievability and employee eligibility shall be made by the County Administrator in accordance with the following procedure:

1.      The Grievant or his/her Department Director shall raise the issue of grievability or employee eligibility by filing Grievance Form B with the County Administrator.  The party filing Grievance Form B shall also provide copies to the other party and the Human Resource Department.

2.      The other party has, within five (5) days of receipt of Grievance Form B, the option to file a written response with the County

Administrator. The other party shall provide copies of the response to all filing parties and the Human Resource Department.

3.  The County Administrator shall render his/her decision on Grievance Form B within five (5) days of receipt of the written response, or within ten (10) days of the initial request if no response is filed.  The County Administrator shall provide copies of his decision to all parties and the Human Resource Department.

D.  <u>Appealing Decision of County Administrator</u> - Decisions by the County Administrator that an issue is not grievable or that an employee is not eligible to file a grievance may be appealed by the Grievant to the Circuit Court of James City County for a hearing on the issue as provided in §15.2-1507(A)(9) of the Code of Virginia:

1.  Proceedings for review of the decision of the County Administrator shall begin by the Grievant submitting written notification of intent to appeal on Grievance Form B to the County Administrator within ten (10) days from the date of receipt of his decision.  The Grievant shall also provide a copy of Grievance Form B to the Human Resource Department.

2.  Within ten (10) days after receiving Grievance Form B, the County Administrator shall transmit the following to the Clerk of Circuit Court of James City County:  a) a copy of his decision; b) a copy of the written notification to appeal; and c) any exhibits the County Administrator used to make the decision.   The County Administrator shall provide to the Grievant a list of the exhibits furnished to the Court.

3.  The failure of the County Administrator to transmit the record within the allowed time period shall not prejudice the rights of the Grievant.

4.  If the County Administrator fails to transmit the record within the time allowed, the Circuit Court, on motion of the Grievant, may issue a Writ of Certiorari requiring the County Administrator to transmit the record on or before a certain date.

5.  Within thirty (30) days of receipt by the Clerk of Court, the Court, sitting without a jury, shall hear the appeal on the record and such additional evidence as may be necessary to resolve any controversy as to the correctness of the record.  The Court, in its discretion, may receive such other evidence as the ends of justice may require.   The Court may affirm, reverse or modify the decision of the County Administrator.  The decision of the Court shall be rendered no later than the fifteenth (15th) day from the

date of conclusion of the hearing. The decision of the Court is final and is not appealable.

E.    <u>Resolution of Nongrievable Complaints</u> - The classification of a complaint as nongrievable by either the County Administrator or the Circuit Court of James City County shall not be construed to restrict any employee's right to seek, or management's right to provide, customary administrative review of complaints outside of the scope of the Grievance Procedure.

<u>Section 8.9</u>    <u>First Step:  Immediate Supervisor Level</u>

A.    <u>Informal Process</u>

1.    <u>Time Limit for Notifying Immediate Supervisor of Grievance</u> - No later than twenty (20) days after the occurrence or condition giving rise to the grievance, the employee shall identify the grievance verbally to his/her immediate supervisor.

The failure of the employee to identify the grievance within the time specified above shall constitute a forfeiture and a waiver of any rights to proceed further and shall terminate the grievance.

2.    <u>Immediate Supervisor's Response</u> - The Grievant's immediate supervisor shall provide a verbal response within seven (7) days of the Grievant's notification.

3.    <u>Resolution</u> - If the parties reach a mutually acceptable resolution to the grievance, the grievance is terminated and no further steps are necessary.

If the Grievant is not satisfied with his/her immediate supervisor's response, the Grievant may proceed with filing a written grievance, as described below.

B.    <u>Filing Written Grievance</u>

If the parties do not reach a satisfactory resolution through the informal process, the Grievant shall notify the Human Resource Department of the intent to file a written grievance and complete a copy of Grievance Form A.

1.    <u>Time Limit for Filing Written Grievance</u> - The Grievant shall deliver a copy of the written grievance to his/her immediate supervisor within seven (7) days of the immediate supervisor's verbal response described above.  The Grievant shall also provide the Human Resource Department with a copy of the written grievance.

2. <u>Content of Written Grievance</u> - The Grievant shall identify, in detail, the nature of the grievance, including all facts giving rise to the grievance and the expected remedy.

Grievants shall be entitled, should they prevail in their grievance, only to the relief specifically requested. Relief requested may include reversal of action taken by the County, such as, but not limited to, reinstatement to a former position; back pay; a lesser disciplinary action, or removal of information contained in the Grievant's personnel files or other files maintained by the County.

3. <u>Immediate Supervisor's Response to Written Grievance</u> - The Grievant's immediate supervisor shall provide a written response to the Grievant within seven (7) days of the supervisor receiving the written grievance. The supervisor shall also provide a copy of the response to the Human Resource Department.

4. <u>Resolution</u> - If the parties reach a mutually acceptable resolution to the grievance at this stage, the parties shall so indicate on Grievance Form A, and shall provide a copy to the Human Resource Department.

If the Grievant is not satisfied with the immediate supervisor's response, the Grievant may proceed to the Second Step – Department Director level, described in Section 8-10 below.

If the Grievant's immediate supervisor is the Department Director, the Grievant shall skip the Second Step of the Grievance Procedure and go directly to the Third Step – County Administrator level, described in Section 8.11 below. If the Grievant's immediate supervisor is the County Administrator, the Grievant shall proceed directly to the Fourth Step – Grievance Panel level, described in Section 8.12 below.

<u>Section 8.10</u>   <u>Second Step:  Department Director Level</u>

If the parties do not reach a satisfactory resolution of the grievance at the First Step above, the Grievant shall so indicate on Grievance Form A and notify the Human Resource Department.

A. <u>Time Limit for Proceeding with Grievance</u> - The Grievant shall submit Grievance Form A, including the immediate supervisor's response, to the Department Director within seven (7) days of receipt of the immediate supervisor's written response.

Revised 1/14/2014

    B.    <u>Meeting with Department Director</u> - Within seven (7) days of receipt of the written grievance, the Department Director shall schedule and hold a meeting with the Grievant to review the Grievance.  The Department Director shall notify the Human Resource Department of the time and place of the scheduled meeting.

        The only persons who may be present at this meeting are the Department Director, the Grievant, and appropriate witnesses for each side.  Witnesses shall be present only when actually providing testimony.

        The parties may adjourn the meeting to another time or place by mutual agreement.  The parties shall notify the Human Resource Department of the new dates and places for the meeting.

    C.    <u>Department Director's Response to the Grievance</u> - The Department Director shall provide a written response to the Grievance within seven (7) days after the conclusion of the meeting.  The Department Director shall provide a copy of the written response to the Grievant and to the Human Resource Department.

    D.    <u>Resolution</u> - If the parties reach a mutually acceptable resolution to the grievance at this stage, the parties shall so indicate on Grievance Form A, and shall provide a copy to the Human Resource Department.

        If the Grievant is not satisfied with the immediate supervisor's response, the Grievant may proceed to the Third Step – County Administrator Level.

<u>Section 8.11</u>    <u>Third Step:  County Administrator Level</u>

    If the parties do not reach a satisfactory resolution of the grievance at the previous step, the Grievant shall so indicate on Grievance Form A and notify the Human Resource Department.

    A.    <u>Time Limit for Proceeding with Grievance</u> - The Grievant shall provide a copy of Grievance Form A, including the responses from all previous steps, to the County Administrator within seven (7) days of receipt of the response.

    B.    <u>Meeting with County Administrator</u> - Within seven (7) days of receipt of the written Grievance, the County Administrator shall schedule and hold a meeting with the Grievant to review the grievance.  The County Administrator shall notify the Human Resource Department of the time and place of the scheduled meeting.

        At this meeting, the County Administrator, Grievant, and appropriate witnesses for each side may be present.  Witnesses shall be present only when actually providing testimony.

The Grievant, at his/her option, may have a representative, including legal counsel, present at the meeting.  The Grievant shall bear any cost involved in employing representation and in preparing the case.  The person representing the Grievant shall not serve as both a witness and a representative.

If the Grievant is represented by legal counsel, the County likewise has the option of being represented by counsel.  The Grievant shall notify the County Administrator and the Human Resource Department at least five (5) days prior to the meeting if the Grievant will have legal counsel present at the meeting.

The parties may adjourn the meeting to another time or place by mutual agreement.  The parties shall notify the Human Resource Department of the new dates and places for the meeting.

C.      <u>County Administrator's Response to the Grievance</u> - The County Administrator shall provide a written response to the grievance within seven (7) days after the conclusion of the meeting.  The County Administrator shall provide a copy of the written response to the Grievant and to the Human Resource Department.

D.      <u>Resolution</u> - If the parties reach a mutually acceptable resolution to the grievance at this stage, the parties shall so indicate on Grievance Form A, and shall provide a copy to the Human Resource Department.

If the Grievant is not satisfied with the immediate supervisor's response, the Grievant may proceed to the Fourth Step – Grievance Panel Hearing.

<u>Section 8.12</u>      <u>Fourth Step:  The Grievance Panel Hearing</u>

If a satisfactory resolution to the Grievance is not reached at the Third Step, the Grievant shall notify the Human Resource Department and so indicate on Grievance Form A, and request a hearing before a Grievance Panel (Panel).

A.      <u>Time Limit for Proceeding with Grievance</u> - The Grievant shall submit the request for a hearing to the Human Resource Department within seven (7) days of receipt of the County Administrator's response to the grievance.

B.      <u>Selection of Panel Members</u> - A new impartial Grievance Panel shall be created for each grievance.  The Human Resource Director shall coordinate the Panel selection in accordance with the procedures set forth in Section 8.13, below.

If the Human Resource Director is a party to the grievance, the Grievant shall submit the request form to the County Administrator and the County Administrator shall make the necessary arrangements.

Section 8.13    Composition of the Grievance Panel

A.    The Panel shall be composed of three (3) members who are County employees and who shall be chosen in the following manner:   One member shall be appointed by the Grievant, one member shall be appointed by the County Administrator, and the third member shall be selected by the first two members.  To ensure objectivity, the Panel shall not be composed of the following persons:

1.    The Grievant;
2.    The County Administrator;
3.    The Assistant County Administrator;
4.    The Grievant's Department Director
5.    The Grievant's immediate supervisor;
6.    Any person directly involved with the grievance being heard or the complaint or dispute giving rise to the grievance;
7.    Persons residing in the same household as the Grievant;
8.    The following relatives of anyone directly involved with the grievance or that person's spouse: spouse, parent, child, descendants of a child, sibling, niece, nephew, and first cousin;
9.    An attorney having direct involvement with the subject matter of the grievance or a partner, associate, employee, or co-employee of the attorney; and
10.    Directors who are in the direct line of supervision of the Grievant.

B.    Both the Grievant and the County Administrator shall make their appointments to the Panel on Grievance Form C.  These two members shall select the third member.  All appointments shall be made by notifying the Human Resource Director on Grievance Form C.  A complete panel shall be designated on Grievance Form C within ten (10) days of the request for a panel hearing.

C.    In the event the first two members cannot reach an agreement as to the third member within ten (10) days, as provided above, the Human Resource Director, after confirming such fact, shall immediately notify the County Attorney's Office.  The County Attorney shall request the Chief Judge of the Circuit Court to appoint the third member.

D.    The third member of the Panel shall serve as Chairperson.  The Chairperson shall set the time for the hearing and notify the Grievant, the County Administrator, and the Human Resource Manager.  The Grievant and the County Administrator shall be responsible for arranging the presence of their witnesses.  The hearing shall be held as soon as possible

after the date of the original request for a hearing, allowing sufficient time for access to records as specified in 8.14(B) below.  Either party may have an attorney or a representative of his choice present at this hearing.

Section 8.14   Rules for Grievance Panel Hearing

A.   The Panel is constituted solely for the purpose of determining whether a grievance filed by an employee is merited and what remedy, if any, should be provided.  The Panel may not formulate or change policy, rules or procedures.  The Panel shall determine whether the Grievant has demonstrated, by a preponderance of the evidence, that the action complained of was without cause, or done in violation of a law, regulation, procedure, or other policy.  It shall not otherwise substitute its judgment for that of management.

B.   The Human Resource Director shall provide the Panel with copies of the Grievance Forms, including any attachments, prior to the hearing, and provide the Grievant with a list of documents furnished to the Grievance Panel.

The Grievant and his/her attorney shall be allowed access to and copies of all  relevant files or materials intended to be used in the proceeding at least ten (10) days prior to the scheduled hearing.

C.   Documents, exhibits, and lists of witnesses are to be exchanged between the parties at least ten (10) days in advance of the hearing.

D.   The Panel shall conduct the hearing as follows:

1.   <u>Persons Who May Attend the Hearing</u> - The Grievant, and his/her attorney or representative and the County Administrator and his/her attorney or representative, may be present at the hearing.  The Grievant shall notify the County Administrator and the Human Resource Department if he/she intends to have an attorney present at the hearing at least ten (10) working days prior to the hearing.  Failure to provide this notice shall preclude the Grievant from having an attorney present at the hearing.

Additionally, the parties may call witnesses to testify on their behalf.  Such witnesses may only be present during their own testimony.

2.   <u>Issues Covered</u> - The issues presented to the Panel shall be limited to those issues arising out of the grievance and the expected remedy, as identified by the Grievant on Grievance Form A.

Unless the Grievant and the County Administrator shall agree, in writing, the Panel shall consider any Grievance without regard to any proposed disposition at any other steps in the Procedure.

The Panel may at any time ask the parties or their representatives for statements clarifying the issues involved in the grievance.

3.   Exhibits and Evidence - The Grievant or the County Administrator may introduce exhibits into evidence.  Such exhibits shall be marked and made a part of the record.

The Panel may, at its discretion, exclude any such exhibits or evidence if the party introducing the evidence did not disclose the evidence to the other party at least ten (10) days prior to the hearing.

4.   Procedure - The Grievant shall proceed first, and shall bear the ultimate burden of persuasion.  At the conclusion of the Grievant's evidence, the County Administrator shall have the opportunity to present his evidence.

The parties may offer evidence and cross examine witnesses and shall produce such additional evidence as the Panel may deem necessary to an understanding and determination of the dispute. There shall be no formal rules of evidence for the Panel; however, the Panel shall be the judge of the relevancy of any evidence offered.  All evidence shall be taken in the presence of the Panel and the parties, except by mutual consent of the parties.

At the conclusion of the County Administrator's presentation, the Chairperson shall specifically inquire of all parties whether they have any further proof to offer or witnesses to be heard.  If there is none, the Chairperson shall permit the parties to summarize their cases and shall then declare the hearing closed.

5.   Reopening Hearing - The hearing may be reopened by the Panel on its own motion or upon application of a party for good cause shown at any time before a final decision is made.

6.   Record Retention - Upon the request of the Panel, the County Administrator or the Grievant, the Human Resource Director shall ensure that a record of the hearing is made and retained for not less than 12 months.  The record may be in writing or by a taped recording.  The Grievant shall be entitled to a copy of such record and may be charged a reasonable fee, including the costs of labor, in providing the record.

7. <u>Policy Interpretation</u> - The Human Resource Director may be called upon by the Panel as a witness at any time to provide specific policy interpretation or clarification of applicable County policy and these procedures.

8. <u>Procedures Not Addressed</u> - In all matters not otherwise covered by this section, the Panel shall determine the procedures to be followed.

Section 8.15   Decision of Grievance Panel

A. <u>Written Decision by Board</u> - The Panel Chairperson shall deliver the decision of the Panel, in writing, on Grievance Form D to the Grievant, and the County Administrator, not later than fifteen (15) days after the completion of the hearing. The decision shall state in full the reasons for the decision, and the remedy to be granted. Decisions shall be by majority vote of the entire Panel. The decision of the Panel shall be final and binding and shall be consistent with law and written policy.

B. <u>Consistency with Written Policy</u> - The question of whether the decision of the Panel is consistent with written policy shall be determined by the Human Resource Department Director, unless he/she has a direct personal involvement with the event or events giving rise to the grievance, in which case the decision shall be made by the Commonwealth Attorney of James City County. The Commonwealth Attorney shall request the Grievance Panel to reconsider any decision which in his/her judgment is not consistent with the policies applicable to grievance resolution. He/she shall not disturb any decision consistent with the written policies.

C. <u>Remedy</u> - If the Panel determines that the Grievant prevails on any grievable complaint or dispute, it may remedy the complaint by awarding all or some of the relief that the Grievant has specifically requested. The Panel may not award relief beyond that requested by the Grievant, nor may it increase the severity of any action taken by the County.

If the Panel finds procedures governing promotion, demotion, transfer, hiring or layoff were not followed, it shall remand the grievance to that Department Director with the instruction that the action taken be rescinded, and proper procedures be followed.

Section 8.16   Implementation of Remedy

A. The County Administrator shall implement any remedy that may be ordered by the Grievance Panel, provided that such decision is consistent with law and written policies.

Revised 1/14/2014

B.    The Grievant or the County Administrator may petition the Circuit Court for an order to implement the decision of the Panel.

C.    The review of the Circuit Court shall be limited to the question of whether the Panel's decision was consistent with provisions of law and written policy.

D.    If the Circuit Court finds the Panel's decision was consistent, the County Administrator will implement the decision.

Section 8.17    Human Resource Department Responsibilities

The Human Resource Department shall serve as an impartial administrator of this process. The Human Resource Department shall: Open a file and assign a number to the grievance; ensure that all parties are aware of the process; monitor procedures and time frames; notify either party of noncompliance; be informed of the status of the grievance by both parties at each step; maintain appropriate documentation, and perform all other responsibilities as specified in the Procedure. In the event that the Grievant is an employee of the Human Resource Department, the Assistant County Administrator shall serve as the impartial administrator of the process.

Section 8.18    Consolidation of Grievances

If more than one grievance is filed arising from the same factual circumstances, the County Administrator may, at any time prior to a panel hearing, consolidate those grievances for joint processing unless one of the Grievants objects. If the grievances are consolidated, all time limits set forth in this Procedure shall thereafter be calculated from the date of the last filed Grievance. Once consolidated, the grievances shall all be processed as a single matter.

Section 8.19    Voluntary Termination of Grievance

A Grievant may voluntarily terminate the Grievance at any time by notifying the Human Resource Department. The Human Resource Department shall notify all parties to the Grievance.

The decision to voluntarily terminate a grievance shall be final and shall preclude the Grievant from filing a grievance arising under the same facts.

Effective 7/1/04
Chap8-proc.doc

## Grievance Log

Employee Name_____   Department_____

Grievance #_____ Date Incident Giving Rise to Grievance Occurs_____

| | Time Frame | Date Due | Date Accomplished |
|---|---|---|---|
| **FIRST STEP** | "Days" are calendar days | | |
| Verbally inform immediate supervisor | 20 days | | |
| Immediate supervisor verbal reply | 7 days | | |
| Grievance reduced to writing | 7 days | | |
| Immediate supervisor written response | 7 days | | |
| Implementation of remedy | ASAP | | |
| **SECOND STEP**-skip this step if immediate supervisor is department head | | | |
| Written grievance to department manager | 7 days | | |
| Meeting with department manager | 7 days | | |
| Department manager written response | 7 days | | |
| Implementation of remedy | ASAP | | |
| **THIRD STEP** | | | |
| Written grievance to County Administrator | 7 days | | |
| Meeting with County Administrator | 7 days | | |
| County Administrator written response | 7 days | | |
| Implementation of remedy | ASAP | | |
| **FOURTH STEP** | | | |
| Written request to HR Manager for Grievance Panel hearing | 7 days | | |
| Grievance panel members selected | 10 days from request for panel hearing | | |
| Date of panel hearing | ASAP | | |
| Panel written decision | 15 days after completion of hearing | | |
| Implementation of remedy | ASAP | | |

| | Time Frame | Due Date | Date Accomplished |
|---|---|---|---|
| **DETERMINATION of GRIEVABILITY and EMPLOYEE ELIGIBILITY** | | | |
| Written Request | Before Panel Hearing | | |
| Other Party's Response | 5 days | | |
| County Administrator's Response | 10 days from initial filing | | |
| Appeal Decision to Circuit Court | Within 10 days | | |
| Send to Clerk of Circuit Court | Within 10 days | | |
| Court Hearing | Within 30 days | | |
| Decision of Court | Within 15 days | | |

Grievance No. _____
(to be assigned by Human Resource Department)

## **GRIEVANCE FORM A**

Grievant Name: _____   Department: _____

Date the Event Giving Rise to the Grievance Occurred: _____

**FIRST STEP**

**Informal Process**

Date Grievance was Verbally Discussed with Immediate Supervisor: _____

**Written Grievance**

Describe the event that gave rise to this grievance and why you feel a different action should have been taken  (Use additional paper if necessary):

_____

Specific Remedy Requested (See Section 8.9B.2 of Grievance Procedure):
Describe what you would like the County to do to change the situation:

Grievant's Signature:_____   Date:_____

First Step Remedy (to be filled out by Supervisor):
☐ Proposed Remedy:

☐ Action Stands
_____

Supervisor's Signature: _____   Date: _____

☐ Acceptable  ☐ Not Acceptable    Grievant's Signature: _____   Date: _____
If acceptable, date remedy implemented: _____   HR Signature: _____   Date: _____

Revised 04-04

**SECOND STEP**

Date of Meeting with Department Director: _____

Second Step Remedy (to be filled out by Department Director):
☐ <u>Proposed Remedy</u>:

☐ <u>Action Stands</u>

_____

Department Director's Signature: _____ Date: _____

---

☐ Acceptable ☐ Not Acceptable  Grievant's Signature: _____ Date: _____

If acceptable, date remedy implemented: _____ HR Signature: _____ Date: _____

---

**THIRD STEP**

Date of Meeting with County Administrator: _____

Third Step Remedy (to be filled out by County Administrator):
☐ <u>Proposed Remedy</u>:

☐ <u>Action Stands</u>

_____

County Administrator's Signature: _____ Date: _____

---

☐ I DO ☐ DO NOT desire a hearing before a Grievance Panel.

Grievant's Signature: _____ Date: _____

If acceptable, date remedy implemented: _____ HR Signature: _____ Date: _____

Revised 04-04

**GRIEVANCE FORM B**

**DETERMINATION OF GRIEVABILITY**

| A. REQUEST FOR DETERMINATION OF GRIEVABILITY |
|---|

I request that the County Administrator review the grievability of Grievance No. _____ for the following reason(s):

Name: _____ Job Title: _____

Signature: _____ Date: _____

Written response of other party is ☐ Attached ☐ Waived

| B. COUNTY ADMINISTRATOR DETERMINATION |
|---|

☐ Grievable ☐ Not Grievable:

Reason (only if not grievable):

County Administrator: _____ Date: _____

| C. APPEAL |
|---|

☐ I DO NOT wish to appeal the decision on grievability.

☐ I DO wish to appeal.  Please transmit the necessary papers to the Circuit Court as required by the Grievance Procedure.

Grievant: _____ Date: _____

Revised 04-04

Grievance No.:_____

### GRIEVANCE FORM C

### APPOINTMENTS TO GRIEVANCE PANEL

<u>1st MEMBER</u> (Grievant appointee):

I hereby name _____ to be my appointed member to the Grievance Panel established to hear my grievance.

Appointee Work Phone Number: _____

Signed: _____          Date: _____
                    (Grievant)

<u>2nd MEMBER</u> (County Administrator appointee):

I hereby name _____ to be my appointed member to the Grievance Panel established to hear this grievance.

Appointee Work Phone Number: _____

Signed: _____          Date: _____
                    (Appointing Authority)

<u>3rd MEMBER</u> (Mutually agreed upon or chosen by Circuit Court pursuant to Section 8.13 of the Grievance Procedure):

_____ is hereby selected to serve as the third member to the Grievance Panel established to hear this grievance.

Appointee Work Phone Number: _____

Signed: _____          Date: _____
                    (Grievant's Appointee)

_____          Date: _____
        (County Administrator's Appointee)

Revised 04-04

Grievance No.:_____

## <u>GRIEVANCE FORM D</u>
## <u>DECISION OF GRIEVANCE PANEL</u>

Date(s) of Hearing: _____     Place(s) of Hearing: _____

_____     _____

_____     _____

Summary of Grievance:  (Use additional paper if necessary)

Reasons for Decision (state in full, including evidence and facts considered):

Remedy:

These members concur in the above-stated decision:

_____     _____     _____

Date: _____     Date: _____     Date: _____

This member dissents from the above-stated decision: _____     Date: _____

A dissenting member may file a written statement of the reasons for his or her dissent.

Decision and Remedy ☐ are ☐ are not consistent with written policy. _____ _____

HR Director                     Date

Remedy was implemented _____     _____

Date                                    HR Director

grievanceforms.doc

Revised 04-04

THIS PAGE INTENTIONALLY LEFT BLANK

## CHAPTER 9

## Records & Reports

Section 9.1     Personnel Transactions

Section 9.2     Attendance Reports

Section 9.3     Destruction of Records

Section 9.4     Public Inspection

Section 9.5     Employee Access

Revised 1/14/2014

CHAPTER 9

RECORDS AND REPORTS


Section 9.1     Personnel Transactions

All appointments, separations and other personnel transactions shall be made on forms designated by the County Administrator and maintained by the Human Resource Department.

Section 9.2     Attendance Reports

Regular attendance reports shall be prepared and submitted by each department and agency of the County government as required by the County Administrator.

Section 9.3     Destruction of Records

The retention and destruction of official records shall be governed by the Virginia State Library and Archives' Records Retention and Disposition Schedule in accordance with the Virginia Public Records Act and applicable Federal laws.  Records may be kept longer than the minimum required time at the discretion of the County Administrator.

Section 9.4     Public Inspection

The following information relative to employees and former employees shall be available for public inspection at reasonable times and in accordance with such procedures as the County Administrator may prescribe: name, class title and salary.  Examination records and performance rating reports shall be accessible only to the department head concerned, the Board, and the employee involved.  The Privacy Act shall govern all such public availability of employee records.  Other personnel information may be made available for official purposes at the discretion of the County Administrator.

Section 9.5     Employee Access

Each employee may review his or her employment file in Human Resources, subject only to time constraints within the Human Resource Department.  Documents, except those restricted by other policies or laws, may be reproduced at employee expense by the Human Resource Department staff.

Revised 1/14/2014

# CHAPTER 10

## DIVERSITY AND EQUAL OPPORTUNITY

Section 10.1    Philosophy

Section 10.2    Guiding Principles

Section 10.3    Legal Basis

Section 10.4    Employee Coverage

Section 10.5    Consequences

Section 10.6    Diversity

Section 10.7    Equal Opportunity/Affirmative Action

Section 10.8    Discriminatory Workplace Harassment

Section 10.9    AIDS Policy

Section 10.10  Resolving Complaints

Appendix A -  Diversity Strategic Plan

Appendix D – Equal Employment Opportunity Plan

**FORMS**

Appendix C -  Discriminatory Harassment Complaint Form

Revised 1/14/2014

<u>Chapter 10</u>

<u>Diversity and Equal Opportunity</u>

Section 10.1    <u>Philosophy</u>

James City County is committed to having a diverse work force; providing equal employment opportunity; ensuring nondiscrimination in all actions affecting County employees and applicants for employment; and prohibiting illegal harassment of County employees.

Section 10.2    <u>Guiding Principles</u>

A. Support the County's value of "Diversity, mutual respect, trust, honesty and personal responsibility."
B. Seek varied viewpoints in all the ways we provide service and conduct business.
C. Apply personnel policies and procedures without regard to race, color, religion, sex, national origin, age, disability, pregnancy, or sexual orientation.
D. Address complaints of discrimination or harassment immediately.

Section 10.3    <u>Legal Basis</u>

James City County is committed to ensuring that our Personnel Policies are in compliance with Title VII of the Civil Rights Act of 1964, as amended; the Equal Pay Act of 1963; the Age Discrimination in Employment Act of 1967, as amended; the Rehabilitation Act of 1973; the Americans with Disabilities Act of 1990; and the 14th Amendment of the U.S. Constitution.

Section 10.4    <u>Employee Coverage</u>

This Chapter applies to all employees of James City County, including but not limited to employees in full-time and part-time regular, limited term, temporary, and on-call positions and employees working under contract with the County.

Section 10.5    <u>Consequences</u>

All reports of discrimination or discriminatory harassment will be promptly, thoroughly, and fairly investigated. Violations of the policies in this Chapter will result in appropriate corrective or disciplinary action, up to and including, termination of employment.

Revised 1/14/2014

Section 10.6   <u>Diversity</u>

      A. <u>Policy</u> - James City County values diversity and is committed to creating a work environment: that fosters mutual respect and acceptance; where differences of all employees are recognized, understood and appreciated; and where all employees are encouraged to express and use their differences to bring increased value to the organization. James City County seeks to attract qualified persons of diverse backgrounds and to promote diversity at all levels within the organization.

      B. <u>Definition</u> - James City County values diversity, which is defined as all the ways we are different and similar that affect our interactions with each other. These ways include, but are not limited to, age, disability, education, ethnicity, gender, geographic culture, marital status, military experience, nationality, race, religion, or sexual orientation.

      C. <u>Value of Diversity</u> - A diverse workforce brings together a richer mix of viewpoints and experiences, leading to innovation, more effective results and better service to our citizens.

      D. <u>Diversity Strategic Plan (Appendix A)</u> - The Diversity Strategic Plan (DSP) identifies ways to achieve our commitment to valuing diversity. Human Resources reports accomplishments annually to the County Administrator.

Section 10.7   <u>Equal Opportunity/Affirmative Action</u>

      A.    <u>Policy</u> - James City County is an Equal Opportunity Employer. James City County shall provide equal employment opportunity to its employees and applicants for employment without regard to race, color, religion, sex, national origin, age, disability, pregnancy, sexual orientation or other non-job related factors, except where sex is a bona fide occupational qualification. This policy shall be followed in compensation, benefits, transfers, layoffs, return from layoff, County sponsored training, education, tuition assistance, social and recreation programs, or any other personnel action affecting its employees.

      B.    <u>Equal Opportunity/Affirmative Action Plan (Appendix B)</u> – The voluntary adoption of the Equal Opportunity/Affirmative Action Plan (EO/AA Plan) by the James City County Board of Supervisors reaffirms its commitment to nondiscrimination and equal employment in all actions affecting County employees. The goals, objectives and responsibilities contained in the Plan are

designed to assist the County and all of its employees in adhering to these principles and to overcome the effects of past or present practices, policies, or other barriers to equal employment opportunity. This Plan is not intended to create hiring or promotion quotas or preferences for unqualified individuals.

C.    Responsibility for Implementation of EO/AA Plan

**County Administrator**
1.  Support and endorse James City County's commitment to EO/AA.

2.  Delegate responsibilities as necessary to ensure successful implementation of this Plan.

3.  Require active and consistent participation of department directors and supervisors in implementing the Plan.

4.  Hold department directors accountable for their contributions to EO/AA.

5.  Review the Diversity Strategic Plan accomplishments annually.

**Human Resources Director**

1.  Serve as the Equal Opportunity Compliance Officer and the Affirmative Action Program Manager under the direction of the County Administrator.

2.  Assume responsibility for the design, implementation, communication and administration of the EO/AA Plan and delegate specific responsibilities as necessary to ensure successful implementation of the Plan.

3.  Ensure that personnel policies and procedures comply with and support the objectives of the Plan.

4.  Ensure that the policies and practices of the Human Resource Department comply with objectives of the Plan.

5.  Provide employees with assistance, training, information or other counseling matters concerning EO/AA.

6.  Annually review and update the Plan to ensure it is consistent with law and latest developments in EO/AA.

Revised 1/14/2014

7. Investigate complaints of discrimination by applicants and employees and maintain records of the complaints and their resolution.

8. Serve as liaison between James City County and enforcement agencies.

9. Serve as liaison between James City County and minority organizations, women's organizations and community action groups concerned with the employment opportunities of minorities and women.

10. Solicit suggestions from County employees on ways to further EO/AA.

11. Keep management informed of latest developments in the equal opportunity area.

**Department Directors and Supervisors**

1. Support and endorse James City County's commitment to EO/AA.

2. Select, hire, compensate, train, and evaluate employees; and, recommend for performance increases, promotions, transfers, demotions, leave without pay, disciplinary actions or termination, without regard to race, color, religion, sex, national origin, age, disability, pregnancy, or sexual orientation.

3. Take actions to ensure that a nondiscriminatory atmosphere exists in the workplace.

4. Monitor their department's progress in achieving EO/AA objectives.

5. Assist Human Resources in investigating and resolving complaints of discrimination in their departments.

**Employees**

1. Take personal responsibility to treat each other and our customers with respect and without regard to race, color, religion, sex, national origin, age, disability, pregnancy, or sexual orientation.

10-5

Section 10.8    Discriminatory Workplace Harassment

A.    Policy – James City County shall maintain a quality work environment free of unlawful and improper harassment and will take action to prevent such harassment from occurring.  Harassment of an employee, prospective employee, or any other individual, such as customers, volunteers, or vendors, on the basis of national origin, race, color, sex, religion, disability, age, sexual orientation or pregnancy will not be tolerated.

B.    Responsibility for Implementation
**Human Resource Department**
1.  Train employees to recognize and prevent discriminatory harassment in the workplace.

2.  Investigate and assist in the resolution of complaints of harassment by employees and maintain records of complaints and their resolution.

**Department Directors and Supervisors**
1.  Ensure that the work environment is free from all types of unlawful discriminatory harassment.

2.  Take prompt, appropriate action within their work units to resolve any complaint and to prevent the incidence of discriminatory harassment.

3.  Familiarize any employees under their direction with this policy.

**All Employees**
1.  Treat one another with courtesy and respect and without regard to national origin, race, color, sex, religion, disability, age, sexual orientation, or pregnancy.

2.  Read and be familiar with the Discriminatory Harassment Policy and understand that discriminatory harassment will not be tolerated.

3.  Report incidents of discriminatory harassment experienced or witnessed immediately to a supervisor, department director or the Human Resource Department.

4.  Cooperate with the Human Resource Department during investigations and verification of reports of harassment.

Revised 1/14/2014

C.  <u>General Definition</u> - Discriminatory Harassment is a form of discrimination that violates Title VII of the Civil Rights Act of 1964. Discriminatory harassment is unwelcome, offensive, abusive, or demeaning behavior made on the basis of national origin, race, color, sex, religion, disability, age, sexual orientation or pregnancy which unreasonably interferes with an individual's work performance or creates an offensive work environment.

In general, harassment includes, but is not limited to:

1.  <u>Verbal Harassment</u> - Epithets, derogatory comments or slurs on the basis of national origin, race, color, sex, religion, disability, age, sexual orientation or pregnancy.

2.  <u>Physical Harassment</u> - Assaulting, impeding or blocking movement, or any physical interference with normal work or movement when directed at an individual based on national origin, race, color, sex, religion, disability, age, sexual orientation or pregnancy.

3.  <u>Visual Forms of Harassment</u> - Derogatory posters, notices, bulletins, e-mails, cartoons, or drawings on the basis of national origin, race, color, sex, religion, disability, age, sexual orientation or pregnancy.

4.  <u>Sexual Harassment</u> - Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature, upon which an employment benefit is conditioned, which unreasonably interferes with an individual's work performance or which creates an offensive work environment.

B.  <u>Types of Discriminatory Harassment</u>

1.  <u>Sexual Harassment</u>
Sexual harassment occurs whenever unwelcome conduct of a sexual or gender-based nature affects a person's ability to perform work duties.  Sexual harassment can come from a person of either gender against a person of the opposite or same gender and from peers as well as supervisors.

Sexual advances, whether verbal or physical in nature, are unlawful and constitute sexual harassment when:

a.  submission to such advances is an explicit or implicit condition of employment;

10-7

b. submission to or rejection of such advances affects the job the employee holds; or

c. the conduct substantially interferes with the employee's work performance by creating an intimidating, hostile, or offensive work environment.

Under the law, two basic types of sexual harassment are found:

a. <u>Quid Pro Quo</u> - Quid pro quo means "this for that." This type of sexual harassment includes the threat or insinuation that lack of sexual submission will adversely affect an employee's employment, evaluation, wages, advancement, assigned duties or shifts, or other conditions which affect an employee's livelihood.  Quid Pro Quo can also take the form of sexual favoritism, which occurs when one employee's sexual involvement with the employer, a supervisor, or some other person with authority to make substantive employment decisions, influences employment decisions regarding benefits and/or promotions to the detriment of other employees.

Examples of this type of harassment include, but are not limited to:

(1)   Pressure, either direct or subtle, for sexual activity by a supervisor or coworker;

(2)   Requesting sexual favors, accompanied by implied or overt threats or promise of preferential treatment, with regard to an individual's employment status or benefits;

(3)   Granting job favors to those who participate in consensual sexual activity and penalizing those who refuse to participate; and,

(4)   Unwanted, intentional touching (i.e., patting, massaging, rubbing, hugging, or pinching).

b. <u>Hostile Environment</u> - This type of harassment occurs when conduct of a sexual or gender-based nature interferes with an individual's work performance or creates an intimidating, abusive, or offensive work environment.

Examples of behavior that may create a hostile work environment include but are not limited to:

10-8

(1)    Verbal harassment, insults, ridicule, acts of intimidation, aggression, or abuse, based on gender;

(2)    Unwanted, intentional touching (i.e., patting, massaging, rubbing, hugging, or pinching);

(3)    Sexual or suggestive remarks about a person's weight, body, clothing, make-up, or hairstyle;

(4)    Demeaning or inappropriate sex-based terms, including intimate or offensive nicknames;

(5)    Excluding workers of one gender by those of the other from activities or assignments during work hours;

(6)    Displaying sexually suggestive calendars, pinups, graffiti, pictures, or jokes;

(7)    Using inappropriate gestures or profanity of a sexual nature;

(8)    Telling sexual jokes or making sexual remarks, including sexual innuendo or comments with a double meaning;

(9)    Unwelcome pressure to date or engage in sexual activities;

(10)    Encouraging other employees to make inappropriate jokes, comments, or advances;

(11)    Commenting to a group or teasing an individual about issues of a sexual nature;

(12)    Making facial expressions such as throwing kisses, licking lips or whistling at another in a sexually suggestive manner;

(13)    Asking intimate or sexually probing questions;

(14)    Boasting of sexual experiences or discussing sexual activities; or,

(15)    Giving sexually explicit notes or pictures or sexually offensive items to another person.

2.   <u>Other Forms of Discriminatory Harassment</u>

Behavior directed at an individual's national origin, race, color, religion, disability, age, sexual orientation or pregnancy may constitute harassment when it:

a.    has the purpose or effect of creating an intimidating, hostile, or offensive working environment;

b.    has the purpose or effect of unreasonably interfering with an individual's work performance; or,

10-9

      c.    otherwise adversely affects an individual's employment opportunities.

Examples of such behavior may include, but are not limited to, the same examples described above in Section 10.8, B.1.b, when based on national origin, race, color, religion, disability, age, sexual orientation or pregnancy.

Section 10.9.  <u>AIDS Policy</u>

A.    <u>Policy</u> - James City County shall provide a safe environment for its employees, citizens, and the visiting public; a work environment free from discrimination and harassment for individuals with AIDS-related conditions; and, protect individual rights by ensuring confidentiality and human dignity.

B.    <u>Definitions</u>

    1.    AIDS-related condition – a collective reference for Acquired Immune Deficiency Syndrome, (AIDS), Aids Related Complex (ARC), and Human Immunodeficiency Virus (HIV).

C.    <u>Guidelines</u>

    1.    The County shall treat employees who have AIDS-related conditions in the same manner as those having other life-threatening illnesses that are not normally transmitted by casual contact in ordinary occupational settings. As long as such employees are medically and physically able to perform their jobs and do not pose a danger to their own health and safety or the health and safety of others in the workplace, they shall be permitted to remain in the same job classification and work location, unless a transfer, promotion, or demotion is otherwise required for reasons not associated with an AIDS-related condition. The County Administrator shall determine, based on medical findings and job duties, when a transfer or demotion associated with an AIDS -related condition is necessary.

    2.    Employees diagnosed as having an AIDS-related condition shall retain health and other benefits while they are employed. Terminating employees diagnosed as having an AIDS-related condition shall have the same rights to continuation of coverage as other employees.

Revised 1/14/2014

3.   AIDS-related conditions shall be treated as all other infectious diseases in accordance with Blood Borne Pathogens Exposure Control Procedures, Chapter 11, Safety Program, of this Manual.

Section 10.10   <u>Resolving Complaints</u>

A.   <u>Complaints of Discrimination</u> - Employees and applicants who feel they have been discriminated against in violation of the Equal Opportunity/Affirmative Action Plan or Federal Law may contact the Human Resource Department for assistance in resolving the complaint.   In addition, employees in regular and limited-term positions who have completed their introductory period have recourse through the established Grievance Procedure (Chapter 10 of the <u>Personnel Policies and Procedures Manual</u>.)

B.   <u>Complaints of Discriminatory Harassment</u> - When an incident of perceived harassment occurs, the employee is encouraged to make it clear to the offender, at the time of the occurrence, that the behavior is offensive and request that it stop.   If the employee is not comfortable doing so, is unsatisfied with the outcome of this encounter, or if the harassment continues, the employee shall submit a formal complaint.   The employee is <u>not required</u> to attempt to resolve the situation informally.

1.   <u>Formal Complaint</u>
The employee (the Complainant) will report an incident of alleged discriminatory harassment by completing the Discriminatory Harassment Complaint Form and submitting it to the Human Resource Department as soon as possible after the event giving rise to the complaint, but within 300 days, which is consistent with the Equal Employment Opportunity Commission's timeframe for filing a complaint. Failure to do so without good cause will waive the opportunity to pursue the complaint procedures set forth in this policy.

If the alleged harasser is a member of the Human Resource Department, the Discriminatory Harassment Complaint Form shall be submitted to the Assistant County Administrator, who will conduct the investigation.

2.   <u>Investigating a Complaint</u>
Upon receipt of the completed Discriminatory Harassment Complaint Form, the Human Resource Department will promptly begin an investigation by:

(a)   Interviewing the Complainant to ensure understanding of the complaint and to obtain all necessary information.

(b)   Contacting the alleged harasser (Respondent) to inform him/her of the basis of the complaint and arranging a time to meet and respond to the allegations.  The Respondent will respond to the complaint in writing.

(c)   Interviewing individuals whom the parties have identified as having pertinent information.

(d)   Reviewing all relevant documents either provided or identified by the parties and any other documents deemed to be relevant to investigation.

3.   <u>Completion of Investigation and Findings</u>
Human Resources, in conjunction with the County Attorney, shall prepare a report of the investigation, findings, and determination of whether discriminatory harassment has occurred.  The report shall be completed within 30 days of receipt of the complaint.

4.   <u>Determination - Harassment Occurred</u>
If it is determined that harassment on the alleged basis has occurred, the findings will be reported to the Department Director of the Respondent, who will recommend disciplinary action up to and including termination.   Recommended disciplinary action will be determined by the severity and/or frequency of the offense and will be consistent with County policy.

The Human Resource Director will inform the Complainant and the Complainant's Department Director of the findings and will advise what corrective action is being taken.

5.   <u>Determination - No Harassment Occurred</u>
If it is determined that no harassment, as defined, occurred, Human Resources will notify the appropriate parties involved of the findings in writing.   Human Resources and department directors will consider whether other action, such as mediation, or intervention by the Employee Assistance Program, is warranted.

6.   <u>Confidentiality</u> - A complaint of discriminatory harassment, its investigation, the outcome of the investigation, and any action(s) taken relating to a specific employee or employees shall be kept confidential to the extent possible.  Dissemination of information will be limited to persons with a need to know to conduct an

investigation or to implement disciplinary or corrective action and the Complainant.

7.  <u>Anti-Retaliation and False Allegations</u> - No person, division, or department may take disciplinary action against, or in any other manner discriminate or retaliate against, or deny any person a benefit to which that person is entitled because such person has filed a complaint or instituted any proceeding under or related to this policy, has testified or is about to testify in any such proceeding or investigation, or has provided information or assisted in an investigation, unless any of these are done in bad faith and with malicious intent.

8.  <u>General Procedures</u>

    (a)  Definition of "Days" - For purposes of this procedure, "days" shall be defined as calendar days and time periods shall begin on the day following that on which any action is to be taken or report made, and run without regard to weekends or holidays.  If a time period ends on a weekend or holiday, the last day of the time period shall be the end of the business day of the first working day following the weekend or holiday.

    (b)  Time Limit Extension - Time limits established under this procedure are intended to be strictly construed and enforced.  However, in the interest of fairness, any time limits may be extended if both parties agree to such extensions in writing.

Revised 1/14/2014

THIS PAGE INTENTIONALLY LEFT BLANK

CHAPTER 11

SAFETY POLICY

Section 11.1        Purpose

The safety initiative within James City County incorporates the County values
of integrity, collaboration, excellence and stewardship. The County recognizes
that workplace violence and aggression is a national problem which conflicts
with our value of mutual respect, trust, honesty and personal responsibility.
The purpose of the Safety Policy is to provide an environment in which
employees can complete their assigned tasks with little or no risk to personal
injury, illness, aggression or vehicle accident, and in which our customers can
transact business with the County and participate in County-sponsored
programs without sustaining injury.  The Safety Policy is based on a sincere
concern for the welfare and safety of our employees and our customers, as
well as on the belief that safety is an essential element of an effective and
efficient organization.  As such, safety is a basic requirement of everyone's
job.

Section 11.2        Objectives

Objectives of the County Safety Policy include the following:

1.  Ensure that all employees have the necessary knowledge and receive the
    proper training to perform their jobs in safe and efficient manner.

2.  Identify and remove or mitigate environmental hazards and sources of
    aggression.

3.  Provide a structure for all divisions/departments in the County to be in
    compliance with Federal and State Occupational Safety & Health
    Standards and Regulations.

4.  Reduce lost time work injuries to zero.

Section 11.3        Employee Coverage

The County Safety Policy applies to all employees within the County
including workers under the direct supervision of County personnel.

Section 11.4.       Responsibilities

All County employees shall be fully responsible for following the provisions
of this policy. The responsibilities listed below are a MINIMUM, and they
shall in no way be construed to limit individual initiative to take additional
action to reduce losses due to personal injury or vehicle accident.

11-1

1.  All Employees

    Employees are required, as a condition of employment, to exercise due care in the course of their work to prevent injuries to themselves, their fellow workers and the general public.  All employees shall:

    a.  Become trained in and comply with all specialized safety rules and procedures required of the department/division for which he/she works.

    b.  Operate only machines and equipment that they have been trained and authorized to operate by their supervisor.

    c.  Obey all published safety rules.

    d.  Not bring any weapon (firearm, knives, clubs, stun guns, other object designed to inflict harm) on County property, building, or automobile; except that, an employee of the County may store at the County's workplace a lawfully possessed firearm and ammunition in a locked, private motor vehicle.

    e.  Not threaten or inflict harm against any individual or property.

    f.  Take an active part in the safety effort.

    g.  Report all unsafe conditions to their supervisor.

    h.  Report all accidents immediately to their supervisor.

2.  Financial & Management Services/Risk Manager

    The Risk Manager shall be fully responsible for the direction and administration of the Safety Policy and shall take all actions deemed necessary to affect a reduction in accidents and their causes.  The Risk Manager shall:

    a.  Determine the safety procedures required by each department.

    b.  Assist departments with the setting of safety goals and objectives.

    c.  Assist departments with the establishment and maintenance of required safety procedures.

    d.  Maintain an inventory of training materials and topics for safety training.

e.  Maintain complete records and provide reports on County accidents in accordance with OSHA requirements.

f.  Provide reports to Department Directors and Department Safety Representatives on County accidents.

g.  Provide technical support to Department Safety Committees.

h.  Administer the County Workers' Compensation Program.

3.  Department/Division Directors

(In some Departments, Division and Division Directors will have the same responsibilities as Departments due to their autonomy or unique operations and size.  The Risk Manager will determine if separate responsibilities are warranted.)

Department Directors are responsible for maintaining safe working conditions within their departments.  All Department Directors shall:

a.  Establish and maintain department safety programs and procedures as identified by the Risk Manager.

b.  Set safety goals including OSHA Total Recordable Incident Rate, Lost Time Incident Rate, and Vehicle Accident Rate and establish them as performance indicators for the department.

c.  Designate a department safety representative(s) and establish and support a department safety committee as needed.

d.  Ensure that all employees in their department comply with the policies and procedures set forth herein.

e.  Devote a portion of staff meetings, as necessary, to the review of safety efforts, procedures and past losses.

4.  Department Safety Representatives

The department safety representative is responsible for the coordination of the safety rules and procedures within the department and among departments within the County.  All department safety representatives will:

a.  Oversee the implementation and maintenance of safety procedures within the department.

b. Review and ensure investigation of all department accidents; and make recommendations for preventing reoccurrence.

c. Serve as a safety resource to the department employees.

d. Participate in the Department Safety Committee.

5. Supervisors

Supervisors are responsible for ensuring that their employees work and operate machines and equipment in a safe manner.  All supervisors shall:

a. Ensure that each employee is fully trained to safely perform the job her or she is assigned to do.

b. Ensure that each employee in familiar with the safety procedures they need to follow based on their position and tasks performed.

c. Conduct safety training meetings as qualified and provide time for staff to attend safety training as required by safety procedures.

d. Make recommendations to the Department Director on safety needs including training and personal protective equipment.

e. Make recommendations to the Department Director on any additional or specialized safety rules or procedures needed.

f. Correct any unsafe conditions or practices observed in the work area and not allow employees to resume work until corrections are made.

g. Ensure that employees are familiar with and trained in the safety and health specialized programs required for the department/ division by OSHA.

h. Review all accidents that occur within the work unit, provide accurate information on the appropriate accident reporting forms and make recommendations on ways to prevent a reoccurrence of the accident.

Section 11.5        Safety Rules and Procedures

The County has published safety rules and detailed safety procedures.  These rules and procedures are based to meet the Virginia Occupational Safety and Health Standards and to protect employees from the risks and hazards they face.  Safety procedures are based on the requirement of written procedures and employee training.

The Risk Manager will assist each department in determining which procedures are required based on operations and assist with the implementation of the procedures.  Each Department is responsible for implementing the required safety procedures identified.  New procedures will be added as regulations mandate and loss factors require.

Safety procedures must be adopted to the department based on operations and responsibilities within the department.   The Department Director is responsible for organizing the structure, including establishing responsibilities, committees, etc. for implementing and maintaining these procedures.

Section 11.6        Accountability

Violation of this policy or published safety rule or procedure warrants prompt investigation and disciplinary action following the County Standards of Conduct.

Rev. 7/10/12

THIS PAGE INTENTIONALLY LEFT BLANK

CHAPTER 12

CONFLICT OF INTEREST & WHISTLEBLOWER POLICY

Section 12.1    Purpose

Section 12.2    Definitions

Section 12.3    Prohibited Contracts and Conduct

Section 12.4    Conflict of Interest Procedures

Section 12.5    Confidentiality

Section 12.6    Review of Policy

Section 12.7    Reporting a Violation of Law or Policy – Whistleblower Protection

Section 12.8    Objective

Section 12.9    Procedures

CHAPTER 12

CONFLICT OF INTEREST & WHISTLEBLOWER POLICY

Section 12.1      Purpose

This policy is based upon the State and Local Government Conflict of Interest Act, Code of Virginia, Title 2.2, Chapter 31 and the Fraud and Abuse Whistle Blower Protection Act, Code of Virginia, Title 2.2, Chapter 30.1.

The policy is designed to help directors, members of Boards, Committees and Commissions, officers, volunteers and employees of James City County ("the County") identify situations that present potential conflicts of interest and to provide James City County with a procedure that, if observed, will allow a transaction or agreement to be treated as valid and binding even though a director, member of a Board, Committee or Commission, officer, volunteer or employee has or may have a conflict of interest with respect to the transaction or agreement. In the event there is an inconsistency between the requirements and procedures prescribed herein and those in federal or state law, the law shall control.

Section 12.2      Definitions

1.  A "Conflict of Interest" is a personal interest in a contract or transaction considered by the County.

2.  A "Contract" means any agreement to which the County is a party, or any agreement on behalf of the County that involves the payment of money appropriated by the General Assembly or a political subdivision, whether or not such agreement is executed in the name of the County.

3.  A "Responsible Person" is any person serving as an officer, employee or member of the Board of Supervisors or any other Board, Committee, or Commission of the County.

4.  An "Immediate Family Member" means (i) a spouse and (ii) any other person who resides in the same household as the officer or employee and who is a dependent of the officer or employee as defined by; State and Local Government Conflict of Interest Act, Code of Virginia, Title 2.2, Chapter 31.

5.  A "Personal Interest" means a financial benefit or liability accruing to an officer or employee or to a member of his immediate family. Such interest shall exist by reason of (i) ownership in a business if the ownership interest exceeds three percent of the total equity of the business; (ii) annual income that exceeds, or may reasonably be

anticipated to exceed, $5,000 from ownership in real or personal property or a business; (iii) salary, other compensation, fringe benefits or benefits from the use of property, or any combination thereof, paid or provided by a business or governmental agency that exceeds, or may reasonably be anticipated to exceed, $5,000 annually; (iv) ownership of real or personal property if the interest exceeds $5,000 in value and excluding ownership in a business, income, or salary, other compensation, fringe benefits or benefits from the use of property; (v) personal liability incurred or assumed on behalf of a business if the liability exceeds three percent of the asset value of the business; or (vi) an option for ownership of a business or real or personal property if the ownership interest will consist of clause (i) or (iv).

6.   A "Transaction" is any matter considered by any governmental or advisory agency, whether in a committee, subcommittee, or other entity of that agency or before the agency itself, on which official action is taken or contemplated.

Section 12.3        Prohibited Contracts and Conduct

For purposes of this policy, the following contracts and conduct are prohibited. Violations of the following shall be deemed an impermissible Conflict of Interest:

A.   Contracts

- No person elected or appointed as a member of the County Board of Supervisors shall have a Personal Interest in any contract with the governing body.
- No other officer or employee of the County shall have a personal interest in a contract.

B.   Conduct

No officer or employee of the County shall:

- Solicit or accept money or other thing of value for services performed within the scope of his official duties, except the compensation, expenses or other remuneration paid by the County;
- Offer or accept any money or other thing of value for or in consideration of obtaining employment, appointment or promotion of any person with any governmental or advisory agency;
- Offer or accept any money or other thing of value for or in consideration of the use of a public position to obtain a contract for any person or business with any governmental or advisory agency;

Rev. 022218

- Use for own economic benefit or that of another party confidential information that has been acquired by reason of their public position and which is not available to the public;
- Accept any money, loan, gift, favor, service or business or professional opportunity that reasonably tends to influence the performance of official duties;
- Accept any business or professional opportunity when he knows that there is a reasonable likelihood that the opportunity is being afforded him to influence him in the performance of his official duties; or use his public position to retaliate or threaten to retaliate against any person for expressing views on matters of public concern or for exercising any right that is otherwise protected by law.

These prohibitions do not preclude the acceptance of items of nominal or insignificant value or entertainment of nominal or insignificant value that are not related to any particular transaction or activity of James City County.

Section 12.4.    Conflict of Interest Procedures

Before County action on a Contract or Transaction involving a Conflict of Interest, a Responsible Person having a Conflict of Interest and who is in attendance at the meeting shall disclose all facts material to the Conflict of Interest. Such disclosure shall be reflected in the minutes of the meeting.

A Responsible Person who plans not to attend a meeting at which he or she has reason to believe that the Board or Committee will act on a matter in which the person has a Conflict of Interest shall disclose to the chair of the meeting all facts material to the Conflict of Interest. The chair shall report the disclosure at the meeting and the disclosure shall be reflected in the minutes of the meeting.

A Responsible Person who has a Conflict of Interest shall not participate in discussion of the matter except to disclose material facts and to respond to questions. Such person shall not attempt to exert his or her personal influence with respect to the matter, either during or outside the meeting.

A Responsible Person who has a Conflict of Interest with respect to a Contract or Transaction that will be voted on at a meeting shall not be counted in determining the presence of a quorum for purposes of the vote. The person having a conflict of interest may not vote on the Contract or Transaction.

Employees who have a Conflict of Interest with respect to a Contract or Transaction that is not the subject of Board or Committee action shall disclose to his or her supervisor any Conflict of Interest that such Responsible Person has with respect to an Agreement or Transaction. Such disclosure shall be made as soon as the Conflict of Interest is known to the Responsible Person.

The Responsible Person shall refrain from any action that may affect the County's participation in such Contract or Transaction.

A current or prospective employee who has accepted an employment offer with the County cannot maintain or accept paid employment outside of the County without an approved Outside Employment request. This request is reviewed to ensure there is no actual or perceived Conflict of Interest.

In the event it is not entirely clear that a Conflict of Interest exists, the Responsible Person with the potential conflict shall disclose the circumstances to the Board, Committee, or Commission Chair or the Chair's designee or to his or her supervisor, who shall determine whether there exists a Conflict of Interest that is subject to this policy.

Section 12.5    Confidentiality

Each Responsible Person shall exercise care not to disclose confidential information acquired in connection with his or her association with the County the disclosure of which might be adverse to the interests of the County. Furthermore, a Responsible Person shall not disclose or use information relating to the business of the County for the personal profit or advantage of the Responsible Person or an Immediate Family Member.

Section 12.6    Review of Policy

Each new Responsible Person shall be required to review this Policy and to acknowledge in writing that he or she has done so.

Each Responsible Person shall comply with the disclosure requirements of the State and Local Government Conflicts of Interest Act identifying any relationships, positions or circumstances in which the Responsible Person is involved that he or she believes could contribute to a Conflict of Interest arising. Such relationships, positions or circumstances might include service as a director of or consultant to a not-for-profit organization, or ownership of a business that might provide goods or services to the County. Each Responsible Person should also disclose any potential Conflict of Interest that may arise during the course of the year between the submissions of annual disclosure forms.

This policy shall be reviewed regularly. Any changes to the policy shall be communicated immediately to all Responsible Persons.

Section 12.7     <u>Reporting a Violation of Law or Policy – Whistleblower Protection</u>

This policy provides a mechanism whereby, if an employee or volunteer becomes aware of a violation of policy or law, he or she can report a perceived violation made in good faith and upon reasonable belief without fear of retaliation.

Section 12.8     <u>Objective</u>

Elected officials, officers, employees, independent contractors or other public stakeholders shall have an open opportunity to bring to the attention of administration, allegations of wrongdoing or malfeasance on the part of elected officials, officers, employees, independent contractors or other public stakeholders associated with the County. This includes but is not limited to violations of law, gross waste of funds or property, or abuse or neglect of a fiduciary duty. These allegations will usually fall into the following categories:

- Commission of criminal offences.
- Instances of regulatory non-compliance.
- Issues of probity and propriety, e.g. fraud, theft, bribery, corruption and embezzlement.

Retaliation towards those who report such allegations will not be tolerated. Those who retaliate, interfere with investigations, or destroy or conceal evidence will be subject to immediate disciplinary actions. Employees who willfully file complaints based upon information known by the employee making the allegations to be false or misrepresented, will also be subject to disciplinary action.

The County shall appropriately notify employees of the protections and obligations afforded to them under the Fraud and Abuse Whistle Blower Protection Act.

Section 12.9     <u>Procedures</u>

The Director of Human Resources of the County, shall receive allegations pursuant to the provisions of this policy. Reports of alleged wrongdoing should be submitted in writing, and include a verifiable name, address and telephone number of the reporter. Reports or allegations submitted anonymously may or may not be investigated. The Director of Human Resources or his/her designee will conduct an investigation of the complaint. Referrals shall be made to the appropriate law enforcement agencies when there is reason to believe that a crime may have been committed.

Investigations will be conducted promptly and a written report with investigative findings and conclusions shall be sent to the County Administrator and the County Attorney for the County within 60 days of the

date on which the allegations were received. The County Administrator will take appropriate action on the report's recommendations.

An employee or applicant who believes that retaliation prohibited by this policy has occurred is encouraged to file a complaint with the Director of Human Resources within a reasonable time period from the date of the alleged retaliation. Each report of retaliation, if submitted within 60 days, will follow the same investigative policy as outlined above.

This policy is not to be substituted or used in place of the Code of Virginia or other County personnel policies and procedures for personnel matters other than those described above.

The Director of Human Resources, County Board of Supervisors and the County Administrator are encouraged to consult with the County Attorney's Office to resolve questions regarding the State and Local Government Conflict of Interest Act, Code of Virginia, Title 2.2, Chapter 31 and the Fraud and Abuse Whistle Blower Protection Act, Code of Virginia, Title 2.2, Chapter 30.1.

THIS PAGE INTENTIONALLY LEFT BLANK

Appendices

THIS PAGE INTENTIONALLY LEFT BLANK

APPENDIX A

# DIVERSITY STRATEGIC PLAN

| Strategy | Responsibility for Coordinating | Accomplishments |
|---|---|---|
| Implement the employment procedures as outlined in the Equal Opportunity/Affirmative Action Plan. | Human Resources | |
| Develop and implement an annual calendar of opportunities for employees to get to know each other. | Human Resources | |
| Develop and implement an annual plan to provide development opportunities such as training, alternative work assignments, mentorships, etc. | Human Resources | |
| Provide opportunities for employees to participate on teams, both inside and outside their departments. | Department Directors & Supervisors | |
| Recognize employees for actions that demonstrate they value diversity. | Departments | |
| Ensure work rules and policies are work-related and non-discriminatory. | Human Resources | |
| Report Diversity Strategic Plan accomplishments annually. | Human Resources | |

THIS PAGE INTENTIONALLY LEFT BLANK

**APPENDIX B**

**Equal Opportunity/Affirmative Action Plan**

1.    <u>Commitment</u> – James City County is committed to:

   A.    Recruiting, hiring, promoting and training persons in all job titles, without regard to race, color, religion, sex, national origin, age, disability, pregnancy or sexual orientation.

   B.    Basing hiring and promotion decisions on the individual's qualifications for the position.

   C.    Ensuring that all personnel actions such as compensation, benefits, transfers, layoffs, return from layoff, county sponsored training, education, tuition assistance, social and recreation programs are administered without regard to race, color, religion, sex, national origin, age, disability, pregnancy or sexual orientation.

   D.    Increasing representation of women and minorities in areas where underutilization is identified**.**

2.    <u>Conformance With Legal Requirements</u> - Where necessary, this policy is to be extended in order that the County be in compliance with the following federal restraints: the U.S. Constitution, the Civil Rights Act of 1866, the Civil rights Act of 1871, Title VI and VII of the Civil Rights Act of 1974, the State and Local Fiscal Assistance (Revenue Sharing) Act of 1972, the Age Discrimination in the Employment Act of 1975, the Intergovernmental Personnel Act of 1970, Housing and Community Development Act of 1974, the Rehabilitation Act of 1973, and Executive Order 11246.

3.     <u>Communication of the Plan</u>

   A.    <u>Internally</u>

      1.    The Equal Opportunity/Affirmative Action Plan (EO/AAP) will be included in the <u>Personnel Policies and Procedures Manual,</u> which is available to all employees on the County Intranet, in the Human Resource Department and in their departments.

      2.    The County's EO/AA Policy statement will be discussed in New Employee Orientation and will be included in the Employee Handbook.

3.   Equal Employment Opportunity posters and the County's EO/AA Policy statement will be posted in the Human Resource Department.

4.   Periodic training on EO/AA will be provided for employees.

5.   The Plan will be specifically available via the Human Resource Department's home page on the County Intranet.

B.   <u>Externally</u>

1.   James City County's application for employment and all recruiting advertisements will state that James City County is an EO/AA employer.

2.   All pamphlets, brochures, and other printed materials prepared for recruitment purposes will state that James City County is an EO/AA employer.

3.   Written notification of the EO/AAP will be made to all vendors and suppliers, and will include solicitation of appropriate action on their part on all Requests for Proposals from the County.

4.   The County's EO/AA statement will be included in all purchase orders, leases, contracts, etc. covered by Executive Order 11246.

4.   <u>Internal Auditing and Reporting</u>

A.   The Human Resource Department will improve its tracking system to accurately compare race and sex staffing patterns of County employees to Metropolitan Statistical Area data to establish benchmark ratios of race and sex. This information will be shared with department directors and supervisors.

B.   The Human Resource Department will report progress in accomplishing the EO/AA Objectives and Strategies annually.

5.   <u>Objectives and Strategies</u> – The following Objectives and Strategies have been developed to assist in achieving the County's commitment to nondiscrimination and equal opportunity.

**A.   Identify employment areas where underutilization exists**.

1.   The Human Resource Department will compare race and sex staffing patterns of County employees to Metropolitan Statistical Area data to identify possible areas of underutilization.  These findings will be shared with the County Administrator and Department Directors.

Revised 1/14/2014

2. The Human Resource Department will work with Departments to identify and eliminate barriers to equal employment opportunity and identify strategies to increase the applicant pool of minorities and women.

B. **Develop strategies to increase the applicant pool of minorities and women.**

1. Human Resources will use a variety of recruitment sources such as, minority publications, professional organizations, Internet sites, college and university placement offices and media to advertise specific employment opportunities to protected class members.
2. Human Resources and hiring departments will encourage employees to refer protected class applicants for County employment.
3. When hiring and promoting employees consistent with County policy, department directors and supervisors will make every reasonable effort to select qualified minorities and women to ensure that the distribution of minorities and women throughout all levels of the workforce are representative of the percentage and distribution of qualified minorities and women available.
4. Include minority and female employees when participating in career days and job fairs.
5. Partner with "connected" neighborhoods through the Neighborhood Connections office to inform community organizations of employment opportunities.

C. **Ensure that recruitment policies and practices support equal employment opportunity.**

1. The Human Resource Department will serve as a job information center to provide equal access to job information, availability and opportunities.
2. Include the statement that James City County is "An Equal Opportunity/Affirmative Action Employer on all references to position vacancies.
3. Include pictures of protected class members on any recruitment literature that contains photographs of people.
4. Provide reasonable accommodation to applicants requesting assistance in the application process.
5. Provide a variety of ways that employment applications may be obtained, including in person, by mail, by fax and via the Internet.
6. Avoid references to race, color, religion, sex, national origin, age, disability, pregnancy, or sexual orientation on James City County's employment application, except as may be required to meet the Equal Employment Opportunity Commission's requirements or other legal requirements.

B-3

D.    **Ensure that hiring and promotion policies and practices support equal employment opportunity.**

1. The process of screening applications will be administered consistently using valid requirements of the job, by either the Human Resource Department or the hiring supervisor.
2. Offer training to employees involved in selection, promotion, disciplinary and related processes to be aware of and eliminate bias in personnel actions.
3. Offer training to employees involved in interviewing to develop the skills necessary to interview, evaluate and document interviews in a non-discriminatory manner.
4. Make job descriptions available to all employees through the James City County Intranet and through the Human Resource Department.
5. Obtain a release of criminal and medical records from applicants for those positions that require a background investigation due to the nature of the duties involved.
6. Use records of criminal convictions in making employment decisions only when they indicate, given the nature of the crime and the nature of the job, that employment of the individual in a particular job could affect job performance.

E.    **Use selection criteria that are job-related and indicative of success in performing the job.**

1. Job descriptions will be reviewed periodically and upon vacancy to ensure they accurately reflect position functions.
2. Knowledge, skills and abilities and minimum qualifications for jobs will be reviewed periodically and upon vacancy to ensure they are consistent with the duties required of the job.
3. Human Resources will work with departments to develop job related selection processes, including testing and interview questions, as requested.
4. Hiring departments will inform Human Resources of selection processes, including interview questions.
5. The Human Resource Department will follow the "Uniform Guidelines on Employee Selection", CFR 60-3.
6. Human Resources will ensure that written pre-employment tests leased from vendors have been validated by the vendor. Any other written tests used in the selection process must be reviewed by the Human Resource Department.
7. Human Resources will work with departments to ensure that any promotion testing is administered in a fair and equitable manner.
8. Qualified applicants with disabilities will be provided with reasonable accommodation, upon request, to enable them to participate in the testing and selection process.

B-4

F. **Ensure that compensation, benefits, employee development and disciplinary policies support nondiscrimination.**

　　1. Salary ranges for each position classification will be assigned based on the County's established pay system, without regard to the incumbent.
　　2. Available benefits will be offered to all eligible employees based on their employment status without regard to race, color, religion, sex, national origin, age, disability, pregnancy or sexual orientation.
　　3. Tuition assistance will be awarded to eligible County employees without regard to race, color, religion, sex, national origin, age, disability, pregnancy or sexual orientation.
　　4. Training and educational programs that are sponsored or supported by James City County will be available to all employees, appropriate to the employee's position, without regard to race, color, religion, sex, national origin, age, disability, pregnancy or sexual orientation.

G. **Provide a work environment free from discrimination.**

　　1. Supervisors will conduct periodic audits of their work locations to ensure that facilities maintained for use by employees are desegregated, both in policy and use and are comparable for both sexes.
　　2. Exit interviews will be conducted with as many employees as possible that leave employment to ensure work environments free from discrimination.
　　3. Inform new employees about James City County's Diversity and Equal Opportunity Policy in New Employee Orientation.
　　4. Share accomplishments of the Diversity Strategic Plan and the EO/AA Plan with the Valuing Diversity Steering Committee and work together to develop future strategies.

H. **Provide training opportunities to all employees.**

　　1. Publicize training opportunities through various mediums such as, the County Intranet, flyers and brochures, e-mail announcements, announcements in employee newsletters and department directors' reports.
　　2. County sponsored training will be offered to help employees prepare for future promotional opportunities or career changes.

Revised 1/14/2014

THIS PAGE INTENTIONALLY LEFT BLANK



**Appendix C**

# Discriminatory Harassment Complaint Form

To file a complaint of Discriminatory Harassment as defined in Chapter 10, Section 10.4 C of the <u>Personnel Policies and Procedures Manual</u>, complete this form and return it to the Human Resource Director within 300 calendar days of the event causing the complaint.

| | | |
|---|---|---|
| Your Name | Department | Supervisor's Name |

The discriminatory harassment is based on:

❏ Race        ❏ Color          ❏ National Origin   ❏ Sex      ❏ Religion
❏ Disability  Age  ❏ Sexual Orientation  ❏ Pregnancy

Name(s) of person(s) who committed the alleged discriminatory harassment:

| | |
|---|---|
| Name(s) | Department(s) |

Date(s) when alleged discriminatory harassment occurred: _____

Names of individuals who witnessed the alleged discriminatory harassment: _____

_____

_____

Describe what happened (use additional paper if necessary): _____

_____

_____

_____

What results do you wish to obtain by filing this complaint (use additional paper if necessary):

_____

_____

_____

I affirm that the above information is true to the best of my knowledge, information, and belief.

| | |
|---|---|
| Signature | Date |

Date received in Human Resources: _____

harassment.for

THIS PAGE INTENTIONALLY LEFT BLANK

APPENDIX D

EQUAL EMPLOYMENT OPPORTUNITY PLAN

I.   Policy

James City County is an Equal Opportunity Employer. It shall provide equal employment opportunity to its employees and applicants for employment on the basis of fitness and merit without regard to race, color, religion, national origin, political affiliation, sex, age, except where sex or age is a bona fide occupational qualification, or handicap. This policy shall be followed in recruiting, hiring, promotion into all position classifications, compensation, benefits, transfers, layoffs, returns from layoffs, demotions, termination, County-sponsored training programs, educational leave, social and recreational programs, and use of County facilities. Any person employed by James City County who fails to comply with this policy is subject to disciplinary action.

Where necessary, this policy is to be extended in order that the County be in compliance with the following federal restraints: the U.S. Constitution, the Civil Rights Act of 1866, the Civil Rights Act of 1871, Title VI and VII of the Civil Rights Act of 1974, the State and Local Fiscal Assistance (Revenue Sharing) Act of 1972, the Age Discrimination in the Employment Act of 1975, the Intergovernmental Personnel Act of 1970, Housing and Community Development Act of 1974, and the Rehabilitation Act of 1973.

The adoption of this EEO plan by the Board of Supervisors is a reaffirmation of adherence to and promotion by the Board of the policy of nondiscrimination in all action affecting County employees. The guidelines, and objectives contained in this plan are designed to assist the County and all of its employees adhering to that policy.

II.   Annual Goals and Objectives

The County Administrator, with the assistance of the Equal Employment Opportunity Officer, shall annually perform the following activities necessary to prepare and update the goals and objectives of the Affirmative Action Plan for Equal Opportunity:

A.   Analyze current staff and staffing patterns to determine the racial and sex composition of County employees and of the locality in order to establish benchmark ratios of race and sex.

B.   Based on the ratios developed under A. above, establish short range (less than 1 year) employment goals and objectives which would further equal employment opportunity for County employees or the projected work force.

C.   Based on the ratios developed under A. above, establish longer range (1-5 years) employment goals and objectives which would further equal employment opportunity for County employees or the projected work force. Prior to the submission of the annual Performance Report under the Community Development Block Grant

D-1

Program, the County Administrator shall review the existing short range plan, and develop a revised short range and long range affirmative action plan for the new time frames.

Annual short and long range goals shall be kept on file with the Affirmative Action Plan and other documentation.

III.   <u>Dissemination of Policies and Procedures</u>

Upon adoption of the Affirmative Action Plan for equal employment, the County Administrator will disseminate copies of the plan to each department head. A copy will also be provided each employee requesting a copy. Posters will be placed on County bulletin boards announcing the County as an equal opportunity employer.

All recruitment activities, whether through advertisements, employment agencies, or others will automatically be informed of the County's employment opportunity policy.

IV.   <u>Responsibilities</u>

A.   County Administrator

Ultimate responsibility for the implementation of this policy and the County's affirmative action program rests with the County Administrator.

B.   Equal Employment Opportunity (EEO) Officer

The Personnel Officer will assume the position of the Equal Employment Opportunity Officer and perform the following duties and functions:

1.   Be responsible for overall administration of the Equal Employment Opportunity Plan.

2.   Measure effectiveness of the affirmative action plan.

3.   Collect and analyze data.

4.   Act as liaison for the County and other government agencies and community groups.

5.   Keep management informed of latest developments in the entire EEO area.

6.   Upon request, counsel employees and other County personnel.

Revised 1/14/2014

C.     Department Heads and Supervisors

Each member of management and supervision is responsible within his/her area of responsibility for conducting activities in a manner which will ensure compliance with the policy and the Affirmative Action Programs. Furthermore, each is made to understand that his/her work performance in the area of equal employment affirmative action is being evaluated.

V.    <u>Equal Employment Opportunity Procedures</u>

Applicants for employment are considered and placed without regard to race, sex, color, religion, national origin, ancestry, handicap, or age; the County displays equal employment opportunity notices in conspicuous places available to all employees and applicants for employment. Employment application forms are in compliance with applicable federal laws. A copy of our Affirmative Action Policy may be obtained from the Personnel Office.

Routinely, applications and supporting documents are sent to the Personnel Office from whence they are sent to individual supervisors or department directors for evaluation (screening of applications). Those applicants deemed most adequately suited for the position are either asked to submit additional supporting data and are further evaluated, or are asked to submit themselves for an interview. Before a formal offer is made, the EEO officer is consulted to ascertain that a good faith effort has indeed been made. This is accomplished by the EEO Officer obtaining evidence that the applicant pool from which the selection (hiring) was made had been established without regard to race, sex, color, national origin, handicap, ancestry, age or religion. If this cannot be vouched, the EEO Officer may object to the hiring. In order not to affect adversely the employment opportunities of minorities and women, supervisors and department directors are especially urged to follow the County policy and equal employment opportunity commitment, and to develop a better understanding of the characteristics of the minority and women work force and the conditions, problems and expectations of minority groups and women.

A.    Recruitment

The recruitment of persons to fill vacancies will be accomplished without regard to race, sex, color, national origin, handicap, ancestry, age or religion. The County will maintain contacts with various minority, feminine and handicapped groups and organizations concerning manpower resources and requirements when necessary.

1.    The Personnel Officer (EEO Officer) will continue to have primary responsibility for recruitment activities with direct assistance from department heads.

Revised 1/14/2014

2.     Whenever practical all job openings will be advertised in the news media. They will also be advertised in the minority news media as well as with those organizations and institutions catering predominantly to females and minorities. Where the visual media (such as posters or flyers) is used, all pictures shall include minorities and females. Advertising in the news media may not be done when more than 5 current (three months or less) applications are on file for a position that becomes vacant; also, when selections can be made from a preselected standing list of qualified applicants.

3.     The latest job listing will be posted in such a manner that all employees and potential employees have equal access to this information.

4.     Communications will be maintained with educational institutions and vocational schools for recruitment, including predominantly minority and female institutions.

5.     Positions above the entry level in the Fire, EMS, Police and Sheriff's Departments will be advertised in-house only for one week. If qualified applicants are found from within the organization, selection will be from that group without the position being advertised in the local news media.

B.    Selection

The selection of persons to fill job vacancies will be accomplished through approved procedures. Persons will be hired without regard to nonmerit factors following a completely objective appraisal of each eligible individual interested in the position.

C.    Promotion

Promotion will be proposed in accordance with applicable rules, on a nondiscriminatory basis. The procedure used in selecting persons for promotion will be evaluated periodically to ensure that they are realistic and relevant.

Any employee who feels he or she has not been accorded fair and impartial treatment regarding employment will be offered an opportunity to discuss this problem.

1.     Continued emphasis will be placed on the County's educational assistance programs.
2.     Training programs shall be designed to upgrade the skills of employees so that they can improve performance in their present position.

    3.     On-the-job training will <u>be designed</u> so that employees have an opportunity to acquire skills needed to qualify for a better position with the County.

    4.     Employees with managerial ability will be encouraged to acquire skills on-the-job or through more formalized training prior to their advancement into a management position.

D.    Training

The County shall provide training annually to all employees with responsibilities under this plan including the County Administrator, the EEO Officer and all Department Heads.

E.    County Facilities and Benefits

    1.     Equal opportunity shall be assured to all County employees for proper use of County facilities.

    2.     The benefits and conditions of employment as outlined in the Employee Handbook shall be monitored to assure that they continue to be equally available to all employees.

F.    Distribution

In addition to the other provisions of this plan, each subcontractor will be provided a copy of this plan and will be informed of the County's overall EEO policy.

## VI. <u>General</u>

Race/sex records will be kept on the following:

| | | | |
|---|---|---|---|
| a. | applicants | e. | transfers |
| b. | hiring | f. | training |
| c. | terminations | g. | complaints of discrimination |
| d. | promotions | | |

Records on the subjects listed above will be maintained in the Personnel Department. They will be reviewed periodically to ensure that actions taken by the organization are consistent with EEO and Affirmative Action Policy.

Records of correspondence with the various recruitment contacts (minority, female, handicapped organizations) will also be maintained.

A file of all job advertisements will continue to be kept by the Personnel Department.

At least annually all department heads and supervisors will be provided training in EEO/Affirmative Action subjects including interviewing techniques.

All management personnel will be responsible for monitoring employee placement, assignment of duties and work sites to ensure that assignments are made on a nondiscriminatory basis.

Exit interviews will be scheduled with each employee who terminates with the County. The interview will be conducted by Personnel Department staff.

VII. <u>Complaints</u>

The County has an approved Grievance Procedure open to permanent employees of the County.

In addition, any employee who feels that he/she has been discriminated against may register a complaint with the EEO Officer. A report including corrective action taken, if appropriate, will be given the employee after an investigation has been completed.

D-6

APPENDIX E

HAZARD COMMUNICATION PROGRAM


I.    OBJECTIVE

The purpose of the Hazard Communication Program is to provide a safe work environment by ensuring that all chemicals with which employees work have been evaluated to determine their hazard and by informing all employees of proper precautions to take in working with those hazardous chemicals

II.   RESPONSIBILITIES

All County employees shall be responsible for keeping informed of and taking proper precautions to protect themselves from the hazards of chemicals and solvents which are used in the workplace.

A.   Department Directors

Department directors are responsible for ensuring that all employees are aware of the hazards from chemicals and solvents that are present in County facilities. All department directors shall:

1.   Ensure that an inventory of all chemicals that are present in the workplace is established and ensure that a safety data sheet is available for all chemicals.

2.   Ensure that employees are designated who will verify that all containers received for use are clearly labeled as to contents, note the appropriate warning and list the name and address of the manufacturer or importer.

3.   Ensure that training is provided to all employees in the following areas:

a.   How to detect the presence of hazardous chemicals in the work area.

b.   What are the physical and health hazards of the chemicals in the work area.

c.   Measures employees may use to protect themselves from hazards.

d.   What personal protective equipment is required when handling hazardous chemicals.

e.   What steps to take if exposed to a hazardous chemical.

f.   How the hazard communication program is implemented in the workplace, how to read and interpret information on labels and Safety Data Sheets, (SDS) and how to obtain and use the available hazard information.

E-1

Revised 8/21/2020

III.   <u>SUPERVISORS</u>

Supervisors are responsible for ensuring that all hazardous chemicals are properly stored and handled by employees.

The Supervisor shall:

1.   Ensure that copies of SDSs for all hazardous chemicals are available in the workplace, and that all employees are aware of their location.

2.   Ensure that all secondary containers are labeled with either an extra copy of the original manufacturer's label or an acceptable substitute.

3.   Ensure all hazardous chemicals are stored separately from other supplies that may be incompatible.

4.   Ensure that all hazardous chemicals are disposed of in accordance with the manufacturers' recommendations.

5.   Ensure employees are aware of and trained in the hazards, personal protective equipment and first aid procedures for any new hazardous chemicals introduced into the workplace and that an SDS accompanies that new chemical.

6.   Monitor employees' compliance with wearing personal protective equipment.

7.   Give employees specific instruction and warning prior to performing any non-routine tasks in which the employee will be or could be exposed to a hazardous chemical.

8.   Ensure that all new employees receive the required training to ensure that they are aware of the hazards in the workplace.

IV.   <u>EMPLOYEES</u>

All County Employees shall be aware of and take proper precautions to protect themselves from the hazards of chemicals and solvents in County facilities. County employees shall:

1.   Know what hazardous chemicals are in the workplace and where the SDSs are located in their work area.

2.   Not remove any labels from a chemical container and ensure that any secondary container used for the storage of hazardous chemicals is properly labeled.

3.   Wear the personal protective equipment required to protect themselves from hazardous chemicals.

Revised 8/21/2020

4.   Dispose of hazardous chemicals in accordance with the manufacturer's recommendations.

V.   <u>COUNTY SAFETY COMMITTEE</u>

The County Safety Committee shall assist departments in complying with the Hazard Communication Standard, 1910.1200 of the VOSHA. The County Safety Committee shall:

1.   Assist departments in setting up their Hazard Communication Program.

2.   Periodically survey locations and evaluate chemicals in the workplace to determine if they are hazardous by reviewing the SDS.

3.   Periodically review the Hazard Communication Standard to ensure compliance.

4.   Maintain a master inventory of all chemicals used by County departments which will be located in the Personnel Department.

VI.   <u>PURCHASING DEPARTMENT</u>

The Purchasing Director shall ensure that all vendors providing hazardous chemicals are in compliance with the labeling requirements of the Hazard Communication Standard and that all shipments are accompanied by an SDS. The Purchasing Director shall:

1.   Require all bids be accompanied by SDSs.

2.   Require all shipments of chemicals and solvents be accompanied by SDSs.

3.   Request that all shipments of chemicals and solvents be delivered with extra labels for secondary containers.

4.   Forward SDSs for chemicals and solvents purchased to the County Safety Committee for review.

VII.   <u>TRAINING</u>

At the time of employment, all employees shall receive training specific to the Department's Hazard Communication Program, and the hazards that are in the workplace. Additional training shall be provided when new hazardous chemicals or solvents are introduced into the workplace. Employees shall receive training in the following areas:

1.   Methods and observation techniques to detect the presence of a hazardous chemical in the workplace.

2.   Specific information about the physical and health hazards of the chemicals in the workplace.

E-3

Revised 8/21/2020

3. Measures employees may use to protect themselves from the hazards of chemicals and solvents in the workplace.

4. Specific protective procedures implemented by the employer.

5. Specific information concerning the implementation of the Hazard Communication program in the workplace, how to read and interpret information on SDS and container labels.

Documentation of training efforts will provide evidence of compliance with the training requirements of the Hazardous Communication Standard. It is recommended that each department maintain a list of those employees who have received the Hazard Communication training and when.

VIII.   <u>CHEMICAL INVENTORY</u>

Each department, division or group of divisions shall maintain an inventory of all hazardous chemicals and solvents purchased, stored, or used within that department or work area. The chemical inventory should be developed from purchasing records, any existing inventory listings and an annual physical inspection of the workplace within each department. An updated copy of the chemical inventory shall be submitted to Human Resources for development and updating of the County Master Chemical Inventory. A master inventory shall be maintained by the Human Resource Department. The chemical inventory shall include the following:

1. The chemical and common name.

2. The manufacturer, distributor, and/or supplier's name and address.

3. The amount of chemical on hand.

4. The method of storage.

5. The storage location

6. The use of the hazardous chemical.

IX.   <u>WRITTEN HAZARD COMMUNICATION PROGRAMS</u>

Each department shall maintain a written Hazard Communication program. This should include information on how each department, division, or group of divisions is protecting its employees from the hazard of chemicals and solvents, who is responsible for ensuring that all chemicals received are properly labeled, stored, and are accompanied by the SDS, an inventory of chemicals and solvents used by that department and a list of those job classes which may be exposed to those chemicals or solvents. This written program should be placed where all employees have knowledge of its location as well as access to this information.

Revised 8/21/2020

**Specialized Safety and Health Procedures**
**Bloodborne Pathogen Exposure Control Plan**

**1.0**   **PURPOSE**

To provide procedures and guidelines that ensure James City County employees have a full understanding of the potential risks in a biological environment and can protect themselves, the patient, and the general public from contaminants.

**2.0**   **OBJECTIVES**

To ensure that all reasonable precautions to protect employees from unnecessary exposure to communicable diseases are taken and to provide guidelines to minimize and to prevent, when possible, the occupational exposure to disease-causing microorganisms transmitted through blood or other potentially infectious materials, since any exposure could result in the transmission of bloodborne pathogens.

**3.0**   **SCOPE**

These procedures apply to all James City County employees who are required, or expected, as part of their job responsibilities, to render first aid treatment to other employees or the general public.  These procedures also apply to employees who could be "reasonably anticipated" as the result of performing their job duties to face contact with blood and other potentially infectious materials. Fire/EMS and other healthcare employees have separate procedures that include additional responsibilities required of healthcare professionals. The Infection Control Officer and committee has evaluated each County position by responsibilities and daily tasks for exposure potential and divided them into one of three categories.  The categories are:

1.   <u>Category I</u> - High potential for occupational exposure to potentially infectious materials in course of normal duties;

2.   <u>Category II</u> - Moderate potential for occupational exposure to potentially infectious materials in course of normal duties; and

3.   <u>Category III</u> - Low potential for occupational exposure to potentially infectious materials in course of normal duties.

**4.0**   **REFERENCES**

<u>Documents</u>
OSHA 1910.1030 - Bloodborne Pathogens; Final Rule
OSHA 1910.134 - Respiratory Protection
OSHA 1910.20 - Medical Records Standard

<u>Forms</u>

Vaccine Declination Form (A)
Exposure Report (B)
Health Care Professional's Opinion (C)
Training Outline (D)

**5.0     PROCEDURES/RESPONSIBILITIES**

**A.     EMPLOYEES-Personal Health Maintenance (Category I & II)**

1.  County employees who fall under Category I & II should follow a course of good personal health maintenance and make sure their immunizations are complete and up-to-date.
2.  The employee shares in the responsibility for his or her own safety, and is responsible for learning the basics of infection control, including modes of disease transmission and exposure risk.  Each employee is responsible for ensuring compliance with the procedures of the Bloodborne Pathogen Exposure Control Plan.

**B.     Hepatitis B Vaccination (Category I Only)**

James City County complies with the OSHA mandate by providing the Hepatitis B vaccination. Employee hired in Category I positions will be informed by Human Resources of these designations and offered the Hepatitis B vaccination.

1.  Hepatitis B. vaccinations are offered at the time of hire and during periodic medical exams.
2.  This vaccine is free of charge to all County employees that work in a Category I position.
3.  Any employee wishing to be vaccinated must sign a consent form, which is administered by the Infection Control Physician.
4.  Any employee who declines the vaccination must sign a declination waiver.
5.  Any employee who may have signed a waiver may change his/her mind at any time and receive the vaccination series free of charge.
6.  Hepatitis B. vaccinations are available for employees through the following clinic:
    Williamsburg Area Medical Assistance Corporation (WAMAC)
    5249 Olde Towne Road
    Human Services Center
    Williamsburg, VA
    259-3271
    259-1953
7.  All vaccination programs are administered under the guidance of a physician.  The vaccine of choice as well as dosage regimen shall be in accordance with current health care standards.
8.  The vaccination steps consist of the following:
    a.  Three shot series over a six-month period.
    b.  Titer (check for antibodies) is performed after an exposure.

    (Note: Titer tests are recommended for Health Care Workers after the initial vaccination series.)

**C.     DESIGNATED INFECTION CONTROL OFFICER**

The Infection Control Physician has received specific training in exposure management and risk reduction.  The Infection Control Officer is:

| | | |
|---|---|---|
| Bart Johnson | | Pete Brown |
| Human Resources | | Fire Training Center |
| 101F Mounts Bay Road | | Building 29 |
| Williamsburg VA 23185 | | Eastern State Hospital |
| 757-259-4033 Work | alternate | 757-564-0906 Work |
| 757-596-3788 Home | | 757-565-0192 Home |
| 757-876-8706 Cell | | 757-872-2413 Pager |
| 757-890-7322 Numeric Pager | | |

BBP(4/30/01)2

Responsibilities of the Infection Control Officer include:

1.  Acting as primary contact person for the initial processing of exposure reports.
2.  Conducting time-of-incident investigation to assure appropriate follow-up measures have been instituted.
3.  All compliance-monitoring activities.
4.  All post exposure follow-up investigations.
5.  The completion of all appropriate documentation and reports, and ensuring that all necessary documentation is forwarded to management.
6.  Determining compliance monitoring needs, communicating such needs to the designated officers, and compiling and maintaining compliance monitoring documentation.
7.  The development and coordination of delivery of annual infection control refresher training to all necessary employees.

**D.**   **INFECTION CONTROL PHYSICIAN (S)**

James City County uses an Infection Control Physicians as referenced in this policy.  The Infection Control Physician is:        Dr. Gregory Biernacki
                                                        Williamsburg Medical Arts
                                                        5231 John Tyler Highway
                                                        Williamsburg, VA 23185
                                                        757-220-8300

The responsibilities of this physician include:

1.  Administering Hepatitis B immunizations and counseling.
2.  Providing Department employees post exposure medical treatment including counseling and written medical opinion of exposure and recommended treatment.
3.  Notifying and providing a copy of the "Medical Opinion Letter" to the Infection Control Officer only.
4.  Provide post exposure medical treatment as required by the State of Virginia Worker's Compensation Act.

**E.**   **HUMAN RESOURCES**

Human Resources shall be responsible for the maintenance and security of employee exposure records:

1.  Such records to be accessible on a need-to-know basis only, and then only to the employee and Infection Control Officer.
2.  Exposure report documentation is required by OSHA to be maintained in an accessible format for the employee's term of employment plus 30 years.
3.  All documentation related to exposure event follow up shall be maintained by the Infection Control Physician or treating physician.
4.  The maintenance of all employee infection control training records.

F.   **TRAINING**

Employees in Category I & II positions receive training in bloodborne pathogens.  This training is conducted within 30 days of hire.  Refresher training is conducted annually thereafter.  The employee's department or Human Resources conduct the training.  Training is conducted following the outline contained in Appendix D.

6.0     **GENERAL INFECTION CONTROL PROCEDURES**

People have varying degrees of infectivity and susceptibility to infectious diseases.  The following are general procedures that are to be followed when rendering aid to injured and ill personnel.

A.      Efforts are made to assess each patient's status and initiate appropriate precautions whenever indicated.

B.      Employees must be aware that the presence of a communicable disease or immune-deficiency may not be known at the time of treatment.  Therefore, ALL patients shall be treated as potentially infectious and/or susceptible.  The Center for Disease Control recommends **"Body Substance Isolation"** when emergency response personnel work with blood or body fluids from any patient.  This precaution states that emergency response personnel must consider ALL body substances from any patient as potentially infectious.  Body Substance Isolation exceeds universal precautions that state blood or certain body fluids may be potentially infectious.

C.      The primary infection control measure - careful hand washing - shall be practiced by all employees before and after each direct patient contact (refer to Section No. 10).

D.      Each situation shall be visually assessed to determine the application of gowns, protective eyewear and mask.

E.      All contaminated (used) supplies shall be isolated from sterile supplies or usable stock at all times. Care shall be taken to insure that no contaminated material is permitted to contact reusable or sterile items.  If such an event occurs the newly contaminated item shall be discarded or property sanitized.

F.      Inventory levels of first aid kits shall be maintained by the employee they are assigned to.

G.      These items shall be inventoried after each use and deficiencies reported to the Infection Control Officer.

H.      Replacement items shall be obtained through the Infection Control Officer.

I.      Appropriate protective equipment shall be used at all times.

J.      If CPR is necessary, use a pocket-face mask in preference to direct mouth-to-mouth contact recommended until other advanced airway measures become available.

        NOTE:  In the unexpected event that absolutely no equipment is available, CPR shall not be withheld, as there has been no data presented to support a risk.

K.      Separate all equipment and supplies used for patient care that need to be decontaminated and destroyed.

L.      After patient contact, even if gloves are worn, hand washing is required.  (Refer to Section No. 10).

7.0     **GLOVES**

A.      Gloves shall be worn by all employees having direct contact with patients with blood or other potentially infectious materials.

B.      Disposable latex or vinyl gloves shall be donned prior to initiating emergency patient care.  The donning of gloves prior to arrival at the scene is discouraged, as the gloves may be damaged while driving and handling equipment.

C.  Contaminated gloves shall be disposed of in a red plastic bag and labeled with "Bio-Hazard" labels. See Section 15 "Waste Disposal Guidelines".  Under no circumstances shall contaminated gloves be discarded at the scene and under no circumstances shall contaminated gloves be worn into the cab of the vehicle.

## 8.0   PROTECTIVE EYE GEAR

A.  Protective eye gear shall be worn when body fluids and spillage are visually assessed as excessive or a splash hazard is deemed to exist.  (Eye protection = goggles, mask/shield combinations.)  Eye protection is required when there exists a possibility for exposure to contaminated body fluids from; mucosal membranes, eyes, or nose; where splashes or aerosols of materials are likely to occur.

B.  Contamination of eyes and mouth through blood or body fluids shall be handled as follows:

1.  Flush eye with water for 15 minutes.
2.  Wash mouth out with water.  Rinse with mouthwash.

## 9.0   DAMAGED SKIN PROTECTION

A.  Prior to any contact with patients, first aid employees shall cover all areas of abraded, lacerated, chapped, irritated or otherwise damaged skin with an occlusive (waterproof), adhesive dressing.

B.  First aid employees with extensive skin lesions or severe dermatitis shall consult with his/her supervisor before participating in patient care or handling patient care equipment.

C.  If there is any question regarding whether the employee should work, the Infection Control Officer shall notify the Infection Control Physician for his/her opinion.

## 10.0   HAND WASHING POLICY

A.  Hand washing is one of the most important factors in both prevention and control of infectious diseases.  It is the single most effective preventive measure for employees.  The principle is mechanical removal of dirt and microorganisms by sudsing, friction and flushing with water.

1.  Proper hand washing shall be performed after each patient contact to include the following steps:
    a.  Use soap. (Plain soap and water are adequate for routine hand washing.)
    b.  Work up a lather, using friction for 15 seconds.
    c.  Rinse hands well and dry them with a paper towel.

2.  In field situations, when running water is not available, alcohol-based foam or gel solutions shall be used.  When applying the solution, rub hands together.  The friction causes the solution to evaporate, killing surface organisms.

    **NOTE:** This is a temporary preventative measure until circumstances allow a more thorough hand washing technique to be performed.

3.  Even when gloves are used, hand washing shall take place after removal of gloves.

## 11.0   EMPLOYEE INFECTIONS & EXPOSURE GUIDELINES

A.  In determining the degree of risk associated with a suspected or potential exposure event, employees shall consider the following definitions:

1.  "Occupational Exposure" means reasonable anticipated skin, eye, mucous membrane, or parenteral contact with blood or other potentially infections materials that may result from

the performance of an employee's duties.  <u>Occupational Exposure to Bloodborne Pathogens:</u> <u>Final Rule</u>, Department of Labor, OSHA, 29 CFR Part 1910.1030.

2.  "Exposed" with respect to HIV disease or any other infectious disease, means to be in circumstances in which there is a significant risk of becoming infected with the etiologic agent for the disease involved.  <u>Ryan White Comprehensive AIDS Resources Emergency</u> <u>Act: Emergency Response Employees: Notice</u>, Department of Labor, Centers for Disease Control and Prevention.

3.  "Exposure Incident" means a specific eye, mouth, other mucous membrane, non-intact skin, or parenteral contact with blood or other potentially infections materials that results from the performance of an employee's duties.  <u>Occupational Exposure to Bloodborne Pathogens:</u> <u>Final Rule</u>, Department of Labor, OSHA, 29 CFR Part 1910.1030

4.  "Parenteral" means piercing mucous membranes or the skin barrier through such events as needle sticks, human bites, cuts and abrasions."  <u>Occupational Exposure to Bloodborne</u> <u>Pathogens: Final Rule</u>, Department of Labor, OSHA, 29 CFR Part 1910.1030

5.  <u>Blood:</u>  Human blood, human blood components, and products made from human blood.

6.  <u>Bloodborne Pathogens:</u>  Pathogenic microorganisms that are present in human blood and can cause disease in humans.  Theses pathogens include, but are not limited to, Hepatitis B virus (HBV) and human immunodeficiency virus (HIV).

7.  <u>Contaminated:</u>  Presence or the reasonably anticipated presence of blood or other potentially infectious materials on an item or surface.

8.  <u>Other Potentially Infectious Materials</u> (OPIM) Include: 1) the following human body fluids: semen, vaginal secretions, cerebrospinal fluid, synovial fluid, pleural fluid, pericardial fluid, peritoneal fluid, amniotic fluid, saliva, any body fluid that is visibly contaminated with blood, and all body fluids in situations where it is difficult or impossible to differentiate among body fluids; and, 2) any unfixed tissue or organ (other than intact skin) from a human (living or dead); (NOTE: Urine and feces are not considered infectious unless contaminated with blood.)

B.  Some general <u>examples of exposures</u> include:

-  contaminated needle sticks.
-  blood or body fluid contact with employee's mucus membrane of eyes, nose, or mouth.
-  blood or body fluid contact with non-intact skin.
-  cuts with sharp instruments covered with blood or body fluids.
-  any injury sustained while cleaning contaminated equipment

C.  Employees who know they have <u>been exposed,</u> or possibly exposed, to a communicable disease shall:

1.  Take immediate action to limit further exposure.
2.  Restrict the number of personnel in contact with the patient to those essential for patient treatment.
3.  Advise any personnel on the scene who may be at risk of exposure (e.g. police, EMS) of the potential exposure risk.  **This information shall be exchanged in a discreet and confidential manner**.  All patient related information must be considered confidential.
4.  Initiate proper wound care, if applicable.
5.  Initiate proper decontamination of clothing and supplies.
6.  If there is any doubt whether an exposure has occurred, the incident shall be discussed with the Infection Control Officer.

D.  <u>Exposure Documentation:</u>

1.  The immediate supervisor of the exposed employee will make sure that the following forms are completed and forwarded to the Infection Control Officer within 24 hours of the incident:

-  Exposure Report
-  Quick Fax Workers' Compensation Form

E.    Notification Procedure

    1.    The employee is responsible for notifying his/her supervisor ASAP after the exposure has taken place.

    2.    The employee's supervisor shall immediately notify the Infection Control Officer.

    3.    Should the Infection Control Officer's investigation reveal that an exposure has occurred, the Infection Control Officer shall notify;

        -    the attending ER physician receiving the suspected source patient, if any
        -    the Infection Control Physician's office

        **NOTE:  NOTIFICATION OF PHYSICIAN(S) RECEIVING SOURCE PATIENTS MUST TAKE PLACE AS SOON AS POSSIBLE AND PRACTICAL.  The goal is to notify the attending physician before the source patient is discharged or transferred from the emergency department.**

F.    Verification Procedure:

    1.    The Infection Control Officer shall be responsible for the follow up with the receiving hospital if lab tests were required from source patients that were transported to that facility.

    2.    The Infection Control Officer shall have the hospital notify the Infection Control Physician of the test results.

    3.    The Infection Control Physician will notify the exposed employee if further treatment is needed.

G.    Treatment:

    1.    Treatment is medical care given to reduce the chance of contracting a communicable disease after an exposure.  The type and timing of treatment varies with different diseases.  Depending on the disease, treatment may be short-term or long-term.

        **NOTE: In the absence of an injury requiring emergency treatment, initiation of exposure follow up treatment is rarely an emergency situation.  The Infection Control Physician should be used for ALL non-emergency treatment involving exposures.**

    2.    Diseases that usually require post-exposure treatment include but are not limited to:

        -    HIV
        -    Hepatitis B
        -    Hepatitis C
        -    Meningitis
        -    Tuberculosis
        -    Syphilis

    3.    All post-exposure testing will be performed by the Infection Control Physician.  The testing should be done as soon as possible, **but not later than 72 hours from the exposure.**

    4.    An exception to the above directive may occur when the exposure is in conjunction with an injury, such as a laceration, or any injury that requires prompt treatment by emergency room staff.  In such cases the initial testing and treatment should be done simultaneously.

    5.    A second exception may occur on weekends and holidays, when the Infection Control Physician's office may be closed.  In this case the closest emergency medical facility should be used.

H.  Occupational <u>exposures to an unknown source,</u> or with a known contamination source, should be handled as follows:

1.  Employee shall immediately notify his or her supervisor of the incident.
2.  The Infection Control Officer shall be immediately notified of the incident.
3.  The Infection Control Officer shall, as soon as possible, contact the emergency department attending physician at the hospital receiving the source patient, whose responsibility it shall be to take such actions as may be necessary to determine the risk of infection to the exposed employee, as outlined in the Ryan White Act.
4.  The Infection Control Officer will contact the Infection Control Practitioner at the receiving hospital to determine whether the patient is a carrier of, or infected with, HIV, Hepatitis B, Hepatitis C, or syphilis.  The Infection Control Officer will ask that serologic testing be done using the Source Testing Request Form, if the above is **not known.**
5.  Determination of risk will be based on:

    a.  Interview of patient
    b.  Interview of patient's physician
    c.  Review of patient's chart

6.  The infection control practitioner at the receiving hospital will be asked to supply the Infection Control Physician with the results of the source patient's test results.
7.  According to the Code of Virginia, Section 32.1-45.1, blood will be drawn from the source patient and the following tests completed:

    a.  Hepatitis B surface antigen (HbsAg)
    b.  Hepatitis B core antibody (HB$_c$Ab)
    c.  Hepatitis C
    d.  HIV antibody I & II
    e.  VDRL and RPR (syphilis test)

8.  The above tests will be performed at the expense of James City County.
9.  The exposed employee should be interviewed regarding any history of Hepatitis or HIV, risk factors for exposure to Hepatitis B or HIV, and Hepatitis B immunization status.  The following blood tests will be requested:

    a.  HbsAg (antibody titer to Hepatitis B surface antigen)
    b.  HIV antibody (SUDS or ELISA)
    c.  Any employees receiving a documented exposure from a Hepatitis B positive patient or any unknown source should have an additional Hepatitis B antibody test done six weeks post exposure.
    d.  The HIV anti-body test needs to be re-drawn for follow up testing at three and six month intervals.
10. The results of these tests will be provided to the employee with counseling from the Infection Control Physician.  The results of these tests will remain in **strict confidence** between the employee and the Infection Control Physician.  The employee will provide his/her supervisor with information necessary to comply with worker's compensation laws, and other Department policies only.

## 12.0   <u>VEHICLE/EQUIPMENT/FLOOR CLEANING & DISINFECTION</u>

In the event a County vehicle is involved in an accident and blood or other body fluids need to be cleaned in the vehicle the following procedures will be followed:

A.  <u>Cleaning</u> is defined as the physical removal of dirt and debris.  Soap and water should be used, combined with scrubbing action.  The scrubbing action is the KEY to rendering all items safe.  Cleaning must take place prior to any required disinfection.

B.  <u>Disinfection</u> is reducing the number of disease-producing organisms by physical or chemical means.  Employees should clean all items with soap and water, and disinfect with the provided disinfectant solution.

C.  Employees should <u>inspect equipment</u> and vehicle surfaces observing for blood, tissue or other residue soiling the equipment.

D.  <u>Cleaning & Disinfection</u>

    1.  Cleaning Definitions

        a.  Cleaning is the physical removal of organic material from objects using water with detergent.

        b.  Disinfecting is a process of killing an infection outside the body by chemical or physical means.

    2.  Cleaning Agents

        a.  Disinfectant soap shall be used to clean.

        c.  Chlorine bleach solution (1:100) is recognized as a very effective bactericidal agent, and may be used in certain specific applications, as indicated elsewhere in these procedures.

E.  Employees <u>shall wear</u> utility gloves during the cleaning procedure.

F.  <u>Utility gloves</u> shall be disinfected for re-use if the integrity of the glove is not compromised.  Utility gloves must be discarded if they are cracked, peeling, discolored, torn, punctured, or exhibit other signs of deterioration.

**13.0  <u>BLOOD SPILLS</u>**

A.  <u>Blood spills</u> can be hazardous since the Hepatitis-B virus can survive for long periods of time on surface.  Cleaning blood-contaminated areas is crucial, and shall be performed before any other vehicle areas are cleaned.

    1.  Wear utility gloves.

    2.  Collect all gross quantities of blood by mopping or absorbing prior to cleaning the area using paper towels, rags, etc.

    3.  Clean all areas covered with blood with a disinfecting agent.

    4.  Large blood spills shall be cleaned as previously described, or washed into the storm drain system with copious quantities of water.

        **NOTE:  Cleanup should not interfere with the actions and investigation of the Police Department.  Always check with the Officer on-site before initiating cleanup.**

    5.  Refer to Section No. 16 for guidelines on cleaning clothing contaminated with blood.

**14.0  <u>PATIENT CLOTHING</u>**

A.  Grossly <u>soiled clothing</u> for any patient shall be handled as follows:

    1.  Wear protective attire if situation warrants (i.e., gloves/mask).  If clothing is heavily soiled, these shall be worn.  Gloves shall be worn whenever handling used linen.

 2. Gently fold soiled linen so contamination is inside.  Take care not to shake and create aerosols.  If soiled linen cannot be folded with dry surface out, wrap it with another dry linen article.
 3. Give clothing to EMS personnel indicating that it belongs to the patient.

## 15.0   WASTE DISPOSAL GUIDELINES

A.   Solid Waste:

 1. Lightly contaminated dressings, paper towels, tissues, etc., are not classified as regulated waste, and therefore may be safely disposed of in the regular trash.
 2. The trash shall be disposed of within twenty-four (24) hours.
 3. At **NO TIME** shall trash, medical debris or any other articles used by County employees be left at a scene or incident.
 4. Larger quantities of solid waste such as dripping towels, bandages, etc. should be placed in a clear plastic bag and labeled with a "Bio-Hazard Waste" label.  Fire/EMS will remove these bags.

B.   Liquid Waste:

 1. Liquid waste can safely be disposed of in the city sewer system.

C.   Syringes:

 1. Syringes and other sharp objects should only be used by trained medical personnel.

 2. If syringes are occasionally found on County property, sharp disposal containers should be obtained from Fire/EMS.  Syringes should not be put in the trash.

## 16.0   CONTAMINATED CLOTHING

A   Contaminated clothing shall be changed as soon as possible.

B.   Small stains from blood or body fluids shall be "spot cleaned" and then disinfected.  The stain shall initially be cleaned with a mild detergent and water.  Utility gloves shall be worn and cleaning shall take place at a sink that is not used in food preparation or for personnel hygiene.

C.   Contaminated clothing can be washed in standard washing machines and dryers at work locations using detergent and hot water.

D.   Contaminated clothing beyond this point should be bagged and the Infection Control Officer should be contacted for instructions.

**Attachment A**
**BLOODBORNE PATHOGENS**
**EXPOSURE CONTROL PLAN**
**Vaccine Declination (Mandatory)**


       I understand that due to my occupational exposure to blood or other potentially infectious materials I may be at risk of acquiring the Hepatitis B Virus (HBV) infection.  I have been given the opportunity to be vaccinated with Hepatitis B vaccine, *at no charge to myself.*  However, I decline the Hepatitis B vaccination at this time.  I understand that by declining this vaccine I continue to be at risk of acquiring Hepatitis B, a serious disease.  If, in the future, I continue to have an occupational exposure to blood or other potentially infectious materials and want to be vaccinated with Hepatitis B vaccine, I can receive the vaccination series *at no charge to me.*


_____
*Signature*


_____
*Printed Name*


_____
*Position*


_____
*Social Security Number*


_____
*Witness*


_____
*Date*


BBP(4/30//00)11

**Attachment B**
**BLOODBORNE PATHOGENS**
**EXPOSURE CONTROL PLAN**
**Exposure Report**

Employee Name:_____ Social Security #:_____-_____-_____

Address:_____

Phone Numbers: Home-(___)_____-_____   Work-(___)____-_____   Ext. #:_____

Date of Birth:_____-___-_____ ; Marital Status:_____; Number of Dependent Children:_____

Date of Exposure:_____   Time of Exposure:_____(a.m.)(p.m.)

Source of Exposure:  Individual (  ) (*complete below*);  Other (  ):_____

Source of Exposure (Individual):_____  Sex: M ( ) F ( )  Age:_____

Address: _____

Suspected/Confirmed Disease: _____

Medical Facility Transported to: _____

Transported by EMS Unit: Yes (   )   No ( )
EMS Incident #: R-_____ EMS Unit #: M-_____; Operator: _____  Medic in Charge:_____

What were you exposed to?: Blood ( )Other ( )_____

How were you exposed?:  Needle stick (  );  Splash (  );  Other (  ):_____

What part(s) of your body was exposed? (*Be specific*) _____
_____

Describe how exposure occurred. (*Be specific*) _____
_____

Were you wearing personal protective equipment (gloves, masks, etc.)?  Yes ( )  No ( ); If no, why not? If yes, what type:

_____
_____

Did you seek/receive medical attention?  Yes ( ) No ( );
Date/Time:_____ Where:_____


Work Area Supervisor notified? Yes ( ) No ( );
Date/Time:_____ Supervisor Name:_____


Worker's Compensation forms completed?  Yes ( )  No ( )
Date:_____

**Additional information/Comments**




******************************************************************************

Employee's Signature: _____ Date: _____


Supervisor's Signature: _____ Date: _____


Original to Supervisor with copy to Infection Control Officer for follow-up recommendations



BBP(4/30//00)13

**Attachment C**
**BLOODBORNE PATHOGENS**
**EXPOSURE CONTROL PLAN**
**Health Care Professional's Opinion**
**for Post Exposure Evaluation and Follow-Up**

_____  Employee has been informed of the results of the post exposure evaluation.

_____  Employee has been informed about any medical conditions resulting from exposure to blood or other potentially infectious materials which require further evaluation or treatment.

_____
*Health Care Professional*

_____
*Date*

_____
*Employee Signature*

_____
*Date*

Please return to:     James City County
Human Resource Department
P.O. Box 8784
101-A Mounts Bay Road
Williamsburg, VA  23187-8784
(757) 253-6680

BBP(4/30//00)14

**Attachment D**
**BLOODBORNE PATHOGENS**
**EXPOSURE CONTROL PLAN**
**Training Outline**


I.      Introduction

II.     Objectives

       A.   OSHA regulations, the impact on James City County/JCSA.

       B.   Epidemiology & symptoms of bloodborne diseases

       C.   Universal precautions

       D.   Hepatitis B Vaccine

       E.   Exposure incident reporting procedures

III.    OSHA Regulations/Impact on County Operations

       A.   Purpose for an Exposure Control Plan

       B.   Availability of Exposure Control Plan for review

       C.   Categories of employees who might be at risk

       D.   County vs. Employee responsibilities

       E.   Fire/EMS Assistance

IV.     Epidemiology & Symptoms of Bloodborne Diseases

       A.   Hepatitis B

       B.   AIDS

       C.   Other

V.      Universal Precautions

       A.   Purpose

       B.   Definition

BBP(4/30//00)15

VI.     Hepatitis B Vaccine

    A.   Safety

    B.   Method of administration

    C.   Benefits of Vaccination

    D.   Cost

VII.    Exposure Control Plan for James City County/JCSA

    A.   Purpose

    B.   Scope of coverage

    C.   Highlights of plan

        1.   Personal protective equipment

            a.   disposable gloves
            b.   "pocket mask" with one-way valve
            c.   Alcare foaming alcohol handwash
            d.   other: (towlettes, etc.)

        2.   Post exposure evaluation and follow-up

            a.   Report form (completed by employee)

                1)  copy to immediate supervisor

                2)  copy to Infection Control Officer

        3.   Clothing/vehicle decontamination

VIII.   Recordkeeping & Training Requirements

    A.   Confidentiality

    B.   Vaccinations record

    C.   Results of medical tests & follow-up requirements (maintained by Human Resources Department for duration of employment plus 30 years)

    D.   Training records (3 years)

IX.     Question & Answer Period