**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

MICHAEL TRENTON RUSK,

Plaintiff,

v.

JAMES CITY COUNTY,

*and*

JAMES CITY COUNTY POLICE DEPARTMENT,[1]

Defendants.

Case No. 4:24-cv-93

**OPINION & ORDER**

Plaintiff Michael Rusk, a former police officer, filed this action after allegedly being sexually harassed by his immediate supervisor. The plaintiff, who was terminated from his position several months after he shot and injured that supervisor, claims that he experienced a hostile work environment based on his sex; that he was retaliated against for opposing his employer's unlawful employment practices; and that he suffered violations of his federal and constitutional rights. Defendant James City County moved to dismiss the case for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF Nos. 40 (motion), 42 (memorandum).

[1] The plaintiff originally sued James City County and the James City County Police Department, but he has since merged his claims to name James City County as the sole defendant. *See* ECF No. 43 at 6. Therefore, the Court **DIRECTS** the Clerk to terminate the James City County Police Department as a defendant in this case.

Despite the Court's skepticism that the plaintiff's hostile work environment claim will survive at future stages of litigation, he plausibly alleges the elements of that claim to withstand a Rule 12(b)(6) motion. However, his wrongful termination claim is time-barred, and the Court also concludes that the plaintiff fails to state a claim for municipal liability under 42 U.S.C. § 1983. Therefore, for the reasons stated herein, the motion will be granted in part and denied in part; only Count I will be allowed to proceed.

## I. BACKGROUND[2]

Rusk began working as a police officer for the County's police department in March 2021. ECF No. 35 ¶ 76. The plaintiff's immediate supervisor was Christopher Gibson. *Id.* ¶ 77. In December 2021, the plaintiff alleges that Gibson began sexually harassing him on and off-duty, *id.* ¶ 83, including through physical touching, stalking, sexual innuendos, and inappropriate text exchanges. *Id.* ¶¶ 84, 106. That harassment allegedly escalated into Gibson attempting to initiate a sexual relationship starting in fall 2022, *id.* ¶ 111, at which point the plaintiff alleges he verbally reported his concerns regarding the harassment to other County police officers. *Id.* ¶¶ 126, 143, 144, 153. The plaintiff concedes that he did not use the County's preferred methods for reporting workplace harassment. *Id.* ¶¶ 215–16.

[2] The plaintiff's complaint is not numbered consistently, and there are several inaccuracies and duplicates throughout the filing. The Court will provide paragraph citations whenever possible, but where the plaintiff's numbered citations are unclear, it will provide a page citation as well.

According to the plaintiff, after Gibson made unwanted sexual advances toward him on January 25, 2023, the plaintiff shot Gibson. *See* ECF No. 35 ¶¶ 113–23 (describing the shooting incident). The County then immediately placed the plaintiff on unpaid suspension. *Id.* ¶ 252 at 41. After a state grand jury indicted him, *id.* ¶ 254 at 41, the plaintiff made public comments about the sexual harassment he claims he experienced and submitted an inquiry to the Equal Employment Opportunity Commission regarding that harassment. *Id.* ¶¶ 255–57. A few months later, the County conducted an investigatory interview with the plaintiff in August 2023 regarding the January 2023 incident. The plaintiff alleges the purpose of this interview was not to investigate the incident but "to find pretextual grounds" for discharging him. *Id.* ¶¶ 260, 263. He filed his first charge of discrimination with the EEOC on September 25, 2023. *Id.* ¶ 264. He received a right-to-sue letter on March 27, 2024. *Id.* ¶ 266.

On April 29, 2024, the County issued a recommendation of termination based on six policy violations. ECF No. 35 ¶ 267. This was ultimately narrowed to three violations in a communication that the plaintiff allegedly received regarding his termination on May 8, 2024, *id.* ¶ 268, and in a formal letter on May 16, 2024, ECF No 1-11 at 1. After receiving those notices, the plaintiff went through the County's administrative grievance procedure for adverse personnel decisions. *Id.* ¶ 270. The appeal panel upheld the termination decision. *Id.* ¶ 277. On June 25, 2025, the plaintiff filed a charge of discrimination with the EEOC regarding his termination. *Id.* ¶ 286.

The plaintiff brings three claims: hostile work environment based on sex discrimination under Title VII of the Civil Rights Act of 1964 (Count I), wrongful termination and retaliation under Title VII (Count II), and violations of various federal rights brought under 42 U.S.C. § 1983 (Count III).

## II. LEGAL STANDARD

"To survive a motion to dismiss" under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. When considering a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but the court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

### A. Hostile Work Environment – Sexual Harassment

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [their] . . . terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To allege a hostile work environment based on sexual harassment under Title VII, a plaintiff must show "(1)

unwelcome conduct; (2) that is based on the plaintiff's sex []; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. City of Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (citation and quotation marks omitted).

The plaintiff alleges that he experienced a hostile work environment when he was "exposed to both verbal and physical conduct of a sexual nature, sexual advances, vulgar and crude language, unwelcome sexual harassment, [and] a quid pro quo for the sexual conduct." ECF No. 35 ¶ 39. The County argues that the plaintiff welcomed the conduct, or at the very least, that he did not sufficiently communicate that the conduct was unwelcome. ECF No. 42 at 10. It also argues that the conduct was not severe or pervasive enough to be abusive. *Id.* at 11.

The Court concludes that the plaintiff plausibly alleges a hostile work environment based on sex. On a motion to dismiss, the Court is required to make all reasonable inferences in favor of the plaintiff, and here he pleads adequate facts to satisfy each element of the claim at this early stage.

#### ***i. Unwelcome Conduct***

The first prong of a hostile work environment claim requires a plaintiff to show that the conduct at issue was unwelcome. *Okoli*, 648 F.3d at 220. Alleging unwelcome conduct "is not a high hurdle," *Gordon v. Heath*, 179 F.4th 263, 272 (4th Cir. 2026) (citation and quotation marks omitted), and a plaintiff can show that conduct was unwelcome merely by showing that they "voic[ed] [their] objection to the alleged

harasser or to the employer." *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 329 (4th Cir. 2018); *see also Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 117 (4th Cir. 2021) ("Conduct is unwelcome when it continues after the employee sufficiently communicates that it is unwelcome.") (citation and quotation marks omitted).[3]

The plaintiff alleges multiple times that the conduct was unwelcome. *See* ECF No. 35 ¶¶ 7, 17, 30, 33, 35, 36, 39, 83, 106, 160, 183, 184, 189, 211. It is possible that these allegations reflect the plaintiff's attitude towards the conduct *now*, not necessarily at the time it occurred, but the plaintiff still alleges that he reported Gibson's conduct to his supervisor. *See id.* ¶¶ 126, 153. Even though the County may be correct that the plaintiff's interactions with Gibson "show that the flirtation was mutual and the affection reciprocal," ECF No. 42 at 10, the plaintiff still alleges that he "communicate[d] that it [was] unwelcome" to his employer. *Roberts*, 998 F.3d at 117. For now, that is enough to show that the plaintiff made his opposition to the

[3] While a plaintiff can allege that conduct was unwelcome by voicing opposition to it, the Fourth Circuit also recognizes that some conduct is inherently unwelcome, and therefore requires no expression of discontent. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 314 (4th Cir. 2008). Inherently unwelcome conduct is activity that is "difficult to see how any employee would welcome." *Id.* (repeated criticism of religious faith constitutes inherently unwelcome conduct); *see also Strothers v. City of Laurel, Md.*, 895 F.3d 317, 328–29 (4th Cir. 2018) (as does an employer's "constant surveillance, badgering, and criticism").

The Court cannot consider the conduct at issue here to be inherently unwelcome, because not *all* employees would be opposed to the kind of activity—even sexual in nature—that the plaintiff alleges. *See, e.g.*, *Joiner v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 400, 409 (W.D.N.C. 2000) ("It simply is not illegal to flirt in the workplace, to hug in the workplace, or even kiss in the workplace. These are very ordinary things that people do and are not *per se* intimidating, hostile, humiliating, or offensive. It is only when such conduct is both unwelcome and pervasive that they become unlawful.").

conduct known. While the plaintiff's voluntary participation in this conduct may be relevant in further assessing whether the conduct was unwelcome, that "turns largely on credibility determinations" that the Court must refrain from making on a motion to dismiss. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 58, 68 (1986) (explaining that the inquiry of "whether respondent by [their] conduct indicated that the alleged sexual advances were unwelcome" poses "difficult problems of proof").

***ii. Based on Sex***

After plausibly alleging unwelcome conduct, a plaintiff must allege that it was based on their protected status—in this case, the plaintiff's sex. *Okoli*, 648 F.3d at 220. Here, the plaintiff alleges that Gibson harassed him based on his "male sex and heterosexual sex orientation." ECF No. 35 ¶ 189. A plaintiff alleging sexual harassment under Title VII in this manner must show that the harassment "would not have occurred *but for* [his] sex." *Webster v. Chesterfield Co. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022) (emphasis in original); *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001) ("Since a hostile work environment claim is fundamentally a sex discrimination claim, a male plaintiff must establish that the harasser discriminated against him, i.e., treated him differently or with greater hostility, because he is a man.").

A plaintiff alleging same-sex sexual harassment, as the plaintiff does here, must allege "that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* [based on] [] sex." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see also English v. Pohanka*

*of Chantilly, Inc.*, 190 F. Supp. 2d 833, 840 (E.D. Va. 2000) ("There is a significant distinction between harassment that is sexual in content and harassment that is sexually motivated, and Title VII is only concerned with the latter."). Title VII is not a "general civility code." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation and quotation marks omitted). Therefore, courts endeavor to avoid inadvertently making "ordinary socializing in the workplace [] such as male-on-male horseplay or intersexual flirtation" unlawful under Title VII merely because of its sexual undertones. *Oncale*, 523 U.S. at 81.

Horseplay aside, a plaintiff claiming same-sex sexual harassment has several ways to show that the conduct they experienced was, in fact, sex-based discrimination.[4] First, they may assert that their harasser was gay[5] and that the harasser made "explicit or implicit proposals of sexual activity."[6] *Oncale*, 532 U.S. at 80. They can claim that the purported harasser treated members of both sexes

---

[4] In 2021, the Fourth Circuit considered same-sex sexual harassment claims in a published opinion. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111 (4th Cir. 2021). The court concluded that while the ways for plaintiffs to allege harassment as offered by the Supreme Court in *Oncale v. Sundowner Offshore, Servs., Inc.*, 523 U.S. 75 (1998) are still good law, they are non-exhaustive. *See Roberts*, 998 F.3d at 120 (recognizing "that additional forms of proof beyond those identified in *Oncale* are available to plaintiffs to demonstrate that the same-sex harassment they suffered was based on sex").

[5] Though "homosexual" has a technical meaning, it is most commonly used derogatorily to refer to gay men. *Oncale* uses it in that sense, but this Court will not. The parties are cautioned to be mindful of this distinction as this litigation proceeds.

[6] This approach ignores the fact that people can be sexually and romantically attracted to both men *and* women, but the Court is bound to follow it regardless.

differently in a mixed-sex workplace. *Id.* at 80–81. They can allege the harasser's "general hostility" to the presence of the victim's sex in the workplace. *Id.* at 80. And they can also represent that the plaintiff was discriminated against because they were "perceived as not conforming to traditional male stereotypes." *Roberts*, 998 F.3d at 121.

Here, the plaintiff states that he was sexually harassed because of his male sex. ECF No. 35 ¶¶ 189–90. However, he does not expressly allege that women were treated more favorably,[7] nor does he claim that his nonconformity with traditional male stereotypes resulted in his discrimination based on sex.[8] He also does not assert that his harasser had any general hostility to the presence of men in the workplace. Still, the Court finds that the plaintiff plausibly alleges at least one viable basis for a same-sex sexual harassment claim that can withstand a motion to dismiss: Gibson

---

[7] The plaintiff maintains that "[u]nder a similar fact pattern, if this was a sexual assault and harassment claim of a man against a woman, police investigators would open an investigation immediately." ECF No. 35 ¶ 209. However, the Court does not consider this to be a genuine allegation that women in his workplace were treated more favorably, namely because the plaintiff provides no other allegations about how women were treated differently than men in his workplace elsewhere in his complaint.

[8] The plaintiff avers that Gibson "chose to sexually harass and assault" him because he was a "vulnerable single male." ECF No. 35 ¶ 190. Perhaps if the plaintiff had pleaded that he was unusually vulnerable and sensitive, that might lead to an inference of sex discrimination on a theory that he did not conform to traditionally male character traits. *See Roberts*, 998 F.3d at 121. But the plaintiff does not offer any other facts to this effect. Moreover, he alleges that his "heterosexual lifestyle" was partially why the defendants were indifferent to his suffering. ECF No. 35 ¶ 246. The second amended complaint appears to allege that a "heterosexual lifestyle" is synonymous with "traditional" cisgender male character traits, but any such allegation does not impact the Court's analysis here.

may have been gay, and the plaintiff adequately pleads that Gibson proposed sexual activity with the plaintiff. The plaintiff offers multiple text exchanges with Gibson that reference proposed sexual activity specifically targeted to him. *See* ECF No. 1-5. He also asserts that Gibson touched him repeatedly, *see, e.g.*, ECF No. 35 ¶ 84, and attempted to initiate sexual contact at least once, *see id.* ¶¶ 114, 115, 118 (describing alleged sexual assault). These allegations are enough to raise a plausible inference that Gibson "harbored—indeed, pursued—a sexual interest" in him. *Lack*, 240 F.3d at 261. At this stage, that is enough for the plaintiff to allege discrimination based on his sex.

***iii. Sufficiently Severe or Pervasive***

Next, a plaintiff must allege that the hostile work environment was characterized by "conduct . . . which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and [] create an abusive work environment." *Okoli*, 648 F.3d at 220; *see also EEOC v. Sunbelt Rentals*, 521 F.3d 306, 316 (4th Cir. 2008) (requiring a workplace be replete with conduct "aimed to humiliate, ridicule, or intimidate" to be actionable under Title VII) (citation and quotation marks omitted). Whether a work environment is sufficiently hostile "is judged from the perspective of a reasonable person in the plaintiff's position," and is assessed on factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Boyer-Liberto v.*

*Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015) (citation and quotation marks omitted).

The plaintiff alleges daily nonconsensual physical and non-physical conduct including handholding, genital touching, stalking, grooming, and sexual comments. *See* ECF No. 35 ¶¶ 84, 90. He claims that this conduct made him feel threatened and humiliated. *Id.* ¶¶ 90, 205. The plaintiff also pleads that the harassment substantially interfered with his work performance, *id.* ¶ 151, specifically by making him fearful at work, *id.* ¶ 101; compelling him to invite other officers to accompany him on breaks because he feared time alone with Gibson, *id.* ¶ 99; and being made to cover the same zone as Gibson while at work and having his location tracked as a result, *id.* ¶¶ 96–98. The County concedes that these actions were unprofessional, but argues that because the plaintiff consented to them, they cannot be sufficiently severe or pervasive. *See* ECF No. 42 at 10–11.

The plaintiff plausibly alleges sufficiently severe or pervasive conduct. The plaintiff claims he was subjected to "physically threatening or humiliating" conduct, *Boyer-Liberto*, 786 F.3d at 277, such as repeated touching of his genitals, ECF No. 35 ¶ 84. Repeated touching, particularly if accompanied by undertones of sexual intent, enables a plaintiff to demonstrate a sufficiently severe or pervasive working environment on a motion to dismiss. *See, e.g.*, *Okoli*, 648 F.3d at 221 ("repeated propositioning and physical touching" can show requisite severity or pervasiveness). Moreover, the plaintiff maintains that the conduct caused him intense emotional

distress. *See* ECF No. 35 ¶¶ 85, 215 (alleging extreme mental pain and distress).[9] This too weighs in favor of finding that he experienced sufficiently severe or pervasive harassment, particularly on a motion to dismiss. *See, e.g.*, *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 336 (4th Cir. 2010) (conduct qualified as "severe and humiliating" when it caused "significant emotional distress").

***iv. Imputable to the Employer***

Finally, a plaintiff must allege sufficient facts to plausibly impute the sexual harassment they experienced to their employer. *Bazemore v. Best Buy*, 957 F.3d 195, 201 (4th Cir. 2020). When a supervisor allegedly harasses an employee, "the employer is strictly liable" when that harassment "culminates in a tangible employment action." *Ray v. Int'l Paper Co.*, 909 F.3d 661, 667 (4th Cir. 2018) (citation omitted). A tangible employment action must "constitute[] a significant change in employment status," including "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (citation and quotation marks omitted).

---

[9] The Court cannot determine whether the plaintiff experienced emotional distress *during* these events as he claims here, or only as he reflects on them retrospectively. That is a credibility determination that the Court cannot make on a motion to dismiss. *See Bermeo v. Andis*, 163 F.4th 87, 94 (4th Cir. 2025).

The County argues that pursuant to the "exhibit-prevails rule," the Court should accept the contents of the plaintiff's documents over conflicting allegations in his complaint. *See* ECF No. 42 at 7 (citing *So. Walk at Broadlands Homeowner's Ass'n Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 182 (4th Cir. 2013) (citation omitted)). To that end, the County argues that the plaintiff's text messages show he did not actually perceive Gibson's conduct to be severe or pervasive. ECF No. 42 at 10. But that too is a credibility determination that the Court is not poised to resolve now.

The plaintiff alleges that Gibson's harassing behavior made him feel scared and intimidated in the workplace, ECF No. 35 ¶ 101, and anxious that he would not receive positive employment reviews from Gibson if he did not acquiesce to his conduct, *id.* ¶ 150. But neither allegation, even if they occurred as a direct result of Gibson's harassment, qualifies as a "tangible employment action."[10]

When a plaintiff fails to sufficiently plead that they experienced a tangible employment action because of their supervisor's harassment—as is the case here—an employer can avoid liability by asserting the *Faragher/Ellerth* affirmative defense that "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Boyer-Liberto*, 786 F.3d at 278 (citation omitted). Ordinarily, courts refrain from considering affirmative defenses on a 12(b)(6) motion because "a motion to dismiss . . . which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). But when the facts required to make an affirmative defense "clearly appear on the face of the complaint," *id.* (cleaned up), then those defenses can be considered even on motions to dismiss. *See, e.g.*, *Dao v. Faustin*, 402 F. Supp. 3d 308, 331 (E.D. Va. 2019) (district

[10] While the plaintiff's termination would obviously constitute a tangible employment action, the plaintiff does not appear to allege that his termination was the direct result of Gibson's harassment, or that Gibson ordered him to be fired. The Court must accept all factual allegations contained in a complaint as true and draw all reasonable inferences in favor of the plaintiff on a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(6). However, the Court need not adopt conclusions such as these, which require several inferential leaps beyond the facts alleged in the complaint itself.

court allowed employer to make affirmative defense to imputability on a Rule 12(b)(6) motion).

However, the Court finds that there are not sufficient facts on the face of the plaintiff's complaint that enable it to assess the County's affirmative defense now. First, the County argues that because the plaintiff cites the County's harassment policy in his complaint, and "[d]istribution of an anti-harassment policy provides compelling proof that the [employer] exercised reasonable care in preventing and promptly correcting sexual harassment," it has satisfied the first prong of its affirmative defense. ECF No. 42 at 14 (quoting *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 266 (4th Cir. 2001) (cleaned up)). That may be true, but the plaintiff also alleges that he reported harassment to up to eight of his fellow employees. *See* ECF No. 35 ¶ 165. That casts plausible doubt on whether the County can, from the basis of the complaint and its citation to the harassment policy alone, show it "exercised reasonable care to prevent *and correct* any harassing behavior." *Boyer-Liberto*, 786 F.3d at 278 (emphasis added).

Second, the County argues that the plaintiff unreasonably failed to take advantage of the preventative or corrective opportunities it provided because he did not report Gibson's conduct using the County's written complaint form. *See* ECF No. 42 at 14; ECF No. 35 ¶ 216 (plaintiff concedes he did not use "other arbitrary methods" of reporting harassment). The County also posits that plaintiff did not provide enough detail about the harassment at issue in his reports to his superiors.

*See* ECF No. 42 at 15–16 (plaintiff did not sufficiently communicate that the misconduct at issue involved sexual harassment).

Neither point persuades the Court. Though "[e]vidence that the plaintiff failed to utilize the [employer's] complaint procedure will *normally* suffice to satisfy [its] burden under the second element of the defense," it is also true that "*Faragher* and *Ellerth* command that *a victim of sexual harassment report the misconduct,* not investigate, gather evidence, and then approach company officials." *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 269 (4th Cir. 2001) (cleaned up). On a motion to dismiss, the plaintiff's plausible allegation that he reported misconduct—and that he made a "concerted effort to inform the employer that a problem exists"—leads the Court to conclude that the County has not met its burden on this element. *Barrett*, 240 F.3d at 268 (citation omitted); *see also Okoli*, 648 F.3d at 224 n.8 (plaintiff does not need to include "magic words" like "sex" or "sexual" to effectively report sexual harassment).

Therefore, the County has not shown, and the Court declines to conclude now that the County is entitled to the *Faragher/Ellerth* affirmative defense based on factual allegations present in the plaintiff's complaint. As a result, the plaintiff plausibly imputes liability for Gibson's conduct to the County. And having met each of the four elements for a hostile work environment claim, the Court denies the County's motion to dismiss Count I.

**B. Wrongful Termination – Retaliation**

The plaintiff also claims he was wrongfully terminated in retaliation for opposing what he perceived as unlawful employment practices. The County argues that any claims related to the plaintiff's termination are time-barred because he did not timely file a charge of discrimination with the EEOC. The Court finds that the plaintiff's complaint pleads sufficient facts on its face to consider the County's affirmative defense, and in considering that defense, it reaches the same conclusion as the County: The plaintiff's claim is time-barred.

A plaintiff must timely file a charge of discrimination with the EEOC before bringing a claim under Title VII. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000) ("Before filing suit under Title VII, a plaintiff must exhaust [their] administrative remedies by bringing a charge with the EEOC."). In Virginia, a plaintiff must file their EEOC charge no more than 300 days after the allegedly unlawful employment practice occurred. *See Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002).

Here, the plaintiff filed his EEOC charge on June 25, 2025, ECF No. 35 ¶ 286. The County argues that this was untimely because it was filed more than 300 days after he was allegedly wrongfully terminated, and that the plaintiff is time-barred from bringing his retaliation claim as a result. *See* ECF No. 42 at 18. The plaintiff correctly notes that motions to dismiss usually cannot reach the merits of affirmative defenses, including that a claim is time-barred. *See* ECF No. 43 at 5. However, he concedes that affirmative defenses *can* be reached on a Rule 12(b)(6) motion "if all

facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman*, 494 F.3d at 464 (cleaned up). The plaintiff maintains that his complaint contains insufficient facts for the Court to determine that his claim is time-barred, *see* ECF No. 43 at 18–19, and that the Court must accept as true his allegation that the unlawful employment practice underlying his EEOC charge occurred on September 6, 2024, when he was removed from the County's duty roster after the internal grievance procedure ended. *Id.* at 19–20; ECF No. 35 ¶ 277.[11]

However, the Court does not have to adopt the plaintiff's view of the operative date when the allegedly unlawful employment practice occurred. *See Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted) (courts do not have to accept a plaintiff's "legal conclusions drawn from the facts"). And the facts that the County needs for its affirmative defense—namely, the other dates that corroborate when the plaintiff was terminated—"clearly appear" in the complaint. *Goodman*, 494 F.3d at 464. Therefore, the Court can consider whether a "time bar is apparent." *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005).

Indeed, the plaintiff's complaint clearly alleges that he was first informed by a human resources official that he would be recommended for termination on May 8,

[11] The plaintiff alleges that he filed his EEOC charge "between 286 and 292 days after his employment was terminated, within the 300-day statute of limitations imposed by Title VII." ECF No. 35 ¶ 286. Therefore, it is the plaintiff's view that the limitations period would have started to run either on September 6, 2024, *id.* ¶ 277 (when the plaintiff alleges the grievance panel affirmed his termination), or on September 12, 2024, *id.* ¶ 278 (when the County notified other employees of the plaintiff's termination).

2024. ECF No. 35 ¶ 268.[12] He also claims that he received a memorandum to this effect on May 16, 2024. *See* ECF No. 1-11.[13] The County argues that these dates prove that the plaintiff's claim is time-barred, because the statute of limitations for wrongful termination claims begins to run when an employee learns about their termination—and more than 300 days separate these dates from when the plaintiff filed his EEOC charge on June 25, 2025. *See* ECF No. 42 at 18. The County also argues that the plaintiff's exhaustion of its grievance procedure did not extend the statute of limitations for his wrongful termination claim. *See id.*; *see also Delaware State Coll. v. Ricks*, 449 U.S. 250, 261 (1980) ("[T]he pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods[.]"). The plaintiff, meanwhile, argues that the May 16, 2024 notice did not start the limitations period because he chose to pursue the grievance

---

[12] The County disputes that date as a typographical error, arguing that the final termination recommendation was made on May 16, 2024, not May 8, 2024. ECF No. 42 at 18. The plaintiff, however, says that he was informed on May 8, 2024, that he was recommended for termination in a "letter signed by the Director of Human Resources under Section 7.5(D)(1) of JCCPD's PPP Manual, containing the recommendation for termination." ECF No. 43 at 19.

The Court has not been able to identify that letter in the filings the plaintiff has submitted. However, the Court has erred on the side of affording the plaintiff the benefit of the later of those two dates for purposes of calculating when his statute of limitations began running. Thus, the Court treats May 16, 2024, as the relevant date here.

[13] The Court may consider exhibits to a motion to dismiss if they are integral to the complaint and authentic. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because neither requirement appears disputed here, the Court will consider them.

process for reviewing his termination. *See* ECF No. 43 at 20–23; ECF No. 1-8 at 144 (describing grievance panel process).

The Court concludes that the 300-day window for the plaintiff to bring his retaliation claim began on May 16, 2024. A limitations period for wrongful termination starts running *"when the person was informed that they were being fired,* even if the impacts of that decision were not felt until later." *Foleno v. Norfolk S. Ry. Co.*, No. 2:06-cv-39, 2006 WL 2918946, at *3 (W.D. Va. Oct. 11, 2006) (emphasis added); *see also Green v. Brennan*, 578 U.S. 547, 564 (2016) (summarizing the Supreme Court's jurisprudence that "an ordinary wrongful-discharge claim accrues—and the limitations period begins to run—when the employer notifies the employee he is fired, not on the last day of his employment"); *Price v. Litton Bus. Sys. Inc.*, 694 F.2d 963, 965 (4th Cir. 1982) (statute of limitations on plaintiff's claim began running "when he was told he would be relieved of his position," not "when he finally left the company").

The plaintiff does not offer a compelling reason to depart from this reasoning here. Nor does he explain why the post-termination grievance process that he pursued deviates from the general rule that "the pendency of a grievance . . . does not toll the running of the limitations periods[.]" *Ricks*, 449 U.S. at 261. The only case that the plaintiff cites in support of his argument that the May 16, 2024 recommendation of termination did not start the limitations period is *Reid v. James Madison Univ.*, 90 F.4th 311 (4th Cir. 2024). *See* ECF No. 43 at 20–23. But *Reid* is unpersuasive. The recommendation in that case expressly noted that it could be

appealed, and that the result of the appeal was the final decision. *See Reid*, 90 F.4th at 323. No similar language exists in the May 16, 2024 recommendation of termination that the plaintiff received. *Compare id.* at 317 (plaintiff was told they could "appeal to the vice president, who shall make a final decision within 5 days of any hearing, or if no hearing is granted, within 5 days after the review of the case on the record" (quotation marks omitted)); *with* ECF No. 1-11 ("I am upholding the department's recommendation for termination of your employment, effective close of business May 16, 2024. You have the right to file a grievance regarding this disciplinary action[.]").

As a result, the Court concludes that the statute of limitations on any claims related to the plaintiff's termination began running on May 16, 2024, and elapsed 300 days later, on March 12, 2025. Because the plaintiff filed his charge on June 25, 2025, that charge was untimely, and he is foreclosed from bringing claims based on that termination. ECF No. 35 ¶ 286.[14]

---

[14] The Court also notes that, even if it were able to reach the plaintiff's wrongful termination claim on the merits, the County would be able to offer a strong, legitimate, and non-discriminatory reason for the plaintiff's termination that is not retaliatory in nature: He shot Gibson. *See* ECF No. 42 at 20. A plaintiff can only survive a 12(b)(6) motion if "the employer's explanation does not render the complaint's allegation's implausible." *Barbour v. Garland*, 105 F.4th 579, 590 (4th Cir. 2024) (cleaned up). Thus, "the relevant question is whether the employer's explanation is *so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation* that it renders [the plaintiff's] claim of pretext implausible." *Id.* (cleaned up).

Though the Court cannot reach the plaintiff's retaliation claim on its merits, it must acknowledge that the County's justification for the plaintiff's termination appears to be a sufficiently "sound and unambiguously nondiscriminatory and non-pretextual

### C. Violation of Federal Rights Under § 1983

Finally, the plaintiff alleges that the County deprived him of his constitutional rights, and he now seeks to vindicate those rights under 42 U.S.C. § 1983. *See* ECF No. 35 at 46–50. The plaintiff appears to allege violations of the Equal Protection Clause of the Fourteenth Amendment, *id.* ¶ 245, as well as violations of the Virginia Freedom of Information Act, the Due Process Clause, Title VII, and the First Amendment. *See* ECF No. 43 at 25.

To prevail on a § 1983 claim, a plaintiff must show that they were deprived of a federal constitutional or statutory right and that the deprivation was committed under color of state law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Municipal entities may be liable for these deprivations, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), but only when they are carried out as the "execution of a . . . policy or custom," not "an injury inflicted solely by its employees or agents." *Id.* Accordingly, municipalities can be liable through four ways: (1) an express policy, such as a written regulation, (2) the decisions of someone with final policymaking authority, (3) an omission that manifests "deliberate indifference" to the rights of citizens, and (4) if a constitutionally suspect practice is so persistent and widespread as to constitute a custom or usage with the force of law. *Lytle*, 326 F.3d at 471 (citation omitted).

explanation" for why the plaintiff was fired. *Barbour*, 105 F.4th at 590. Thus, dismissal under 12(b)(6) would likely still be warranted.

The plaintiff appears to allege that he was the subject of a conspiracy to deprive him of his right to information under Virginia's FOIA statute, *see* ECF No. 35 ¶¶ 236–40; ECF No. 43 at 27. He also alleges equal protection violations, claiming that his complaints of misconduct would have been handled differently if he had been a woman and that the County deprived him of his constitutional right to equal protection as a result. *See id.* ¶¶ 249–51. He also alleges that he was subjected to retaliatory wrongful termination in violation of Title VII and the First Amendment because the County ratified the acts of final policymakers with authority over his termination. *See* ECF No. 43 at 28. In sum, he alleges that the County's conduct "was violative and recklessly indifferent to federal laws established to protect [his] rights." ECF No. 35 ¶ 290. For the reasons below, the Court will dismiss Count III because the plaintiff has failed to allege a plausible basis for municipal liability on any of these theories.

***i. Freedom of Information Act***

First, the plaintiff alleges that the County attempted to cover up its misconduct by concealing records that he believes would have produced evidence corroborating his criminal defense with his EEOC complaint. *See* ECF No. 35 ¶¶ 236–40; ECF No. 43 at 26. The plaintiff appears to claim that this deprived him of a statutory right to that information. *See* ECF No. 35 ¶ 241. However, a violation of state law alone—such as a violation of Virginia's FOIA statute—cannot provide the basis of a due process claim brought under § 1983. *See White by White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997). Therefore, the plaintiff fails to allege an underlying constitutional

or federal right that this conspiracy entailed, and the Court cannot find a basis for municipal liability under § 1983.

#### *ii. Equal Protection*

Second, the plaintiff alleges that the County deprived him of his constitutional right to equal protection, namely that he was not protected from sexual harassment in the same manner a woman would have been because he is a man. *See* ECF No. 35 ¶¶ 249–51. While the plaintiff is correct that "sexual harassment of employees by persons acting under color of state law violates the Fourteenth Amendment and is actionable under § 1983," *Mikkelsen v. DeWitt*, 141 F. App'x 88, 90 (4th Cir. 2005) (unpublished) (citation omitted), he must plead that the sexual harassment was carried out as part of a "policy or custom" that the defendant had in practice. *Monell*, 436 U.S. at 694. A plaintiff may not bring a claim for municipal liability based on the alleged misconduct of its employees. *See Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020) (noting "*Monell* liability cannot be predicated on a theory of *respondeat superior*").

The best the plaintiff does is asserting that the County suffered from "systematic departures from [] official policies and procedures," ECF No. 43 at 29, including "a perceived lack of . . . process for solving issues." ECF No. 35 ¶¶ 170–72. Because of the County's failure to consistently and evenly resolve personnel issues, the plaintiff argues that there was a "usage or custom of [] failing to report witnessed sexual harassment, and [] retaliating against officers who reported or criticized

superiors." ECF No. 43 at 28; *see also* ECF No. 35 ¶ 165 (alleging that eight officers allegedly knew of sexual harassment but did not report it).

But the plaintiff fails to allege how this description of his workplace constitutes an official policy or custom on which *Monell* liability may be fastened. "A single incident is almost never enough to warrant municipal liability," *Jones*, 961 F.3d at 672, and the plaintiff fails to allege any incidents of discrimination, violations of equal protection, or sexual harassment beyond his own that support the theory he alleges. The plaintiff attempts to argue that each time a coworker witnessed Gibson's behavior—but chose not to report it—constitutes a separate incident for purposes of *Monell* liability. *See* ECF No. 43 at 29. But the Court is unwilling to adopt such a broad definition of what constitutes a "single incident." *See, e.g.*, *Swink v. So. Health Partners, Inc.*, 160 F.4th 438, 467 (4th Cir. 2025) (Wilkinson, J., concurring in part, dissenting in part) (suggesting that even if multiple potentially problematic *actions* were taken during the course of a particular incident, that does not necessarily show a municipal policy because those actions still relate to a single overall incident).

***iii. Title VII***

Finally, the plaintiff alleges that the County is liable for his retaliatory discharge because it ratified violations of Title VII through the decisions of its final policymakers, specifically its grievance panel and human resources director. *See* ECF No. 35 ¶ 245, ECF No. 43 at 28; *see also Starbuck v. Williamsburg James City Sch. Bd.*, 28 F.4th 529, 533 (4th Cir. 2022) (providing that a "single decision taken by the highest officials responsible for setting policy" may make a municipality liable)

(citation omitted). The County argues that neither entity has final policymaking authority, but that even if they did, the plaintiff still fails to allege that the underlying discharge violated any constitutional or statutory right that would be actionable under § 1983. *See generally* ECF No. 44 at 11–14.

The Court finds that the grievance panel does not possess policymaking authority, which is the "authority to *set and implement* general goals and programs of municipal government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) (emphasis added). That description does not match the scope of the County's grievance panel, which is expressly forbidden from "formulat[ing] or chang[ing] policy, rules or procedures." *See* ECF No. 1-8 at 142. Because the plaintiff fails to assert that the County ratified the actions of a final policymaker with respect to his retaliatory discharge, he cannot support a § 1983 claim on this basis.

In sum, the plaintiff fails to plausibly allege any violations of his constitutional or federal rights that could support a § 1983 claim against the County.

## IV. CONCLUSION

Defendant James City County's motion to dismiss (ECF No. 40) is **GRANTED IN PART** and **DENIED IN PART**.

The parties are **DIRECTED** to contact the Court on or before November 10, 2026 to schedule a Fed. R. Civ. P. 16(b) scheduling conference.

Counts II and III are **DISMISSED**. Only Count I shall proceed.[15]

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
November 3, 2026

[15] Though the Court has concluded that Count I survives the County's motion to dismiss, it nevertheless cautions the plaintiff regarding the long-term viability of this claim and encourages the parties to work together to resolve this matter rather than expending additional resources to resolve this matter.